IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 05-CR-10175-WGY |
| Plaintiff, ) | |
| ) | MEMORANDUM OF THE LAW IN |
| ) | SUPPORT OF MOVE FOR FINDING OF |
| vs. ) | FACTS AND CONCLUSIONS OF LAW |
| ) | |
| ) | F.R.Cr.P 12(b)(2) |
| ) | |
| Nadine J. Griffin ) | |
| Accused, Belligerent Claimant. ) | |

COMES NOW, Nadine J. Griffin, the Accused Belligerent Claimant in the above-entitled action, and would show judicial officials of this Court the following:

### Facts

1. Judicial official and CEO William G. Young has denied approximately fourteen (14) pre-trial moves submitted by the Accused, Nadine J. Griffin.

2. Judicial official and CEO William G. Young has not issued one formal Order.

3. Judicial official and CEO William G. Young has not issued one signed Order.

4. Judicial official and CEO William G. Young has only alleged orders made on the docket by a court clerk termed Electronic Orders.

5. Judicial official and CEO William G. Young has not issued a single finding of facts or conclusions of law on any of its alleged orders, except the Electronic Orders not in compliance with Fed. R. Cr. P. Rule 12(d).

/ / /

1  When a district court's ruling on a pretrial motion involves factual issues, Rule 12(e) of the
2  Federal Rules of Criminal Procedure commands the court to "state its essential findings on the
3  record."
4  The rule serves several functions as follows:
5  1. Findings on the record inform the parties and other interested persons of the grounds of
6  the ruling,
7  2. Adds discipline to the process of judicial decision-making, and
8  3. Enables appellate courts to properly perform their reviewing function.
9  If the district court not only fails to make "essential findings on the record," but also
10 expresses nothing in the way of "legal reasoning," if it simply announces a result, it may frustrate
11 these objectives.
12 The Circuit courts will sustain factual findings unless they are "clearly erroneous," a
13 standard the Court of Appeals imported from the civil rules for cases tried to the court
14 (Fed.R.Civ.P. 52(a)) because the rules of criminal procedure were silent on the matter. See
15 *Jackson v. United States*, 353 F.2d 862, 864-865 (D.C. Cir. 1965).
16 
17 Also, the Court of Appeals will review de novo "whether the correct rule of law has been
18 applied to the facts found." *United States v. Hinckley*, 672 F.2d 115, 119 (D.C. Cir. 1982),
19 overruled in part on other grounds, *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d
20 393 (1984), quoting *Campana Corp. v. Harrison*, 114 F.2d 400, 406 (7th Cir. 1940).
21 The problem the district court has in this case is twofold: Court of Appeals will not know
22 which facts the district court considered "essential" to its ruling and the Court of Appeals will
23 not know what principles of law the court believed supported its ruling.
24
25

1   If the First Circuit could know what facts the district court considered "essential" to its ruling

2   (Rule 12(e)), it might be able to piece together the unstated legal grounds for its decision. But

3   the First Circuit will have neither essential findings nor legal reasoning.

4   As Chief Justice Hughes wrote, "it is always desirable that an appellate court should be

5   adequately advised of the basis of the determination of the court below. . ." Public Service

6   Comm'n v. Wisconsin Tel. Co., 289 U.S. 67, 69-70, 53 S.Ct. 514, 77 L.Ed. 1036 (1933). Here

7   the "desirable" is the necessary.

8   The fact that federal judges do not spend <u>any time</u> applying the law for which they are paid

9   and sworn to do, especially in *pro se* cases, is common knowledge.

> [T]he great number of prisoner petitions has forced federal courts to resort to adjudicative systems in which decisions are handed down with only the tangential involvement of Article III judges. The use of staff counsel and other alternative modes of judicial decisionmaking has been increased for the specific purpose of handling these claims. Doumar, supra, at 27-29. Whenever claims are disposed of without the closest attention of the judges, the legitimacy of the federal courts is at risk. ***Furthermore, where Article III judges are directly involved, the predominance of these cases threatens to convert the jog of judging, particularly at the trial level, into a subspecialty of prison litigation.*** This will diminish the attractiveness of the federal bench for many candidates. Nasim v. Warden, 64 F.3d 951, 958 (4th Cir. 1995)

> Richard Arnold of Arkansas, a judge who sits on the U.S. Court of Appeals for the 8th Circuit, is a product of the Old South school of courtly manners. He is equally comfortable holding forth on an early 19th-century British case, the U.S. Constitution or a richly embellished anecdote. But he is less genteel when talking about what is happening to the federal courts. <u>**Speaking at the Drake University Law School last week, Arnold was asked about a story in The New York Times reporting that because of crushing workloads, some federal appeals courts are restoring to perfunctory one-word ruling — "Affirmed" or Denied" — with no written opinion giving the court's reasoning**</u>.

> The practice is an "abomination," Arnold said. He told of participating recently in a court session where more than 50 cases were decided in two hours. "We heard many, many cases with no opinions or unpublished opinions," Arnold said. "I felt dirty. It was . . . betrayal of the judicial ethos. It makes me feel terrible.

<u>Perfunctory justice: Overloaded federal judges increasingly are resorting to one-word rulings</u>, Des Moines Register (March 26, 1999)

The aggrieved party read and reread the briefs as well as the transcripts. His mind is fed on nothing else during the three months waiting for the action of the court. He knows every point raised. He can repeat every argument advanced. All his savings through a lifetime are tied up in the case. He knows he is right. Then comes the decision. It deals with none of the points argued. It shows on its face the court refused to read the brief. He had been tossed aside like a white chip. He knows, and his friends know, he has been denied his day in court.

***To that man, to his family and to his friends, organized society is organized iniquity.***

And the present system is manufacturing citizens of such sentiments by the thousands every year.

Underneath the social unrest of the world today, as its main underlying cause, is the feeling in the breasts of the masses that justice is not for them. They do not know the cause, nor can they suggest the remedy, --
And so they only want to destroy. Society to them has come to mean organized injustice.

John Rustgard, [1] <u>Dry Bones—The Remedy for the Evil</u>, 88 Central Law Journal, p. 341, 344 (May 9, 1999).

Given the slipshod unsigned docket entries termed Electronic Orders (NO ORDERS), it is it is impossible to determine who actually authored these entries, was it William G. Young or was it his unknown law clerk? (The Electronic Orders are not signed and never issued.)

This type of behavior on the part of law clerks appears to be quite common as well.

Each judge has a difference writing style. Some prefer simple declarative sentences and use plain language. Others employ complex sentences and varied vocabulary. Some use metaphor and simile to make a point. Whatever the judge's personal style, most judges prefer that their law clerks try to write in the manner that the judge has adopted. The judge issues opinions year after year; continuity in style is desirable. Read several of the judge's prior opinions to become familiar with his or her style. If in doubt, ask the judge what stylistic embellishment he or she desires.

---

[1] Associate city attorney of Duluth, 1897-1898, mayor of Nome 1903-1904, U.S. district attorney 1st Division of Alaska, 1910-1914, and Attorney General of Alaska, 1921-1933

An increasing number of judges avoid using masculine pronouns. When speaking generally or hypothetically, using non-gender-specific language instead (e.g., "he or she" or "the defendant" instead of "he"). Law clerks should acquaint themselves with their judges" preference in regard to ender-specific language, and should keep in mind the federal judicial system's commitment to gender fairness.

<u>Chambers Handbook of Judges' Law Clerks and Secretaries</u>, 146 (FJC 1994)

And Rob Johnson, who was the single clerk for an intermediate state appellate court and who served three judges by himself back in the days when" I'm not sure we even had an electric typewriter," is more blunt. *"I don't like the idea of wild-eyed twenty-four and twenty-five year olds, who come right out of law school, tinkering with the law in a way that might affect my life," he says.*

The Accused Nadine J. Griffin doesn't like this idea either.

WHEREFORE, the Accused Nadine J. Griffin moves judicial official and CEO William G. Young issue Orders as defined by Acts of Congress and codified in the Federal Rules of Criminal Procedure as the only just and proper remedy.

Solemnly submitted,

**VERIFICATION**

I, Nadine J. Griffin, declare under penalty of perjury as a Conscious, Thinking, Feeling, Living, Breathing, Flesh and Blood Sentient Being that the forgoing is true and correct. All Rights retained without recourse.

Executed this 28 day of February, 2006.

Signature: *Nadine J. Griffin*
Nadine J. Griffin
Accused, Belligerent Claimant
c/o 36 Center Street, #143
Wolfeboro, New Hampshire [03894]