**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**Nadine J. Griffin,**<br>**Accused, Belligerent Claimant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO. 05-cr-10175-WGY**<br><br>**VERIFIED AFFIDAVIT AND EXHIBITS IN SUPPORT OF MOVE TO QUASH INDICTMENT FOR VINDICTIVE PROSECUTION**<br><br>**Fed.R.Crim.P. Rule 47(d)**<br><br>**Nadine J. Griffin, Affiant** |

1. Nadine J. Griffin declares and states as follows:
2. I am the accused Belligerent Claimant (hereinafter referred to as "Affiant") in the above-entitled action and competent to testify to the facts stated herein to wit:
3. That all statements made within this affidavit are true and correct not meant to mislead;
4. That Nadine J. Griffin exists as a Conscious, Living, Breathing, Flesh and Blood Sentient Being, a Woman; NOT a statutory person, persons, natural person, artificial person, individual, corporation, entity, or any other sub-status, fourth class citizen *ens legis* creation of any government, federal, state, local or otherwise;
5. That Affiant Nadine J. Griffin is unschooled in law, not an attorney or bar association member, and is attempting to defend and dispose of this action to the best of Affiant's ability with reliance upon your statutes, codes, rules and regulations; including those relied

upon by the plaintiff and established by the Constitution of the United States of America, United States Congress, and the United States Supreme Court;

6. Affiant herein submits into evidence Exhibits A through F consisting of 87 pages and demands this Court take mandatory judicial notice of adjudicative facts pursuant Fed. R. Evid. 201(d) and deem such Exhibits as admitted;

7. That Affiant herein demands this Court take judicial notice and enter into this Court's records pursuant to 1 U.S.C. § 204(a) stating in pertinent part, "*The matter set forth in the edition of the Code of Laws of the United States current at any time shall . . . establish prima facie the laws of the United States . . .*" (see **Exhibit A**) and 1 U.S.C. § 112 states: ". . . The United States Statutes at Large shall be legal evidence of Laws. . ." (see **Exhibit B**);

8. That on or about July 13, 2005, Affiant was formally charged under cause number 05- CR-10175-WGY for alleged violations of 26 U.S.C. § 7206, two counts of filing a false returns for the tax years 1998 and 1999 (see **Exhibit C**);

9. That in November 1996 or sometime shortly thereafter, Nadine J. Griffin became affiliated with an organization called Global Prosperity;

10. That in June 2001 or sometime thereafter, Affiant became aware of an investigation by the Department of Justice into the activities of Global Prosperity;

11. That officials of the DOJ, including Christopher Maietta admited to having induced, threatened, intimidated and convinced the following parties to sign a plea agreement by way of promises and/or rewards and may act as witness of behalf of employees of the United States plaintiff from such inducement, promise and/or reward not limited to the following (see **Exhibit D**):

(a) Becky Coggins plead guilty on February 7, 2006;

(b)  Daniel Andersen signed a Plea Agreement July 15, 2004 for Conspiracy;

(c)  Shoshana B. Szuch signed a Plea Agreement dated February 27, 2003 for Tax Evasion;

(d)  Jeffrey S. Szuch signed a Plea Agreement dated February 27, 2003 for Tax Evasion;

(e)  Margo Jordan signed a Plea Agreement dated February 28, 2003 for Tax Evasion;

(f)  William Kittridge was granted immunity on April 22, 2005, January 8, 2003, and a Proffer Agreement dated December 17, 2002;

12. That Affiant's retained defense Attorney James B. Krasnoo, who participated in interviews conducted on October 26, 2001, November 8, 2001, November 19, 2001 and November 26, 2001 by attorneys, officers and agents of the DOJ - including but not limited to Patricia Stokes, Mark O' Dulio, Larry Wszalek, Eric DiDio, Michael Monahan, Thomas Wourgiotis and Jessica Crocker (see **Exhibit E**);

13. That in February 2002, or sometime shortly thereafter, Affiant was informed by and through her then attorney James B. Krasnoo that attorneys of the DOJ offered for her to sign a plea agreement to a felony charge and pay restitution in approximately $85,000.00 for an alleged tax liability;

14. That Affiant did not believe she was guilty of any crime, then, and does not believe she is guilty of any crime now, as she stated to attorney James B. Krasnoo; and refused to accept their offer and sign said agreement;

15. That Affiant's refusal to sign a plea agreement resulted in Assistant USA Christopher Maietta (who was assigned to the Tax Division of the DOJ) seeking and securing a grand jury indictment signed on July 13, 2005 formally charging Affiant for alleged violations of 26 U.S.C. § 7206, two counts of filing a false returns for the tax years 1998 and 1999;

16. That Christopher Maietta is proceeding with vindictive prosecution because he did know, or should have known, that officers, employees or agents of the Internal Revenue Service

never attempted to assess or collect an income tax from Nadine J. Griffin for tax years 1998 and 1999;

17. That Christopher Maietta is proceeding with vindictive prosecution because he did know, or should have known, that prior to petitioning the United States district court regarding civil or criminal issues of tax liability, assessment and collections under the internal revenue laws, employees are required to exhaust the administrative remedies, including but not limited to: 26 U.S.C. § 6303 – Notice and demand for tax, 26 U.S.C. § 6202 – Establishment by regulations of mode and time of assessment, 26 U.S.C. § 6203 – Method of assessment, 26 U.S.C. § 6751 – Approval of assessment, 26 U.S.C. § 6502 – Collection after assessment and applicable regulations thereunder (see **Exhibit F**);

18. That Christopher Maietta is proceeding with vindictive prosecution because he intentionally mislead the grand jury by withholding information that he knew employees of the IRS did not exhaust the administrative remedies and did not attempt to assess and/or collect the additional tax they believed Nadine J. Griffin may have understated;

19. That Christopher Maietta is proceeding with vindictive prosecution because he did know, or should have known, that employees of the IRS, acting in bad faith - waited Six (6) years before bringing these allegations against Griffin and never once notified her or attempted to collect the alleged additional tax liability anytime during this six-year period.

20. That Christopher Maietta is proceeding with vindictive prosecution because he did know, or should have known, that because agents of the IRS failed to exhaust the administrative process as prescribed by Acts of Congress in the same manner they do with million of taxpayers each year – never bringing a civil or criminal action for the substantial understatement of such tax, and to single out Affiant is an act of selective prosecution in

violation the equal protection under the law clause of the Fourteenth Amendment rendering all their acts a nullity;

21. That Christopher Maietta is proceeding with vindictive prosecution because he did know, or should have known, that he is proceeding with a fraud upon the court of the United States – failing to vest the judicial branch of government with jurisdiction over the subject matter in contempt of law and legislative Acts of Congress, specifically those codified within the Internal Revenue Code;

22. That Christopher Maietta is proceeding with vindictive prosecution because he did know or should have known that the judicial branch of government, the courts, are not constitutionally authorized to act as collections agencies for the employees of the Internal Revenue Service, lest they act as a debtors' court giving rise to debtors' prisons which have been abolished and violates the Fifth, Thirteenth and Fourteenth Amendments to the Constitution;

23. That Christopher Maietta is proceeding with vindictive prosecution because nowhere in the Internal Revenue Code or Title 26 of the United States Code does an Act of Congress authorized the malicious and selective prosecution of any [person], including Affiant, as such an act would be deemed unconstitutional on its face and a substantive violation of constitutional and administrative due process as in this instant case;

24. That of the 4,641 plus pages of discovery documents produced by Christopher Maietta, no documents exist in his possession nor the possession of any officers, agents and employees of the Internal Revenue Service that indicate they ever attempted to exhaust their administrative remedies to assess and collect an additional tax from Nadine J. Griffin at any time prior to bringing the action before a district court of the United States;

25. That I, Nadine J. Griffin declares under penalty of perjury that the exhibits enumerated herein are true unaltered, un-tampered and un-redacted copies of original copies to the best of my knowledge and belief. That all deleted sections made by me have been done so pursuant to the Privacy Act at 5 U.S.C. § 552(b)(6).

**VERIFICATION**

I, Nadine J. Griffin, declare under penalty of perjury as a Conscious, Thinking, Feeling, Living, Breathing, Flesh and Blood Sentient Being that the foregoing is true and correct. All Rights retained without recourse.

Executed this 28 day of February, 2006.

Signature: ____________________
Nadine J. Griffin, Affiant
c/o 36 Center Street, #143
Wolfeboro, New Hampshire [03894]

**NOTARY ACKNOWLEDGMENT**

State of New Hampshire )
) subscribed and sworn
County of ____________)

On this 28 day, of February, 2006, **Nadine J. Griffin** personally appeared, personally known to me, or proved to me on the basis of satisfactory evidence to be the one whose name is subscribed to within this instrument and who did take an Oath.

Witness my hand and official seal.

____________________
Signature of Notary

My Commission Expires: SUSAN L. ADJUTANT, Notary Public My Commission Expires March 23, 2010

**ATTACHMENTS:**

**EXHIBIT A:** 1 U.S.C. § 204 – Codes and Supplements Evidence of Law – (6 pgs)

**EXHIBIT B:** 26 U.S.C. § 112 – United States Statutes at Large shall be legal evidence of Laws (5 pgs)

**EXHIBIT C:** 26 U.S.C. § 7206 – Fraud and false statement (1 pg)

**EXHIBIT D:** Christopher Maietta's Letter dated February 16, 2006 and Plea Agreements Entered By Becky Coggins, Daniel Andersen, Shoshana B. Szuch, Jeffrey S. Szuch, Margo Jordan and Grant of Immunity to William Kittridge – (56 pgs)

**EXHIBIT E:** Nadine Griffin Interviews With DOJ Employees (4 pgs)

**EXHIBIT F:** Title 26 United States Code and Code of Federal Regulations Demand For Tax, Assessments, Collections, Etc. (15 pgs)

CASE NO. 05-CR-10175-WGY

Nadine J. Griffin,

# EXHIBIT "A"

**6 pages**

## HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1947 Acts.** House Report No. 251, see 1947 U.S. Code Cong. Service, p. 1511.

**Commission on Revision of the Criminal Laws of the District of Columbia**

Pub.L. 90-226, Title X, §§ 1001 to 1009, Dec. 27, 1967, 81 Stat. 742, which provided for the creation and operation of a commission to study and make recommendations with reference to a revised code of criminal law and procedure for the District of Columbia, was repealed by Pub.L. 91-358, Title VI, § 601, July 29, 1970, 84 Stat. 667, as amended by Pub.L. 91-530, § 2(b)(1), Dec. 7, 1970, 84 Stat. 1390.

**Council of District of Columbia**

Functions relating to the Council of the District of Columbia, see section 2 of Pub.L. 94-386, Aug. 14, 1976, 90 Stat. 1170, set out as a note under section 285b of Title 2, The Congress.

## CROSS REFERENCES

Authorization of appropriations, see 1 USCA § 213.
Avoidance of duplication and waste, see 1 USCA § 201.
Copies as conclusive evidence of original, see 1 USCA § 209.
Copies to members of Congress, see 1 USCA § 211.
Delegation of functions from time to time as directed by Congress, exception, see 1 USCA § 208.
Distribution of copies, exception for slip and pamphlet copies, see 1 USCA § 210.
Office of Law Revision Counsel, functions respecting, see 2 USCA § 285b.
Printing at Government Printing Office, form and style, ancillaries, see 1 USCA § 205.

## LIBRARY REFERENCES

**American Digest System**

District of Columbia ⇐5.
Statutes ⇐144.
Key Number System Topic Nos. 132, 361.

## Research References

**Encyclopedias**

Am. Jur. 2d Statutes § 38, Generally.

**Treatises and Practice Aids**

Federal Procedure, Lawyers Edition § 33:647, District of Columbia Laws.

## WESTLAW ELECTRONIC RESEARCH

See WESTLAW guide following the Explanation pages of this volume.

## → § 204. Codes and Supplements as evidence of the Laws of United States and District of Columbia; citation of Codes and Supplements

In all courts, tribunals, and public offices of the United States, at home or abroad, of the District of Columbia, and of each State, Territory, or insular possession of the United States—

(a) **United States Code.**—The matter set forth in the edition of the Code of Laws of the United States current at any time shall, together with the then current supplement, if any, establish prima facie the laws of the United States, general and permanent

:Y NOTES

ɪrict of Columbia, was repealed
91–358, Title VI, § 601, July
84 Stat. 667, as amended by
530, § 2(b)(1), Dec. 7, 1970, 84

District of Columbia
s relating to the Council of the
Columbia, see section 2 of
386, Aug. 14, 1976, 90 Stat.
out as a note under section
e 2, The Congress.

01.
A § 209.

l by Congress, exception, see 1

ılet copies, see 1 USCA § 210.
:, see 2 USCA § 285b.
style, ancillaries, see 1 USCA

S

:t of Columbia Laws.

EARCH

:s of this volume.

ce of the Laws of Unit-
; citation of Codes and

ɔf the United States, at
ia, and of each State,
ʒtates—
t forth in the edition of
rrent at any time shall,
nent, if any, establish
general and permanent

in their nature, in force on the day preceding the commencement of the session following the last session the legislation of which is included: *Provided, however*, That whenever titles of such Code shall have been enacted into positive law the text thereof shall be legal evidence of the laws therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.

(b) **District of Columbia Code.**—The matter set forth in the edition of the Code of the District of Columbia current at any time shall, together with the then current supplement, if any, establish prima facie the laws, general and permanent in their nature, relating to or in force in the District of Columbia on the day preceding the commencement of the session following the last session the legislation of which is included, except such laws as are of application in the District of Columbia by reason of being laws of the United States general and permanent in their nature.

(c) **District of Columbia Code; citation.**—The Code of the District of Columbia may be cited as "D.C. Code".

(d) **Supplements to Codes; citation.**—Supplements to the Code of Laws of the United States and to the Code of the District of Columbia may be cited, respectively, as "U.S.C., Sup. ", and "D.C. Code, Sup. ", the blank in each case being filled with Roman figures denoting the number of the supplement.

(e) **New edition of Codes; citation.**—New editions of each of such codes may be cited, respectively, as "U.S.C., ed.", and "D.C.Code, ed.", the blank in each case being filled with figures denoting the last year the legislation of which is included in whole or in part.

(July 30, 1947, c. 388, 61 Stat. 638.)

### UNITED STATES CODE TITLES AS POSITIVE LAW

The following titles of the United States Code have been enacted into positive law by the acts enumerated below:

Title 1, General Provisions—Act July 30, 1947, c. 388, § 1, 61 Stat. 633.

Title 3, The President—Act June 25, 1948, c. 644, § 1, 62 Stat. 672.

Title 4, Flag and Seal, Seat of Government, and the States—Act July 30, 1947, c. 389, § 1, 61 Stat. 641.

Title 5, Government Organization and Employees—Pub.L. 89–554, Sept. 6, 1966, § 1, 80 Stat. 378.

Title 6, Surety Bonds—Act July 30, 1947, c. 390, § 1, 61 Stat. 646, as amended June 6, 1972, Pub.L. 92–310, Title II, § 203(4), 86 Stat. 202, and repealed Sept. 13, 1982, Pub.L. 97–258, § 5(b), 96 Stat. 1068. See, now, Title 31, Money and Finance.

Title 9, Arbitration—Act July 30, 1947, c. 392, § 1, 61 Stat. 669.

Title 10, Armed Forces—Act Aug. 10, 1956, c. 1041, § 1, 70A Stat. 1.

Title 11, Bankruptcy—Pub.L. 95–598, Title I, § 101, Nov. 6, 1978, 92 Stat. 2549.

Title 13, Census—Act Aug. 31, 1954, c. 1158, 68 Stat. 1012.

Title 14, Coast Guard—Act Aug. 4, 1949, c. 393, § 1, 63 Stat. 495.

Title 17, Copyrights—Act July 30, 1947, c. 391, § 1, 61 Stat. 652, as amended in its entirety by Pub.L. 94–533, Title I, § 101m, Oct. 19, 1976, 90 Stat. 2541.

Title 18, Crimes and Criminal Procedure—Act June 25, 1948, c. 645, § 1, 62 Stat. 683.

Title 23, Highways—Pub.L. 85–767, § 1, Aug. 27, 1958, 72 Stat. 885.

Title 28, Judiciary and Judicial Procedure—Act June 25, 1948, c. 646, § 1, 62 Stat. 869.

Title 31, Money and Finance—Pub.L. 97–258, § 1, Sept. 13, 1982, 96 Stat. 877.

Title 32, National Guard—Act Aug. 10, 1956, c. 1041, § 2, 70A Stat. 596.

Title 35, Patents—Act July 19, 1952, c. 950, § 1, 66 Stat. 792.

Title 36, Patriotic and National Observances, Ceremonies, and Organizations—Pub.L. 105–225, § 1, Aug. 12, 1998, 112 Stat. 1253.

Title 37, Pay and Allowances of the Uniformed Services—Pub.L. 87–649, § 1, Sept. 7, 1962, 76 Stat. 451.

Title 38, Veterans' Benefits—Pub.L. 85–857, § 1, Sept. 2, 1958, 72 Stat. 1105.

Title 39, Postal Service—Pub.L. 86–682, § 1, Sept. 2, 1960, 74 Stat. 578, as revised Pub.L. 91–375, § 2, Aug. 12, 1970, 84 Stat. 719.

Title 40, Public Buildings, Property, and Works—Pub.L. 107–217, Aug. 21, 2002, 116 Stat. 1062.

Title 44, Public Printing and Documents—Pub.L. 90–620, § 1, Oct. 22, 1968, 82 Stat. 1238.

Title 46, Shipping—Pub.L. 98–89, § 1, Aug. 26, 1983, 97 Stat. 500; Pub.L. 99–509, Title V, Subtitle B, § 5101, Oct. 21, 1986, 100 Stat. 1913; Pub.L. 100–710, Title I, § 102, Nov. 23, 1988, 102 Stat. 4739.

Title 49, Transportation—Pub.L. 95–473, § 1, Oct. 17, 1978, 92 Stat. 1337; Pub.L. 97–449, § 1, Jan. 12, 1983, 96 Stat. 2413; Pub.L. 103–272, § 1, July 5, 1994, 108 Stat. 745.

## TITLE 26, INTERNAL REVENUE CODE

The Internal Revenue Code of 1954 was enacted in the form of a separate code by Act August 16, 1954, c. 736, 68A Stat. 1. Pub.L. 99–514, § 2(a), Oct. 22, 1986, 100 Stat. 2095, provided that the Internal Revenue Title enacted Aug. 16, 1954, as heretofore, hereby, or hereafter amended, may be cited as the "Internal Revenue Code of 1986". The sections of Title 26, United States Code, are identical to the sections of the Internal Revenue Code.

## HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1947 Acts.** House Report No. 251, see 1947 U.S. Code Cong. Service, p. 1511.

## CROSS REFERENCES

Delegation of functions from time to time as directed by Congress, see 1 USCA § 208.

## LIBRARY REFERENCES

**American Digest System**

Statutes ⟹144, 145.

Key Number System Topic No. 361.

)12.
Stat. 495.
Stat. 652, as amended in its 90 Stat. 2541.
5, 1948, c. 645, § 1, 62 Stat.
72 Stat. 885.
5, 1948, c. 646, § 1, 62 Stat.
13, 1982, 96 Stat. 877.
2, 70A Stat. 596.
t. 792.
nonies, and Organizations—
es—Pub.L. 87-649, § 1, Sept.
2, 1958, 72 Stat. 1105.
1960, 74 Stat. 578, as revised
107-217, Aug. 21, 2002, 116
!0, § 1, Oct. 22, 1968, 82 Stat.
97 Stat. 500; Pub.L. 99-509, 913; Pub.L. 100-710, Title I,
, 1978, 92 Stat. 1337; Pub.L. 2, § 1, July 5, 1994, 108 Stat.

JE CODE

ne form of a separate code by 14, § 2(a), Oct. 22, 1986, 100 enacted Aug. 16, 1954, as as the "Internal Revenue Code are identical to the sections of

Y NOTES

S

ted by Congress, see 1 USCA

S

## Research References

**ALR Library**

87 ALR 5th 631, Validity, and Propriety Under Circumstances, of Court-Ordered HIV Testing.

**Encyclopedias**

29A Am. Jur. 2d Evidence § 1199, Presumptions Under State or Federal Acts.
29A Am. Jur. 2d Evidence § 1406, Federal Statutes, Treaties, and Rules; Laws of the District of Columbia.
Am. Jur. 2d Statutes § 42, Federal Law.

**Forms**

Federal Procedural Forms § 1:1325, Scope of Division.

**Treatises and Practice Aids**

Federal Evidence § 548, Presumptions Under Acts of Congress.
Federal Procedure, Lawyers Edition § 33:584, Documents Presumptively or Prima Facie Authentic Under Acts of Congress.
Federal Procedure, Lawyers Edition § 33:644, Federal Constitution, Laws, Treaties, Rules, and Regulations.
Federal Procedure, Lawyers Edition § 33:645, Effect of Enactment Into Positive Law.
Federal Procedure, Lawyers Edition § 33:647, District of Columbia Laws.
Wright & Miller: Federal Prac. & Proc. § 5123, Scope of Rule 301.
Wright & Miller: Federal Prac. & Proc. § 7144, Subdivision (10)-Presumptions Under Acts of Congress.

## WESTLAW ELECTRONIC RESEARCH

See WESTLAW guide following the Explanation pages of this volume.

## Notes of Decisions

**Inclusion of statute in Code 1**
**Inconsistencies 4**
**Position of statutes in Code 2**
**Prima facie evidence 3**
**Reviser's notes 5**

**1. Inclusion of statute in Code**

If construction of section of United States Code, which has not been enacted into positive law, is necessary, recourse must be had to original statutes themselves. U.S. v. Wodtke, N.D.Iowa 1985, 627 F.Supp. 1034, affirmed 871 F.2d 1092. Statutes ⇐ 217.4

Inclusion of designated sections of the Revised Statutes into codification of general and permanent laws of United States did not have effect of re-enacting such sections of Revised Statutes. U.S. ex rel. Boyd v. McMurtry, W.D.Ky.1933, 5 F.Supp. 515. Statutes ⇐ 147

Incorporation in United States Code of both amended Act and amendatory Act impliedly repealing portion of former Act did not show congressional purpose not to repeal or modify amended Act. Ruff v. Gay, S.D.Ga.1933, 3 F.Supp. 264, reversed on other grounds 67 F.2d 684, certiorari granted 54 S.Ct. 377, 291 U.S. 654, 78 L.Ed. 1047, affirmed 54 S.Ct. 608, 292 U.S. 25, 78 L.Ed. 1099. Statutes ⇐ 145; Statutes ⇐ 167(2)

Inclusion of an Act in the United States Code did not revitalize the Act if it had been repealed. Hill v. U.S., Ct.Cl.1930, 68 Ct.Cl. 740.

Fact that Internal Revenue Code (IRC) had not been enacted into positive law did not mean that tax laws had no effect on state resident; that IRC was not positive law only meant that one must go to appropriate volume of *United States Statutes at Large* to be certain of the content of any given statute codified within IRC. Richey v. Indiana Dept. of State Revenue, Ind.Tax 1994, 634 N.E.2d 1375. Internal Revenue ⇐ 3027

Failure of Congress to enact Comprehensive Drug Abuse Prevention and Control Act of 1970 into positive law did not deprive federal court of subject matter jurisdiction over prosecution for alleged violation of Act provision; failure had only evidentiary significance, and did not render Act invalid or unenforceable.



Henriquez v. U.S., S.D.N.Y.2003, 2003 WL 21242722, Unreported. Controlled Substances ⇐ 6

**2. Position of statutes in Code**

Change of arrangement should be given no weight where made by codifier without approval of Congress. U. S. v. Welden, U.S.Mass.1964, 84 S.Ct. 1082, 377 U.S. 95, 12 L.Ed.2d 152. Statutes ⇐ 231

No change in the meaning of a statute results from its being placed in the United States Code in juxtaposition to other statutes enacted at different times. Warner v. Goltra, U.S.Mo.1934, 55 S.Ct. 46, 293 U.S. 155, 79 L.Ed. 254.

It will not be inferred that Congress in revising and consolidating laws intended to change their effect unless intention is clearly expressed. Robert E. Lee & Co. v. Veatch, C.A.4 (S.C.) 1961, 301 F.2d 434, certiorari denied 83 S.Ct. 23, 371 U.S. 813, 9 L.Ed.2d 55. Statutes ⇐ 147

**3. Prima facie evidence**

The official source to find United States law is the Statutes at Large and the United States Code is only prima facie evidence of such laws. Royer's, Inc. v. U. S., C.A.3 (Pa.) 1959, 265 F.2d 615. Statutes ⇐ 231

The United States Code is only a prima facie statement of the statute law, and statutes collected in it do not change their meaning nor acquire any new force by their inclusion and if construction is necessary, recourse must be had to the original statutes themselves. Murrell v. W.U. Telegraph Co., C.C.A.5 (Fla.) 1947, 160 F.2d 787. Statutes ⇐ 146; Statutes ⇐ 147; Statutes ⇐ 231

Statutes in volumes of the *United States Code*, the *United States Code Service*, and the *United States Code Annotated* are meant to contain same language as the *United States Statutes at Large*, but unless Congress takes affirmative steps, language in various codes is only prima facie evidence of law. Richey v. Indiana Dept. of State Revenue, Ind.Tax 1994, 634 N.E.2d 1375. Statutes ⇐ 147; Statutes ⇐ 283(2)

**4. Inconsistencies**

If construction of section of United States Code which has not been enacted into positive law is necessary, recourse must be had to original statutes themselves. U. S. v. Welden, U.S.Mass.1964, 84 S.Ct. 1082, 377 U.S. 95, 12 L.Ed.2d 152. Statutes ⇐ 231

Under subsec. (a) of this section the United States Code cannot prevail over the Statutes at Large if the two are inconsistent. Stephan v. U. S., Mich.1943, 63 S.Ct. 1135, 319 U.S. 423, 87 L.Ed. 1490. See, also, American Export Lines, Inc. v. U. S., Ct.Cl. 1961, 290 F.2d 925, 153 Ct.Cl. 201; Balian Ice Cream Co. v. Arden Farms Co., D.C.Cal.1950, 94 F.Supp. 796. Statutes ⇐ 147

Version of Indian Preference Act, section 472 of Title 25, in United States Code is inconsistent with the one in statutes at large and, unless it has been partially repealed, expressly or by implication, said section as it appears in statutes at large must prevail. Preston v. Heckler, C.A.9 (Alaska) 1984, 734 F.2d 1359. Statutes ⇐ 147

District of Columbia Code is a codification and compilation of existing statutes, and, under this section which authorizes preparation and publication of the Code and which declares that the Code shall establish "prima facie" the laws then in force, meaning of quoted phrase is that the District of Columbia Code cannot prevail over the Statutes at Large when the two are inconsistent. Fisher v. Capital Transit Co, C.A.D.C.1957, 246 F.2d 666, 100 U.S.App.D.C. 385. Statutes ⇐ 147

Section 10(b)(1) of the Federal Railroad Safety Authorization Act is correctly reproduced in United States Code Annotated. The Statute is incorrectly reproduced in United States Code Service and in Lexis. Springfield Terminal Ry. Co. v. United Transp. Union, D.Me.1991, 767 F.Supp. 333.

The ALR Federal Cases is an unsatisfactory substitute for the Federal Reporter, 2d Series, because it does not contain many of the reported cases from the United States courts of appeals, and a library which lacks these materials is an inadequate law library. Wade v. Kane, E.D.Pa.1978, 448 F.Supp. 678, affirmed 591 F.2d 1338.

Where an inconsistency appears between the United States Code and the Statutes at Large, the Statutes at Large prevail over the Code. Peart v. Motor Vessel Bering Explorer, D.C.Alaska 1974, 373 F.Supp. 927. Statutes ⇐ 144

The code establishes prima facie what the laws of the United States are, but to extent that provisions of the Code are inconsistent with the statutes at large, the

082, 377 U.S. 95, 12 L.Ed.2d
ıtes ⇐ 231

ubsec. (a) of this section the
:tes Code cannot prevail over
s at Large if the two are incon-
ephan v. U. S., Mich.1943, 63
319 U.S. 423, 87 L.Ed. 1490.
American Export Lines, Inc. v.
Cl. 1961, 290 F.2d 925, 153
Balian Ice Cream Co. v. Ar-
Co., D.C.Cal.1950, 94 F.Supp.
ıtes ⇐ 147

of Indian Preference Act, sec-
Title 25, in United States Code
ent with the one in statutes at
unless it has been partially
expressly or by implication,
n as it appears in statutes at
prevail. Preston v. Heckler,
ska) 1984, 734 F.2d 1359.
· 147

of Columbia Code is a codifica-
ompilation of existing statutes,
this section which authorizes
ı and publication of the Code
declares that the Code shall
prima facie" the laws then in
ning of quoted phrase is that
of Columbia Code cannot pre-
ie Statutes at Large when the
consistent. Fisher v. Capital
C.A.D.C.1957, 246 F.2d 666,
op.D.C. 385. Statutes ⇐ 147
10(b)(1) of the Federal Rail-
Authorization Act is correctly
in United States Code Anno-
Statute is incorrectly repro-
nited States Code Service and
Springfield Terminal Ry. Co. v.
ansp. Union, D.Me.1991, 767
3.

. Federal Cases is an unsatis-
stitute for the Federal Report-
es, because it does not contain
reported cases from the Unit-
ourts of appeals, and a library
s these materials is an inade-
library. Wade v. Kane,
8, 448 F.Supp. 678, affirmed
338.

n inconsistency appears be-
United States Code and the
Large, the Statutes at Large
r the Code. Peart v. Motor
ng Explorer, D.C.Alaska 1974,
. 927. Statutes ⇐ 144

establishes prima facie what
the United States are, but to
provisions of the Code are
t with the statutes at large, the

latter will prevail. Best Foods v. U.S., Cust.Ct.1956, 147 F.Supp. 749, 37 Cust. Ct. 1. Statutes ⇐ 231

**4. Reviser's notes**

Reviser's notes are authoritative in interpreting United States Code. Acron Investments, Inc. v. Federal Sav. & Loan Ins. Corp., C.A.9 (Cal.) 1966, 363 F.2d 236, certiorari denied 87 S.Ct. 506, 385 U.S. 970, 17 L.Ed.2d 434. Statutes ⇐ 231

## § 205. Codes and Supplement; where printed; form and style; ancillaries

The publications provided for in sections 202, 203 of this title shall be printed at the Government Printing Office and shall be in such form and style and with such ancillaries as may be prescribed by the Committee on the Judiciary of the House of Representatives. The Librarian of Congress is directed to cooperate with such committee in the preparation of such ancillaries. Such publications shall be furnished with such thumb insets [1] and other devices to distinguish parts, with such facilities for the insertion of additional matter, and with such explanatory and advertising slips, and shall be printed on such paper and bound in such material, as may be prescribed by such committee.

(July 30, 1947, c. 388, 61 Stat. 639.)

[1] So in original. Probably should be "inserts".

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1947 Acts.** House Report No. 251, see 1947 U.S. Code Cong. Service, p. 1511.

**Council of District of Columbia**

Functions relating to the Council of the District of Columbia, see section 2 of Pub.L. 94-386, Aug. 14, 1976, 90 Stat. 1170, set out as a note under section 285b of Title 2, The Congress.

### CROSS REFERENCES

Delegation of functions from time to time as directed by Congress, see 1 USCA § 208.
Office of the Law Revision Counsel, functions respecting, see 2 USCA § 285b.
Printing of bills and resolutions, style and form, see 44 USCA § 707.

### LIBRARY REFERENCES

**American Digest System**

Statutes ⇐14, 144.
Key Number System Topic No. 361.

### Research References

**Encyclopedias**

Am. Jur. 2d Statutes § 38, Generally.

### WESTLAW ELECTRONIC RESEARCH

See WESTLAW guide following the Explanation pages of this volume.

CASE NO. 05-CR-10175-WGY

Nadine J. Griffin,

# EXHIBIT "B"

**5 pages**

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**
**1947 Acts.** House Report No. 251, see 1947 U.S. Code Cong. Service, p. 1511.

### LIBRARY REFERENCES

**American Digest System**
Criminal Law 🔑145.5.
Limitation of Actions 🔑6(9), 6(10).
Key Number System Topic Nos. 110, 241.

### Research References

**Encyclopedias**
Am. Jur. 2d Statutes § 271, Effect of Repeal.

### WESTLAW ELECTRONIC RESEARCH

See WESTLAW guide following the Explanation pages of this volume.

## § 111. Repeals as evidence of prior effectiveness

No inference shall be raised by the enactment of the Act of March 3, 1933 (ch. 202, 47 Stat. 1431), that the sections of the Revised Statutes repealed by such Act were in force or effect at the time of such enactment: *Provided, however*, That any rights or liabilities existing under such repealed sections shall not be affected by their repeal.

(July 30, 1947, c. 388, 61 Stat. 635.)

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**
**1947 Acts.** House Report No. 251, see 1947 U.S. Code Cong. Service, p. 1511.

**References in Text**
Act of March 3, 1933 (ch. 202, 47 Stat. 1431), referred to in text, was repealed by section 2 of Act July 30, 1947, section 1 of which enacted this title.

### LIBRARY REFERENCES

**American Digest System**
Statutes 🔑174, 176.
Key Number System Topic No. 361.

### WESTLAW ELECTRONIC RESEARCH

See WESTLAW guide following the Explanation pages of this volume.

## § 112. Statutes at Large; contents; admissibility in evidence

The Archivist of the United States shall cause to be compiled, edited, indexed, and published, the United States Statutes at Large, which shall contain all the laws and concurrent resolutions enacted

during each regul
President in the nu
ment of the regula
amendments to th
ratified pursuant t
the certificate of t
ance with the prov
event of an extra
States shall cause
during said extra
part of, the conten
United States Sta
concurrent resoluti
treaties, proclamat
amendments to th
tained, in all the c
the Territories and

(July 30, 1947, c. 38
979; Oct. 31, 1951, c
Title I, § 107(d), 98 S

HIS

**Revision Notes and Leg**
**1947 Acts.** House Re
1947 U.S. Code Cong.

**1950 Acts.** House Re
1950 U.S. Code Cong.

**1951 Acts.** Senate R
see 1951 U.S. Code Co
vice, p. 2578.

**1984 Acts.** Senate R
and House Conferen
98-1124, see 1984 U.S.
Adm. News, p. 3865.

**Amendments**
**1984 Amendments.** P
stituted "Archivist of th
for "Administrator of G
wherever appearing.

**1951 Amendments.** A
substituted, in first se
this title" for "205 of t
utes".

**1950 Amendments.** A
implemented 1950 Reo
§ 1, eff. May 24, 1950,
Stat. 1272, by transferri
istrator of General Ser
merly performed by t
State.

NOTES

ARCH

of this volume.

veness

nt of the Act of March ections of the Revised or effect at the time of ny rights or liabilities ot be affected by their

NOTES

Act July 30, 1947, section 1 of ed this title.

S

SEARCH

es of this volume.

ssibility in evidence

cause to be compiled, States Statutes at Large, rent resolutions enacted

during each regular session of Congress; all proclamations by the President in the numbered series issued since the date of the adjournment of the regular session of Congress next preceding; and also any amendments to the Constitution of the United States proposed or ratified pursuant to article V thereof since that date, together with the certificate of the Archivist of the United States issued in compliance with the provision contained in section 106b of this title. In the event of an extra session of Congress, the Archivist of the United States shall cause all the laws and concurrent resolutions enacted during said extra session to be consolidated with, and published as part of, the contents of the volume for the next regular session. The United States Statutes at Large shall be legal evidence of laws, concurrent resolutions, treaties, international agreements other than treaties, proclamations by the President, and proposed or ratified amendments to the Constitution of the United States therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.

(July 30, 1947, c. 388, 61 Stat. 636; Sept. 23, 1950, c. 1001, § 1, 64 Stat. 979; Oct. 31, 1951, c. 655, § 3, 65 Stat. 710; Oct. 19, 1984, Pub.L. 98–497, Title I, § 107(d), 98 Stat. 2291.)

## HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1947 Acts.** House Report No. 251, see 1947 U.S. Code Cong. Service, p. 1511.

**1950 Acts.** House Report No. 2909, see 1950 U.S. Code Cong. Service, p. 3853.

**1951 Acts.** Senate Report No. 1020, see 1951 U.S. Code Cong. and Adm. Service, p. 2578.

**1984 Acts.** Senate Report No. 98–373 and House Conference Report No. 98–1124, see 1984 U.S. Code Cong. and Adm. News, p. 3865.

**Amendments**

**1984 Amendments.** Pub.L. 98–497 substituted "Archivist of the United States" for "Administrator of General Services" wherever appearing.

**1951 Amendments.** Act Oct. 31, 1951 substituted, in first sentence, "106b of this title" for "205 of the Revised Statutes".

**1950 Amendments.** Act Sept. 23, 1950 implemented 1950 Reorg. Plan No. 20, § 1, eff. May 24, 1950, 15 F.R. 3178, 64 Stat. 1272, by transferring to the Administrator of General Services duties formerly performed by the Secretary of State.

**Effective and Applicability Provisions**

**1984 Acts.** Amendment by Pub.L. 98–497 effective April 1, 1985, see section 301 of Pub.L. 98–497, set out as a note under section 2102 of Title 44, Public Printing and Documents.

**Publishing Pub.L. 107–206 in Statutes at Large**

Pub.L. 107–206, Title III, § 3002(h), Aug. 2, 2002, 116 Stat. 924, provided that: "In publishing the Act [the 2002 Supplemental Appropriations Act for Further Recovery From and Response to Terrorist Attacks on the United States, Pub.L. 107–206, Aug. 2, 2002, 116 Stat. 820] in slip form and in the United States Statutes at Large pursuant to section 112, of title 1, United States Code, the Archivist of the United States shall include after the date of approval at the end an appendix setting forth the text of the bill referred to in subsection (a) [enacting provisions set out as a Short Title note under 39 U.S.C.A. § 101]."

[Except as provided under section 3002(g)(2) of Pub.L. 107–206, amendments by Title III of Pub.L. 107–206 effective Aug. 2, 2002, see Pub.L. 107–206, Title III, § 3002(g), Aug. 2, 2002, 116

Stat. 924, set out as a note under 39 U.S.C.A. § 5402.]

**Publishing Pub.L. 106-554 in Statutes at Large**

Pub.L. 106-554, § 1(b), Dec. 21, 2000, 114 Stat. 2763, provided that: "In publishing this Act [Consolidated Appropriations Act, 2001, Pub.L. 106-554, Dec. 21, 2000, 114 Stat. 2763] in slip form and in the United States Statutes at Large pursuant to section 112 of title 1, United States Code, the Archivist of the United States shall include after the date of approval at the end appendixes setting forth the texts of the bills referred to in subsection (a) of this section [enacting into law the following bills of the 106th Congress: H.R. 5656, as introduced on Dec. 14, 2000; H.R. 5657, as introduced on Dec. 14, 2000; H.R. 5658, as introduced on Dec. 14, 2000; H.R. 5666, as introduced on Dec. 15, 2000, except that the text of H.R. 5666, as so enacted, shall not include section 123 (relating to the enactment of H.R. 4904); H.R. 5660, as introduced on Dec. 14, 2000; H.R. 5661, as introduced on Dec. 14, 2000; H.R. 5662, as introduced on Dec. 14, 2000; H.R. 5663, as introduced on Dec. 14, 2000; and H.R. 5667, as introduced on Dec. 15, 2000] and the text of any other bill enacted into law by reference by reason of the enactment of this Act."

**Publishing Pub.L. 106-553 in Statutes at Large**

Pub.L. 106-553, § 1(b), Dec. 21, 2000, 114 Stat. 2762, provided that: "In publishing this Act [Pub.L. 106-553, Dec. 21, 2000, 114 Stat. 2762] in slip form and in the United States Statutes at Large pursuant to section 112 of title 1, United States Code, the Archivist of the United States shall include after the date of approval at the end appendixes setting forth the texts of the bills referred to in subsection (a) of this section [enacting into law H.R. 5547 and H.R. 5548 of the 106th Congress, both as introduced on Oct. 25, 2000]."

**Publishing Pub.L. 106-429 in Statutes at Large**

Pub.L. 106-429, § 101(b), Nov. 6, 2000, 114 Stat. 1900, provided that: "In publishing this Act [Foreign Operations, Export Financing, and Related Programs Appropriations Act, 2001, Pub.L. 106-429, Nov. 6, 2000, 114 Stat. 1900; see Tables for complete classification] in slip form and in the United States Statutes at Large pursuant to section 112 of title 1, United States Code, the Archivist of the United States shall include after the date of approval [Nov. 6, 2000] at the end an appendix setting forth the text of the bill referred to in subsection (a) of this section [enacting into law H.R. 5526 of the 106th Congress, as introduced on Oct. 24, 2000]."

Pub.L. 106-429, § 101(a) [Title V, § 595(b)], Nov. 6, 2000, 114 Stat. 1900, 1900A-60, provided that: "In publishing the Act [Kentucky National Forest Land Transfer Act of 2000, Pub.L. 106-429, § 101(a) [Title V, 595(a)] Nov. 6, 2000, 114 Stat. 1900, 1900A-60, which was not classified to the Code] in slip form and in the United States Statutes at Large pursuant to section 112, of title 1, United States Code, the Archivist of the United States shall include after the date of approval [Nov. 6, 2000] at the end appendixes setting forth the texts of the bill referred to in subsection (a) of this section [enacting into law S. 3140 of the 106th Congress, as introduced on Sept. 28, 2000, which was not classified to the Code]."

**Publishing Pub.L. 106-398 in Statutes at Large**

Pub.L. 106-398, § 2, Oct. 30, 2000, 114 Stat. 1654, provided that: "In publishing this Act [Pub.L. 106-398, Oct. 30, 2000, 114 Stat. 1654] in slip form and in the United States Statutes at Large pursuant to section 112 of title 1, United States Code, the Archivist of the United States shall include after the date of approval an appendix setting forth the text of the bill referred to in section 1 [enacting into law H.R. 5408 of the 106th Congress, as introduced on Oct. 6, 2000]."

**Publishing Pub.L. 106-387 in Statutes at Large**

Pub.L. 106-387, § 1(b), Oct. 28, 2000, 114 Stat. 1549, provided that: "In publishing this Act [Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2001, Pub.L. 106-387, Oct. 28, 2000, 114 Stat. 1549; see Tables for complete classification] in slip form and in the United States Statutes at Large pursuant to section 112 of title 1, United States Code, the Archivist of the United States shall include after the date of approval at the end an appendix setting forth the text of the bill referred to in subsection (a) of this section [enacting into law H.R. 5426 of





the 106th Congress, as intrc
o, 2000]."

**Publishing Pub.L. 106-377**
**Large**

Pub.L. 106-377, § 1(b), (
114 Stat. 1441, provided t
lishing this Act [Departmen
Affairs and Housing and U
ment, and Independent Ag
priations Act, 2001, Pub.L.
27, 2000, 114 Stat. 1441;
complete classification] in
in the United States Stat
pursuant to section 112 of
States Code, the Archivist
States shall include after tl
proval at the end appendixe
the texts of the bills referre
tion (a) of this section [ena
H.R. 5482 and H.R. 5483,
duced on Oct. 18, 2000]."

**Publishing Pub.L. 106-346**
**Large**

Pub.L. 106-346, § 101
2000, 114 Stat. 1356, provi
publishing the Act [the I
Transportation and Related
propriations Act, 2001, Pu
Oct. 23, 2000, 114 Stat. 13
for complete classification
and in the United States Sta
pursuant to section 112 of
States Code, the Archivist

**American Digest System**

Statutes ⇐38, 282.
Key Number System Tc

**ALR Library**

186 ALR, Fed. 361, Val
49 U.S.C.A. §§ 6

**Encyclopedias**

29A Am. Jur. 2d Eviden
29A Am. Jur. 2d Evide
the District of Co
Am. Jur. 2d Statutes §

**Forms**

Federal Procedural For

**Treatises and Practice Aids**

Federal Evidence § 54
Federal Procedure, Lav
Facie Authentic I
Federal Procedure, La
ties, Rules, and F

pursuant to section 112 of
l States Code, the Archivist
l States shall include after
proval [Nov. 6, 2000] at the
idix setting forth the text of
red to in subsection (a) of
enacting into law H.R. 5526
Congress, as introduced on
]."

6–429, § 101(a) [Title V,
ov. 6, 2000, 114 Stat. 1900,
ovided that: "In publishing
tucky National Forest Land
of 2000, Pub.L. 106–429,
le V, 595(a)] Nov. 6, 2000,
0, 1900A–60, which was not
he Code] in slip form and in
ates Statutes at Large pursu-
112, of title 1, United States
chivist of the United States
after the date of approval
)] at the end appendixes set-
texts of the bill referred to
(a) of this section [enacting
140 of the 106th Congress,
l on Sept. 28, 2000, which
ified to the Code]."

**ub.L. 106–398 in Statutes at**

-398, § 2, Oct. 30, 2000, 114
rovided that: "In publishing
.L. 106–398, Oct. 30, 2000,
54] in slip form and in the
Statutes at Large pursuant
12 of title 1, United States
chivist of the United States
after the date of approval an
ting forth the text of the bill
section 1 [enacting into law
f the 106th Congress, as in-
Oct. 6, 2000]."

**ub.L. 106–387 in Statutes at**

–387, § 1(b), Oct. 28, 2000,
49, provided that: "In pub-
ct [Agriculture, Rural Devel-
d and Drug Administration,
Agencies Appropriations Act,
106–387, Oct. 28, 2000, 114
see Tables for complete clas-
slip form and in the United
es at Large pursuant to sec-
tle 1, United States Code, the
the United States shall in-
e date of approval at the end
setting forth the text of the
to in subsection (a) of this
cting into law H.R. 5426 of

the 106th Congress, as introduced on Oct. 6, 2000]."

**Publishing Pub.L. 106–377 in Statutes at Large**

Pub.L. 106–377, § 1(b), Oct. 27, 2000, 114 Stat. 1441, provided that: "In publishing this Act [Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 2001, Pub.L. 106–377, Oct. 27, 2000, 114 Stat. 1441; see Tables for complete classification] in slip form and in the United States Statutes at Large pursuant to section 112 of title 1, United States Code, the Archivist of the United States shall include after the date of approval at the end appendixes setting forth the texts of the bills referred to in subsection (a) of this section [enacting into law H.R. 5482 and H.R. 5483, both as introduced on Oct. 18, 2000]."

**Publishing Pub.L. 106–346 in Statutes at Large**

Pub.L. 106–346, § 101(b), Oct. 23, 2000, 114 Stat. 1356, provided that: "In publishing the Act [the Department of Transportation and Related Agencies Appropriations Act, 2001, Pub.L. 106–346, Oct. 23, 2000, 114 Stat. 1356; see Tables for complete classification] in slip form and in the United States Statutes at Large pursuant to section 112 of title 1, United States Code, the Archivist of the United States shall include after the date of approval at the end an appendix setting forth the text of the bill referred to in subsection (a) of this section [enacting into law H.R. 5394 of the 106th Congress, as introduced on Oct. 5, 2000]."

**Publishing Pub.L. 106–113 in Statutes at Large**

Pub.L. 106–113, Div. B, § 1000(b), Nov. 29, 1999, 113 Stat. 1536, provided that: "In publishing the Act [Pub.L. 106–113, Nov. 29, 1999, 113 Stat. 1501] in slip form and in the United States Statutes at Large pursuant to section 112, of title 1, United States Code, the Archivist of the United States shall include after the date of approval at the end appendixes setting forth the texts of the bills referred to in subsection (a) of this section [enacting into law H.R. 3421, H.R. 3422, H.R. 3423, H.R. 3424, H.R. 3425, H.R. 3426, H.R. 3427 (as amended), H.R. 3428, and S. 1948 of the 106th Congress, all as introduced on Nov. 17, 1999; see 113 Stat. 1535, 1536]."

**Effect of Repeal of Section 73 of Act January 12, 1895**

This section and section 112a of this title as not affected by the repeal of section 73 of Act Jan. 12, 1895, c. 23, 28 Stat. 615, which related to the same subject matter, see section 56(i) of Act Oct. 31, 1951, c. 655, 65 Stat. 729.

## LIBRARY REFERENCES

**American Digest System**

Statutes ⟹38, 282.
Key Number System Topic No. 361.

## Research References

**ALR Library**

186 ALR, Fed. 361, Validity, Construction, and Application of Pipeline Safety Act, 49 U.S.C.A. §§ 60101 et seq., and Other Acts Subsumed Therein.

**Encyclopedias**

29A Am. Jur. 2d Evidence § 1199, Presumptions Under State or Federal Acts.
29A Am. Jur. 2d Evidence § 1406, Federal Statutes, Treaties, and Rules; Laws of the District of Columbia.
Am. Jur. 2d Statutes § 42, Federal Law.

**Forms**

Federal Procedural Forms § 1:1325, Scope of Division.

**Treatises and Practice Aids**

Federal Evidence § 548, Presumptions Under Acts of Congress.
Federal Procedure, Lawyers Edition § 33:584, Documents Presumptively or Prima Facie Authentic Under Acts of Congress.
Federal Procedure, Lawyers Edition § 33:644, Federal Constitution, Laws, Treaties, Rules, and Regulations.

Restatement (Third) of Foreign Relations § 113, International Law and Agreements in Courts in the United States.

Wright & Miller: Federal Prac. & Proc. § 7144, Subdivision (10)-Presumptions Under Acts of Congress.

### WESTLAW ELECTRONIC RESEARCH

See WESTLAW guide following the Explanation pages of this volume.

### Notes of Decisions

**Conflict with coded provisions 1**
**Private laws 4**
**Publication 3**
**Statutes as evidence 2**
**Uncodified laws 5**

**1. Conflict with coded provisions**

Where there is conflict between codification and statutes at large, statutes at large must prevail. Abell v. U. S., Ct.Cl. 1975, 518 F.2d 1369, 207 Ct.Cl. 207, certiorari denied 97 S.Ct. 59, 429 U.S. 817, 50 L.Ed.2d 76. Statutes ⇐ 147

**2. Statutes as evidence**

Under provision that United States statutes at large shall be "legal evidence of laws," it was held that bill was approved at time endorsed on official document and stated in Statutes at Large rather than at time alleged in hearsay affidavits based upon hearsay newspaper statements; such hearsay newspaper statements were not sufficient basis for overcoming best evidence of which case was susceptible and presumption of regularity. U. S. v. Casson, C.A.D.C.1970, 434 F.2d 415, 140 U.S.App.D.C. 141. Evidence ⇐ 161.2

The printed copies of the Acts of Congress, distributed to the executives of the several states, to be distributed among the people, are proper evidence of the statutes therein contained, without other authentication. Taylor's Adm'r v. Bank of Alexandria, Va.1834, 32 Va. 471. Evidence ⇐ 328

The Acts of Congress, as they stand approved by the President and enrolled in the Department of State, are conclusive evidence of the written law. 1857, 9 Op. Atty.Gen. 1.

**3. Publication**

Fact that acting archivist of the United States failed to publish in the statutes at large as a duly enacted law a bill which the President contended had been subjected to a "pocket veto" did not preclude determination that any issues concerning whether bill had, in fact, become law were mooted when bill expired by its own terms; any interest of congressional members in the "lawmaking process" that might be served by publication of duly enacted statutes could not survive the life of the statute itself. Burke v. Barnes, U.S.Dist.Col.1987, 107 S.Ct. 734, 479 U.S. 361, 93 L.Ed.2d 732. Federal Courts ⇐ 13

**4. Private laws**

Law addressed to the District of Columbia is not necessarily private law; private laws operate only towards few or selected individuals or localities. Richey v. Indiana Dept. of State Revenue, Ind. Tax 1994, 634 N.E.2d 1375. Statutes ⇐ 77(1)

**5. Uncodified laws**

Uncodified section of the Internal Revenue Service Restructuring Act of 1998 had the force of law. Smith v. C.I.R., C.A.10 2001, 275 F.3d 912.

## § 112a. United States Treaties and Other International Agreements; contents; admissibility in evidence

(a) The Secretary of State shall cause to be compiled, edited, indexed, and published, beginning as of January 1, 1950, a compilation entitled "United States Treaties and Other International Agreements," which shall contain all treaties to which the United States is a party that have been proclaimed during each calendar year, and all

international agreei
States is a party tha
to which any other
calendar year. The
tional Agreements sl
agreements other tl
of such treaties and
of the United Stat
insular possessions (

(b) The Secretar
certain categories (
criteria are met:

(1) such agre
into force for t
advice and cons
Constitution of t

(2) the public
justify their pub
of the Foreign
and 1995, the
agreements do
standards intenc
of private indivi
nature of the p
can adequately
public disclosu
opinion of the P
the United State

(3) copies of
(2)(D)), includin
or similar purpo
State upon requ

(c) Any determina
ed in the Federal Re

(Added Sept. 23, 195(
1994, Pub.L. 103–236,

[1] So in original. The c

HIST

Revision Notes and Legisl
1950 Acts. House Repo
1950 U.S. Code Cong. S

1994 Acts. Senate Rep
and House Conferenc

CASE NO. 05-CR-10175-WGY

Nadine J. Griffin,

# EXHIBIT "C"

**1 page**

6050I, the first sentence of this section shall be applied by substituting "felony" for "misdemeanor" and "5 years" for "1 year".

In 1990, P.L. 101-647, Sec. 3303(a), substituted "by substituting 'felony' for 'misdemeanor' and" for "by substituting" in the last sentence of Code Sec. 7203, effective for actions and failures to act occurring after 11/29/90.

In 1988, P.L. 100-690. Sec. 7601(a)(2)(B), added the last sentence of Code Sec. 7203, effective for actions after 11/18/88.

In 1984, P.L. 98-369, Sec. 412(b)(9), deleted "(other than a return required under authority of section 6015)" after "to make a return" in Code Sec. 7203, effective for tax. yrs. begin. after 12/31/84.

In 1982, P.L. 97-248, Sec. 327, added the last sentence to Code Sec. 7203, effective 9/3/82.

—P.L. 97-248, Sec. 329(b), substituted "$25,000 ($100,000 in the case of a corporation)" for "$10,000" in Code Sec. 7203, effective for offenses committed after 9/3/82.

In 1968, P.L. 90-364, Sec. 103, deleted "or section 6016" at end of parenthetical phrase, effective for tax. yrs. begin, after 12/31/67. For special provision on effective date, see Sec. 104 of this Act, reproduced after Code Sec. 6425.

## Sec. 7204. Fraudulent statement or failure to make statement to employees.

In lieu of any other penalty provided by law (except the penalty provided by section 6674) any person required under the provisions of section 6051 to furnish a statement who willfully furnishes a false or fraudulent statement or who willfully fails to furnish a statement in the manner, at the time, and showing the information required under section 6051, or regulations prescribed thereunder, shall, for each such offense, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both.

## Sec. 7205. Fraudulent withholding exemption certificate or failure to supply information.

**(a) Withholding on wages.**

Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an increase in the tax to be withheld under section 3402, shall, in addition to any other penalty provided by law, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both.

**(b) Backup withholding on interest and dividends.**

If any individual willfully makes a false certification under paragraph (1) or (2)(C) of section 3406(d), then such individual shall, in addition to any other penalty provided by law, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both.

In 1989, P.L. 101-239, Sec. 7711(b)(2), amended subsec. (b), effective for returns and statements the due date for which (determined without regard to extensions) is after 12/31/89.

Prior to amendment subsec. (b) read as follows:

*"(b) Backup withholding on interest and dividends.*

"If any individual willfully makes—

"(1) any false certification or affirmation on any statement required by a payor in order to meet the due diligence requirements of section 6676(b), or

"(2) a false certification under paragraph (1) or (2)(C) of section 3406(d), then such individual shall, in addition to any other penalty provided by law, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both."

In 1984, P.L. 98-369, Sec. 159(a)(1), and (2), substituted "in addition to" for "in lieu of" each place it appeared in Code Sec. 7205, and deleted "(except the penalty provided by section 6682)" each place it appeared in Code Sec. 7205, effective for actions and failures to act occurring after 7/18/84.

In 1983, P.L. 98-67, Sec. 107(b)(1), substituted "(a) Withholding on wages. Any individual" for "Any individual" in Code Sec. 7205 . . . Sec. 107(b)(2), added subsec. (b), effective 8/5/83.

In 1981, P.L. 97-34, Sec. 721(b), substituted "$1,000" for "$500" in Code Sec. 7205, effective for acts and failures to act after 12/31/81.

In 1966, P.L. 89-368, substituted "3402" for "3402(f)", and substituted "other penalty provided by law (except the penalty provided in section 6682)" for "penalty otherwise provided." in Code Sec. 7205, effective for remuneration paid after 4/30/66.

## Sec. 7206. Fraud and false statements.

Any person who—

**(1) Declaration under penalties of perjury.** Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; or

**(2) Aid or assistance.** Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; or

**(3) Fraudulent bonds, permits, and entries.** Simulates or falsely or fraudulently executes or signs any bond, permit, entry, or other document required by the provisions of the internal revenue laws, or by any regulation made in pursuance thereof, or procures the same to be falsely or fraudulently executed, or advises, aids in, or connives at such execution thereof; or

**(4) Removal or concealment with intent to defraud.** Removes, deposits, or conceals, or is concerned in removing, depositing, or concealing, any goods or commodities for or in respect whereof any tax is or shall be imposed, or any property upon which levy is authorized by section 6331, with intent to evade or defeat the assessment or collection of any tax imposed by this title; or

**(5) Compromises and closing agreements.** In connection with any compromise under section 7122, or offer of such compromise, or in connection with any closing agreement under section 7121, or offer to enter into any such agreement, willfully—

(A) Concealment of property. Conceals from any officer or employee of the United States any property belonging to the estate of a taxpayer or other person liable in respect of the tax, or

(B) Withholding, falsifying, and destroying records. Receives, withholds, destroys, mutilates, or falsifies any book, document, or record, or makes any false statement, relating to the estate or financial condition of the taxpayer or other person liable in respect of the tax;

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

In 1982, P.L. 97-248, Sec. 329(c), substituted "$100,000 ($500,000 in the case of a corporation)" for "$5,000" in Code Sec. 7206, effective for offenses committed after 9/3/82.

## Sec. 7207. Fraudulent returns, statements, or other documents.

Any person who willfully delivers or discloses to the Secretary any list, return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined not more than $10,000 ($50,000 in the case of a corporation), or imprisoned not more than 1 year, or both. Any person required pursuant to section 6047(b), section 6104(d), or subsection (i) or (j) of section 527 to furnish any information to the Secretary or any other

CASE NO. 05-CR-10175-WGY

Nadine J. Griffin,

# EXHIBIT "D"

**56 pages**



**U.S. Departme ɔf Justice**
**Tax Division**

*Western Criminal Enforcement Section*
*P.O. Box 972, Ben Franklin Station* *(202) 514-5762*
*Washington, D.C. 20044* *Telefax: (202) 514-9623*

February 16, 2006

Nadine Griffin
151 Middle Road
Center Tuftonboro, New Hampshire 03816

Re: United States v. Nadine J. Griffin, Case No. 05-CR-10175 -Additional Bate Stamped Discovery

Dear Ms. Griffin:

Enclosed are documents that were previously provided to you in early September 2005 as part of automatic discovery under the local rules; however, the enclosed documents were not bate stamped. These documents have now been bate stamped with the numbers US5409 to US5473.

Also, in the automatic discovery letter dated September 7, 2005, you were provided a list of three case-in-chief witnesses that have been given promises, rewards, or inducements and which the government anticipates calling in its case-in-chief. See Government Automatic Discovery Letter, dated September 7, 2005, Sec. G, ¶ 3. The government anticipates that Ms. Becky Coggins will testify at trial as a witness for the government. Ms. Coggins pled guilty on February 7, 2006, and is scheduled to be sentenced on July 10, 2006, before the Honorable Marianne B. Bowler.

The government is obligated under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A) regarding potential witnesses. Accordingly, by disclosing that the government anticipates calling Ms. Coggins as a witness at trial, the government believes that it is complying with the local rules. Enclosed with this letter, please find an unsigned copy of Ms. Coggins' plea agreement. Other than Ms. Coggins' plea of guilty, the government is unaware of any other criminal conviction.

Sincerely yours,

Christopher Maietta
Trial Attorney
U.S. Department of Justice
Tax Division
Criminal Enforcement Section



**U.S. Department of Justice**

***Michael J. Sullivan***
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

October 14, 2005

Shari L. Greenberger
Attorney at Law
506 Broadway
San Francisco, CA 94133

Re: Becky L. Coggins
Criminal No.

Dear Ms. Greenberger:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, BECKY L. COGGINS ("Defendant"), in the above-captioned case. The Agreement is as follows:

1. Change of Plea

At the earliest practicable date, Defendant shall waive indictment and plead guilty to a one count criminal Information charging her with willfully delivering or filing a fraudulent return with the Internal Revenue Service in violation of Title 26, United States Code, Section 7207 for the tax year 2000. Defendant expressly and unequivocally admits that she in fact knowingly, intentionally and willfully committed the crime charged in the Information, and is in fact guilty of that offense.

2. Penalties

Defendant faces the following maximum penalties on the 1 count in the criminal Information:

- 1 year imprisonment;
- a fine of the greater of $100,000 or twice the gross pecuniary gain of the offense;
- three years of supervised release; and

- a $100 special assessment.

3. Sentencing Guidelines

The sentence to be imposed upon Defendant is within the discretion of the sentencing Court, subject to the statutory maximum penalties set forth above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by United States v. Booker and United States v. Fanfan, 125 S. Ct. 738, 2005 WL 50108 (January 12, 2005). In imposing the sentence, the Court must consult and take into account the United States Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

The parties will take the following positions at sentencing under the United States Sentencing Guidelines:

In order to avoid a violation of the ex post facto clause, the November 1, 2000 edition of the Sentencing Guidelines, in effect at the time the false tax return was filed, is used to determine the base offense level.

Guideline section § 2T1.1 applies to violations of 26 U.S.C. § 7207. Pursuant to § 2T1.1, the base offense level is determined based on the tax loss that was the object of the offense. The parties agree that the tax loss in this case is between $13,500 and $23,500. Using the Tax Table at § 2T4.1, a tax loss of between $13,500 and $23,500 results in a Guideline offense level of 11.

It is the government's position that an upward adjustment of 2 levels is appropriate based on the application of the Specific Offense Characteristics under U.S.S.G. § 2T1.1(b)(2) for sophisticated concealment. The Defendant opposes this upward adjustment.

The U.S. Attorney and Defendant agree that there is no basis for a departure from the sentencing range by the United States Sentencing Guideline, except as explicitly reserved below. Accordingly, neither the U.S. Attorney nor Defendant will seek departure on any ground from the Sentencing Guidelines, except under the conditions explicitly set forth below:

A. The Defendant reserves the right to move for a downward departure from the sentencing range established by the United States Sentencing Guidelines on the following grounds:

1. Aberrant nature of offense conduct(U.S.S.G. § 5K2.20);

2. Superior acceptance of responsibility;

3. Previous employment history; (U.S.S.G. § 5H1.5);

4. Voluntary disclosure of offense;(U.S.S.G. § 5K2.16);

5. Lack of sophistication;

6. Extraordinary family circumstances; (U.S.S.G. § 5H1.6);

7. extraordinary rehabilitation prior to sentencing;

8. post offense restitution;

9. extreme remorse;

10. cooperation with authorities;

11. exceptional charitable and community activities;

12. totality of the circumstances.

B. The Defendant stipulates and agrees that she will not seek, and there is no basis for, a departure from the sentencing range established by the United States Sentencing Guidelines on any other grounds. The Defendant further agrees that she will file her motion for a downward departure, and any legal memoranda in support thereof, at least twenty-one days prior to sentencing. Any departure grounds not raised and filed with the Court twenty-one days prior to sentencing shall be deemed waived.

The U.S. Attorney reserves the right to oppose Defendant's departure argument(s).

Based on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by two levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between her execution of this Agreement and sentencing Defendant:

(a) Fails to admit a complete factual basis for the plea;

(b) Fails to truthfully admit her conduct in the offenses of conviction;

(c) Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

(d) Fails to provide truthful information about her financial status;

(e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

(f) Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

(g) Intentionally fails to appear in Court or violates any condition of release;

(h) Commits a crime;

(i) Transfers any asset protected under any provision of this Agreement; and/or

(j) Attempts to withdraw her guilty plea.

Defendant expressly understands that she may not withdraw her plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that she receive a reduction in Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the Government may seek an upward adjustment pursuant to U.S.S.G. § 3C1.1 if Defendant obstructs justice after date of this Agreement.

4. Sentence Recommendation

The U.S. Attorney agrees to recommend a sentence at the low end of the guidelines range. There is no agreed recommendation concerning a fine, restitution or conditions of supervised release.

Defendant must, within six months of sentencing:

(a) Cooperate with the Examination and Collection Divisions of the Internal Revenue Service;

(b) Provide to the Examination Division all financial information necessary to determine Defendant's prior tax liabilities;

(c) Provide to the Collection Division all financial information necessary to determine Defendant's ability to pay;

(d) File accurate and complete tax returns for tax years 1999 through and including 2004; and

(e) Make a good faith effort to pay all delinquent and/or additional taxes, interest and penalties.

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves her right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

5. Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6. Waiver of Rights to Appeal and to Bring Collateral Challenge

Defendant is aware that she has the right to challenge her sentence and guilty plea on direct appeal. Defendant is also aware that she may, in some circumstances, be able to argue that her plea should be set aside, or her sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).

In consideration of the concessions made by the U.S.
Attorney in this Agreement, Defendant knowingly and voluntarily
waives her right to appeal or collaterally challenge:

                (a)   Defendant's guilty plea and any other aspect of
Defendant's conviction, including, but not limited
to, any rulings on pretrial suppression motions or
any other pretrial dispositions of motions and
issues;

                (b)   The adoption by the District Court at sentencing
of any of the positions found in paragraph 3 which
will be advocated by the U.S. Attorney with regard
to offense conduct, adjustments and/or criminal
history under the U.S. Sentencing Guidelines; and

                (c)   The imposition by the District Court of a sentence
which does not exceed that being recommended by
the U.S. Attorney, as set out in paragraph 4 and,
even if the Court rejects one or more positions
advocated by the U.S. Attorney or Defendant with
regard to the application of the U.S. Sentencing
Guidelines.

In consideration of the concessions made by the U.S.
Attorney in this Agreement, Defendant agrees not to seek to be
sentenced or re-sentenced with the benefit of any successful
collateral challenge of any counseled criminal conviction that
exists as of the date of this Agreement.

Defendant's waiver of rights to appeal and to bring
collateral challenges shall not apply to appeals or challenges
based on new legal principles in First Circuit or Supreme Court
cases decided after the date of this Agreement which are held by
the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of
the United States as set forth in 18 U.S.C. § 3742(b), and the
U.S. Attorney therefore retains her appeal rights.

    7.   Cooperation

        a.   Terms of Cooperation

Defendant agrees to cooperate fully with law enforcement
agents and government attorneys.  She must provide complete and
truthful information to all law enforcement personnel.  If her
testimony is requested, she must testify truthfully and

completely before any grand jury, and at any hearing and trial. Defendant must answer all questions put to her by any law enforcement agents or government attorneys and must not withhold any information. She must not attempt to protect any person or entity through false information or omission, or to implicate falsely any person or entity. Upon request, she must furnish all documents, objects and other evidence in her possession, custody or control that are relevant to the government's inquiries.

Defendant understands that she has a right to have counsel present when communicating with representatives of the government concerning the criminal conduct with which she has been charged. To facilitate her cooperation, Defendant hereby knowingly and voluntarily waives this right with respect to all debriefings by law enforcement agents and government attorneys and all appearances to testify. This waiver may be revoked at any time by a specific request by Defendant or her counsel without otherwise affecting the terms or enforceability of this Agreement.

To enable the Court to have the benefit of all relevant sentencing information, Defendant waives any rights she may have to prompt sentencing and will join in any requests by the U.S. Attorney that sentencing be postponed until Defendant's cooperation is complete. Defendant understands that the date of Defendant's sentencing is within the sole discretion of the Court and that this Agreement may require Defendant's cooperation to continue even after Defendant has been sentenced. Defendant's failure to continue to cooperate pursuant to the terms of this Agreement after sentence is imposed shall constitute a breach of this Agreement by Defendant.

b. Substantial Assistance Motion

In the event that Defendant provides substantial assistance in the investigation or prosecution of another person who has committed a criminal offense, the U.S. Attorney agrees that, at or before the time of sentencing, the U.S. Attorney will make a motion under U.S.S.G. § 5K1.1, so that the sentencing court may impose a sentence below that which otherwise would be required under the Sentencing Guidelines [and the relevant statutes]. The determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review. The U.S. Attorney expressly reserves the right to decline to file a motion pursuant to U.S.S.G. § 5K1.1 if Defendant violates any condition of her pretrial release, violates any of the requirements of honesty and candor detailed in paragraph 7(a) above, or engages in any

criminal conduct after the date she signs this Agreement. Defendant may not withdraw her plea if the U.S. Attorney determines that Defendant has not rendered substantial assistance, or if the Court refuses to grant the U.S. Attorney's motion for a downward departure.

c. Sentence Recommendation with Substantial Assistance

If Defendant provides substantial assistance, subject to all the provisions of paragraphs 7(a) and (b) above, the U.S. Attorney will advise the sentencing judge of the full nature, extent and value of the assistance provided by Defendant.

The U.S. Attorney agrees to recommend a sentence at the low end of the guidelines range.

d. Letter Immunity

In return for Defendant's full and truthful cooperation, the U.S. Attorney agrees not to use any information provided by Defendant pursuant to the proffer letter dated January 14, 2003 (or any information directly or indirectly derived therefrom) against Defendant in any criminal case except in a prosecution (1) for perjury or obstruction of justice, or for making a false statement after the date of this Agreement; or (2) for an act of physical violence against the person of another, or conspiracy to commit any such act of violence. The U.S. Attorney reserves the right to respond fully and completely to all requests for information by the District Court and U.S. Probation Office in this case. All such disclosures, however, shall be made subject to the provisions constraining the use of this information by the District Court and U.S. Probation Office contained in U.S.S.G. § 1B1.8(a) and the commentary thereto. Notwithstanding the provisions of U.S.S.G. § 1B1.8(b)(5) and the commentary thereto, the U.S. Attorney agrees to take the position that at the time of sentencing information provided by Defendant pursuant to this Agreement should not be used either in determining where within the applicable guideline range to sentence Defendant or in determining whether, or to what extent, a departure from the Sentencing Guidelines is warranted.

If the U.S. Attorney determines that Defendant has breached this Agreement by making any false, incomplete or misleading statement, or by providing any false, incomplete or misleading information to any law enforcement personnel, grand jury or court, the U.S. Attorney may terminate this Agreement as set forth below, and may also prosecute Defendant for any and all

offenses that could be charged against her in the District of Massachusetts, including, but not limited to, false statements and perjury.

8. Court Not Bound By Agreement

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the sentencing judge or the U.S. Probation Office. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Defendant may not withdraw her plea of guilty regardless of what sentence is imposed. Nor may Defendant withdraw her plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

9. Information For Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning her assets.

10. Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of her conduct and her plea of guilty to the charges specified in paragraph one of this Agreement. Defendant agrees to cooperate with employees of the IRS, the Civil Division of the U.S. Attorney's Office, and law enforcement agents working with attorneys in the Civil Division of the U.S. Attorney's Office, in making an assessment of her civil liabilities. Defendant specifically authorizes release by the IRS to the aforementioned agencies and their representatives of information for purposes of making that assessment. Defendant further agrees to assent to the filing and allowance of a motion under Rule 6(e) of the Federal Rules of Criminal Procedure, to permit the disclosure of matters occurring before the grand jury for this purpose.

11. Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

12. Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of her pretrial release, or has committed any crime following her execution of this Agreement, the U.S. Attorney may, at her sole option, be released from her commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to her under the law, irrespective of whether she elects to be released from her commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that no such breach by her of an obligation under this Agreement shall give rise to grounds for withdrawal of her guilty plea. Defendant understands that, should she breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by her, and any information, materials, documents or objects which may be provided by her to the government subsequent to this Agreement, or pursuant to the proffer agreement dated January 14, 2003 without any limitation. In this regard, Defendant hereby waives any defense to any charges which she might otherwise have under any statute of limitations or the Speedy Trial Act.

13. Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

14. Complete Agreement

This letter contains the complete and only agreement between the parties relating to the disposition of this case. No promises, representations or agreements have been made other than those set forth in this letter. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral.

This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Trial Attorney Mark Odulio.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: Diane Freniere
Diane Freniere, Chief
White Collar Crime Section

Larry J. Wszalek
Trial Attorney
U.S. Department of Justice

Mark T. Odulio
Trial Attorney
U.S. Department of Justice

Christopher J. Maietta
Trial Attorney
U.S. Department of Justice

ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly

because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

______________________________
Becky L. Coggins
Defendant

Date:____________________

I certify that Becky L. Coggins has read this Agreement and that we have discussed its meaning. I believe she understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

______________________________
Shari L. Greenberger, Esq.
Attorney for Defendant

Date:____________________

Judge Thomas S. Zilly

FILED ENTERED LODGED RECEIVED
JUL 15 2004
AT SEATTLE CLERK U.S. DISTRICT COURT WESTERN DISTRICT OF WASHINGTON BY DEPUTY

04-CR-00229-BCST

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,
Plaintiff,
v.
DANIEL ANDERSEN,
Defendant.

NO. 2:04-CR-00229 RSL

PLEA AGREEMENT

The United States of America, by and through John McKay, United States Attorney for the Western District of Washington, and Larry J. Wszalek and Mark T. Odulio, Department of Justice Tax Division trial attorneys and the defendant, DANIEL ANDERSEN, and his attorney, William A. Cohan, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

1. The Charge(s). Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to the following charge~~s~~ contained in the Indictment. By entering this plea of guilty, Defendant hereby waives all objections to the form of the charging document.

a. Conspiracy to defraud the United States as charged in Count 1, in violation of Title 18, United States Code, Section 371;

Defendant further understands that before entering his/her plea of guilty, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the

UNITED STATES ATTORNEY
501 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

government in a prosecution for perjury or false statement.

2. Elements of the Offense. The elements of the offense of Conspiracy to Defraud the United States as charged in Count 1 of the Indictment, in violation of Title 18, United States Code, Section 371, are as follows:

First, the conspiracy, agreement, or understanding to defraud the United States by dishonest and deceitful means for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of the U.S. Department of Treasury, Internal Revenue Service, in the ascertainment, computation, and collection of income taxes as described in the indictment, was formed, reached or entered into by two or more persons;

Second, at some point during the existence or life of the conspiracy, agreement, or understanding, one of its members knowingly performed one of the overt acts charged in the indictment in order to further or advance the purpose of the agreement; and,

Third, at some time during the existence of the agreement or understanding (alleged in the indictment), defendant DANIEL ANDERSEN knew the purpose of the agreement, and then deliberately joined in the conspiracy, agreement, or understanding.

3. The Penalties.

a. Defendant understands that the statutory penalties for the offense of Conspiracy to Defraud the United States, as charged in Count 1 of the indictment are as follows:

1) imprisonment for up to five (5) years;
2) a fine of up to two hundred fifty thousand dollars ($250,000.00);
3) a period of supervision following release from prison of not more than three (3) years; and

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

4) a one hundred dollar ($100.00) penalty assessment which Defendant agrees shall be paid at or before the time of sentencing.

~~Defendant understands that in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.~~ Stricken by Court WLCohen LJW MXD

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs or restitution, is due and payable immediately, and further agrees to submit a completed Financial Statement of Debtor form as requested by the Department of Justice Tax Division and/or the United States Attorney's Office.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of its conditions, he could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

4. Rights Waived by Pleading Guilty. Defendant understands that, by pleading guilty, he knowingly and voluntarily waives the following rights:

a. The right to plead not guilty, and to persist in a plea of not guilty;

b. The right to a speedy and public trial before a jury of Defendant's peers;

c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d. The right to be presumed innocent until guilt has been established at trial, beyond a reasonable doubt;

e. The right to confront and cross-examine witnesses against

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

Defendant at trial;

f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant;

h. The right to appeal a finding of guilt or any pretrial rulings; and

i. The right, to the extent required by law, to have sentencing factors charged in the Indictment or determined by a jury beyond a reasonable doubt.

5. United States Sentencing Guidelines. Defendant understands and acknowledges that, absent applicable intervening law:

a. The United States Sentencing Guidelines, promulgated by the United States Sentencing Commission, are applicable to this case;

b. The Court will determine Defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. The Court may impose any sentence authorized by law, including a sentence that, under some circumstances, departs from any applicable Sentencing Guidelines range up to the maximum term authorized by law;

d. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties, or by the United States Probation Department; and

e. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

6. Ultimate Sentence. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7. Restitution. If restitution is applicable in this case, Defendant shall make

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

restitution in the amount ordered by the Court, with credit for any amounts already paid. Said amount shall be due and payable immediately and shall be paid in accordance with a schedule of payments as set by the United States Probation Office and ordered by the Court.

8. Statement of Facts. The parties agree on the following facts in support of Defendant's guilty plea and sentencing. Defendant admits he is guilty of the charged offense and expressly waives any right to have these facts determined by a jury beyond a reasonable doubt.

a. In or about the Fall 1996 DANIEL ANDERSEN and DAVID STRUCKMAN founded an organization named Global Prosperity which, during its existence through May 2002, was in the business of selling a 12-part audiotape/cd series and seminar tickets to offshore seminars. During that time period, DAVID STRUCKMAN resided in the Western District of Washington and from there conducted the business of Global Prosperity. During that same time period, Global Prosperity received gross receipts in excess of fifty million dollars ($50,000,000);

b. In order to conceal the business affairs and income of Global Prosperity, DANIEL ANDERSEN, DAVID STRUCKMAN, LORENZO LAMANTIA, KULDIP SINGH, and DWAYNE ROBARE used a primary set of purported trusts and related nominee bank accounts to conceal the business operations of Global Prosperity. The purported trusts and related bank accounts were named: Capital Finance Group (CFG); Educational Publishing Systems (EPS); Independent Diversity Entrepreneurs & Associates (IDEA); Alternate Ventures; International Free Enterprise Associates (IFEA); and Pacific Dynamics Foundation (PDF);

c. In order to conceal income earned from the sale of Global Prosperity products, DANIEL ANDERSEN deposited gross business receipts into nominee bank accounts he opened and maintained in the names of Capital Finance Group (CFG); Educational Publishing Systems (EPS); and Independent Diversity Entrepreneurs &

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

Associates (IDEA);

d. In order to conceal profits earned from Global Prosperity, DANIEL ANDERSEN, DAVID STRUCKMAN, and LORENZO LAMANTIA made profit distributions to each other and the co-defendants by remitting checks from the primary set of purported trust bank accounts to a secondary series of purported trusts and related bank accounts including the following:

1). DANIEL ANDERSEN received and deposited profit distributions from Global Prosperity to secondary bank accounts in the names of Dynamic Strategy Foundation (DSF); The Atlas Group; and an offshore bank account identified as PILL #9490. DANIEL ANDERSEN had signature authority over each of these bank accounts;

2). DANIEL ANDERSEN made profit distributions to DAVID STRUCKMAN by remitting checks to secondary bank accounts controlled by DAVID STRUCKMAN in the names of Crescent Moon Enterprises and Specktackular Holdings.

3). DANIEL ANDERSEN made profit distributions to LORENZO LAMANTIA and KULDIP SINGH by remitting checks to secondary bank accounts controlled by LORENZO LAMANTIA and KULDIP SINGH in the names of Pacific Dynamics Foundation, The Galt Group, and Kaylo;

4). DANIEL ANDERSEN made profit distributions to DWAYNE ROBARE by remitting checks to secondary bank accounts controlled by DWAYNE ROBARE in the names of Strategic Solutions and an offshore bank account identified as PILL #10731;

e. DANIEL ANDERSEN, DAVID STRUCKMAN, LORENZO LAMANTIA and KULDIP SINGH did not provide to one another or report to the IRS through Forms W-2, 1099, Schedule K-1, or any other statement or form, income distributions made to each other from the profits of Global Prosperity;

f. DANIEL ANDERSEN maintained business offices for Global Prosperity at 19 Brigham Street Unit 8, Marlborough, Massachusetts in the names of EPS

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

and IDEA and hired individuals to perform administrative duties related to the business of Global Prosperity but did not report to the IRS wages paid to EPS and IDEA workers and did not issue annual Forms W-2 and/or 1099 to EPS and IDEA workers;

g. DANIEL ANDERSEN, DAVID STRUCKMAN, LORENZO LAMANTIA, KULDIP SINGH and DWAYNE ROBARE maintained the anonymity of Global Prosperity and themselves by periodically changing the name of the Global Prosperity organization, using mail drops to conceal its location, conducting financial transactions in cash, and discouraging the use of one's social security number to escape notice from the Internal Revenue Service;

h. DANIEL ANDERSEN did not file individual income tax returns; trust returns or trust statements; declarations of a financial interest in, or signature authority over, a foreign bank account; corporate tax returns; partnership returns; or Schedule C (sole proprietorship) filings as otherwise required by law.

9. Tax Loss Amount.

The United States and Defendant agree and stipulate that pursuant to USSG § 2T4.1 (2003 Guideline book) the tax loss in this case is more than $2,500,000 but not more than $7,000,000, which corresponds to an offense level 24. Defendant agrees that he expressly waives any right to have this stipulated tax loss determined by a jury beyond a reasonable doubt. Defendant understands that this Plea Agreement does not preclude the Internal Revenue Service from assessing and determining any additional civil tax, penalties, and/or interest that may be owed by Defendant. In addition, Defendant understands that he is required to pay costs of prosecution.

10. Sentencing Factors. The parties agree and stipulate that the facts admitted by Defendant in the Statement of Facts in this Plea Agreement support the application of the following Sentencing Guidelines. Defendant expressly waives his right to have any

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

of these sentencing factors charged in the Indictment or determined by a jury beyond a reasonable doubt.

a. The United States and Defendant agree and stipulate to a two (2) level upward adjustment to Defendant's base offense level pursuant to USSG § 2T1.1(b)(2) for an offense involving sophisticated means;

b. an additional four (4) level upward adjustment to Defendant's base offense level pursuant to USSG §3B1.1(a) for Defendant's aggravating role as an organizer, leader, manager, or supervisor.

11. Non-Prosecution of Additional Offenses. As part of this Plea Agreement, the United States Department of Justice agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement, other than crimes of violence, that are based upon evidence in its possession at this time, or that arise out of the conduct giving rise to this investigation. In addition, the United States Department of Justice agrees not to prosecute Defendant for any other offense based upon information the Defendant provides pursuant to this Agreement to cooperate with the authorities. In this regard, Defendant recognizes that the United States has agreed not to prosecute any other criminal charges that the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant acknowledges and agrees, however, that for purposes of preparing the Presentence Report, the United States Department of Justice Tax Division will provide the United States Probation Office with evidence of all relevant conduct committed by Defendant. Defendant agrees and acknowledges that this prosecution was substantially justified in light of the evidence available to the United States, and was not vexatious, frivolous or taken in bad faith, and does not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119(1997).

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

12 Acceptance of Responsibility. The United States acknowledges that if Defendant qualifies for an acceptance of responsibility adjustment pursuant to USSG § 3E1.1(a) and if the offense level is sixteen (16) or greater, Defendant's total offense level should be decreased by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the authorities of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

13. Cooperation.

a. Defendant shall cooperate completely and truthfully with law enforcement authorities in the investigation and prosecution of other individuals involved in criminal activity. Such cooperation shall include, but not be limited to, complete and truthful statements to law enforcement officers, as well as complete and truthful testimony, if called as a witness before a grand jury, or at any state or federal trial, retrial, or other judicial proceedings. Defendant acknowledges that this obligation to cooperate shall continue after Defendant has entered a guilty plea and sentence has been imposed, no matter what sentence Defendant receives; Defendant's failure to do so may constitute a breach of this Plea Agreement.

b. Defendant understands that the United States will tolerate no deception from him. If, in the estimation of the United States Department of Justice Tax Division, information or testimony provided from the date of the Plea Agreement, proves to be intentionally untruthful or incomplete in any way, regardless of whether the untruthfulness helps or hurts the United States' case, the United States Department of Justice Tax Division may consider that Defendant has breached this Plea Agreement.

c. Defendant agrees to cooperate fully with the Internal Revenue Service in the ascertainment, computation and payment of his correct federal and state income tax liability for the years 1996 to the present. To that end, the defendant will:

(1) Cooperate with the Internal Revenue Service by providing all

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

financial information necessary to ascertain and assess Defendant's back taxes, interest, and penalties;

(2) Provide to the Internal Revenue Service all financial information necessary to determine Defendant's ability to pay;

(3) Make a good faith effort to pay all delinquent and/or additional taxes, interest and penalties, including, paying the liability stemming from the offense conduct in a lump sum should the Internal Revenue Service determine he is able to so pay, or entering an installment agreement to pay the liability in total during the period of supervised release or probation; and

(4) Timely file his federal income tax returns during the term of supervised release and refrain from incurring new credit charges or opening additional lines of credit without the approval of his probation officer unless he is in compliance with any installment payment schedule.

d. The parties agree that information provided by Defendant in connection with this Plea Agreement shall not be used to determine Defendant's sentence, except to the extent permitted by USSG § 1B1.8.

e. If the Defendant provides substantial assistance, the United States Department of Justice Tax Division agrees to file a motion pursuant to USSG § 5K1.1 and/or Rule 35, Federal Rules of Criminal Procedure. The determination of whether the Defendant has provided substantial assistance rests entirely within the discretion of the United States Department of Justice Tax Division.

f. Defendant agrees that his sentencing date may be delayed based on the United States' need for his continued cooperation, and agrees not to object to any continuances of his sentencing date sought by the United States.

14. Voluntariness of Plea. Defendant acknowledges that he has entered into

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

this Plea Agreement freely and voluntarily, and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter this plea of guilty.

15. Statute of Limitations. In the event that this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) 30 days following the date of non-acceptance of the Plea Agreement by the Court; or (2) 30 days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

16. Post-Plea Conduct. Defendant understands that the terms of this Plea Agreement apply only to conduct that occurred prior to the execution of this Agreement. If, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that is in violation of his conditions of release (examples of which include, but are not limited to: obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer or Court), the United States is free under this Agreement to seek a sentence that takes such conduct into consideration. Such a sentence could include, to the extent the United States Sentencing Guidelines are applicable, a sentencing enhancement or upward departure.

17. Completeness of Agreement. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds the United States Department of Justice, including all other

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

United States Attorney's Offices and all other offices or agencies of the United States Department of Justice.

Dated this 15th day of July, 2004.

LARRY J. WSZALEK
Department of Justice Tax Division
Trial Attorney

DANIEL ANDERSEN
Defendant

MARK T. ODULIO
Department of Justice Tax Division
Trial Attorney

WILLIAM A. COHAN
Attorney for Defendant

FLOYD G. SHORT
Assistant United States Attorney

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

FILED
MAR 3 2003
LARRY W. PROPES, CLERK
CHARLESTON, SC

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

UNITED STATES OF AMERICA )
Plaintiff, )
v. )
SHOSHANA B. SZUCH )
Defendant. )

Criminal No: 2:03-289

**PLEA AGREEMENT**

AGREEMENT made this 27 day of February, 2003, between and among the United States of America, as represented by United States Attorney J. STROM THURMOND, JR., Department of Justice Tax Division Trial Attorneys Larry J. Wszalek and Mark T. Odulio ; the Defendant SHOSHANA B. SZUCH, and Defendant's Attorney, Lionel S. Lofton , Esquire.

IN CONSIDERATION of the mutual promises made herein, the parties hereto agree as follows:

1. The Defendant, SHOSHANA B. SZUCH, agrees to waive Indictment, FED. R. CRIM. P. 7(b), and arraignment, FED. R. CRIM. P. 10, and agrees to plead guilty to an Information charging tax evasion, in violation of Title 26, United States Code, Section 7201, FED.R. CRIM. P. 11. The elements of the offense are:

(a) An attempt to evade or defeat a tax or payment thereof;

(b) An additional tax due and owing;

(c) Willfulness.

2. The Defendant, SHOSHANA B. SZUCH, agrees to consent to the commencement of a presentence investigation immediately, FED. R. CRIM. P. 32(c).

Document # 2

3. The Defendant, SHOSHANA B. SZUCH, understands that in addition to any fines that the Court may impose, the Court will assess $100.00 for each felony count to which she pleads guilty. The Defendant agrees to pay the special assessment by certified check or money order and to deliver the special assessment, on the day the Defendant executes this Plea Agreement, to the Clerk, U.S. District Court, in compliance with the Statement of Special Assessment Amount attached hereto. The Defendant further agrees that any monetary penalty that the Court imposes, including the special assessment, fine, costs or restitution, is due immediately unless otherwise stated by the Court. The Defendant further agrees to submit a fully completed Financial Statement of Debtor form as requested by the Department of Justice. The Defendant further agrees that failure to pay the special assessment at the time of the entry of the guilty plea may result in the obligations of the Attorneys for the Government within this agreement becoming null and void. The Defendant understands that any monetary penalty imposed is not dischargeable in bankruptcy. The Defendant further understands that if she fails to pay the special assessment, this unpaid debt will be turned over to the collections division within the U.S. Attorney's Office for collection, 18 U.S.C. § 3013.

4. The Defendant, SHOSHANA B. SZUCH, agrees to enter into the Bureau of Prisons Inmate Financial Responsibility Program if sentenced to a term of incarceration. The Defendant agrees that any monetary penalty the court imposes, including the special assessment, fines, costs, or restitution, will be paid through participation in this program.

5. The Defendant, SHOSHANA B. SZUCH, agrees to be fully truthful and forthright with the United States Department of Justice and federal law enforcement agents in their investigation of income tax offenses and other unlawful activities, to include, but not limited to, truthful and complete debriefings of the Defendant's knowledge concerning income tax offenses

and other unlawful activities. Also, the Defendant understands that she must fully disclose and provide truthful information to the Attorneys for the Government including any books, papers, or documents or any other items of evidentiary value to the investigation. The Defendant must also testify fully and truthfully before any grand juries and at any trials or other proceedings if called upon to do so by the Attorneys for the Government, subject to prosecution for perjury for not testifying truthfully. The failure of the Defendant to be fully truthful and forthright at any stage will, at the sole election of the Attorneys for the Government, cause the obligations of the Attorneys for the Government within this Agreement to become null and void. Further, it is expressly agreed that if the obligations of the Attorneys for the Government within this Agreement become null and void due to the lack of truthfulness on the part of the Defendant, the Defendant understands that: (1) the Defendant will not be permitted to withdraw his plea of guilty to the offenses described above: (2) any and all additional charges known to the Attorneys for the Government may be filed in the appropriate district: (3) the Attorneys for the Government may argue for a maximum sentence for the offense to which the Defendant has pleaded guilty; and (4) the Attorneys for the Government may use any and all information and testimony provided by the Defendant in the prosecution of the Defendant of all charges.

6. The Attorneys for the Government agree not to prosecute the Defendant, SHOSHANA B. SZUCH, for other offenses committed in the District of South Carolina prior to March 2001, which are the same or similar character as those cited herein, with the understanding by the Defendant that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the Defendant for the purpose of imposing an appropriate sentence, and such other offenses may be considered as relevant conduct pursuant to Section 1B1.3 of the United States Sentencing Commission

Guidelines, FED R. CRIM. P. 8(a).

7. The Attorneys for the Government agree to recommend to any other United States Attorney or state or local prosecutor that the Defendant, SHOSHANA B. SZUCH, not be prosecuted for any similar crimes occurring in other Districts and States prior to March 2001, so long as the Defendant, SHOSHANA B. SZUCH, complies with the terms of this Plea Agreement.

8. The Attorneys for the Government and the Defendant, SHOSHANA B. SZUCH, stipulate and agree that the tax loss is between $70,000 and $120,000 with a base offense level of 14 for purposes of calculating the Defendant's sentence pursuant to the United States Sentencing Commission Guidelines. U.S.S.G. § 2T4.1. In addition, the Attorneys for the Government and Defendant also stipulate and agree that the Defendant should receive a two-level increase in the guideline calculations for sophisticated concealment in that a fictitious entity and offshore bank account was used to conceal income in the offense. U.S.S.G. § 2T1.1(b)(2). Further, the Attorneys for the Government and Defendant stipulate and agree that the Defendant should receive a three-level reduction for Acceptance of Responsibility. U.S.S.G. § 3E1.1(a),(b). The Defendant understands that these stipulations are not binding upon the Court or the United States Probation Office, and that the Court and United States Probation Office may consider all relevant conduct in determining the appropriate guideline range and resulting sentence. U.S.S.G. § 1B1.3. In addition, the Defendant has no right to withdraw her plea should these stipulations not be accepted. Further, the Defendant understands and acknowledges that these stipulations are binding on the Government only in the event that the Defendant complies with ALL the terms of this Agreement.

9. The Defendant agrees to cooperate fully with the Internal Revenue Service in the

ascertainment, computation and payment of her correct federal income tax liability for the years 1997, 1998, and 1999. To that end, the defendant will:

(a) Cooperate with the Internal Revenue Service by providing all financial information necessary to ascertain and assess Defendant's back taxes, interest, and penalties;

(b) Provide to the Internal Revenue Service all financial information necessary to determine Defendant's ability to pay;

(c) Make a good faith effort to pay all delinquent and/or additional taxes, interest and penalties, including, paying the liability stemming from the offense conduct in a lump sum should the Internal Revenue Service determine she is able to so pay, or entering an installment agreement to pay the liability in total during the period of supervised release or probation; and

(d) Timely file her federal income tax returns during the term of supervised release and refrain from incurring new credit charges or opening additional lines of credit without the approval of her probation officer unless she is in compliance with any installment payment schedule.

10. The Attorneys for the Government agree that any self-incriminating information provided by the Defendant, SHOSHANA B. SZUCH, as a result of the cooperation required by the terms of this Agreement, although available to the Court, will not be used against the Defendant, SHOSHANA B. SZUCH, in determining the Defendant's applicable guideline range for sentencing pursuant to the U.S. Sentencing Commission Guidelines. The provisions of this paragraph shall not be applied to restrict any such information:

(A) known to the Attorneys for the Government prior to the date of this Agreement;

(B) concerning the existence of prior convictions and sentences in determining § 4B1.1 (career offender);

(C) in a prosecution for perjury or giving a false statement; or

(D) in the event there is a breach of the cooperation provisions of this Plea Agreement. § 1B1.8, United States Sentencing Commission Guidelines.

11. Provided the Defendant, SHOSHANA B. SZUCH, cooperates pursuant to the provisions of this Plea Agreement, and that cooperation is deemed by Attorneys for the Government as providing substantial assistance in the investigation or prosecution of another person who has committed an offense, the Attorneys for the Government agree to move the Court to depart from the United States Sentencing Commission Guidelines, pursuant to §5K1.1 of those Guidelines, and Title 18, United States Code, Section 3553(e), and/or move the Court for reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. The Defendant, SHOSHANA B. SZUCH, further understands that any such motions by the Attorneys for the Government are not binding upon the Court, and should the Court sentence the Defendant within the Guidelines, to the maximum penalty prescribed by law or refuse to reduce the sentence imposed, the Defendant will have no right to withdraw his plea.

12. The Defendant, SHOSHANA B. SZUCH, understands that the matter of sentencing is within the sole discretion of the Court, and that the sentence applicable to Defendant's case will be imposed in conformity with the United States Sentencing Commission Guidelines, Application Notes and Policy Statements. The Defendant also understands that Defendant's sentence has not yet been determined by the Court, and that any estimate of a probable sentencing range Defendant may have received from Defendant's attorney, the Attorneys for the Government, or the United States Probation Office is only a prediction, not a

promise, and is not binding on the Attorneys for the Government, the Probation Office or the Court. The Defendant further understands that the Attorneys for the Government retain the right to inform the Court of any relevant facts, to address the Court with respect to the nature of the offense, to respond to questions raised by the Court, to correct any inaccuracies or inadequacies in the presentence report, to respond to any statements made to the Court by or on behalf of the Defendant, and to summarize all evidence which would have been presented at trial to establish a factual basis for the plea, FED. R. CRIM. P. 11(f).

13. The Defendant, SHOSHANA B. SZUCH, realizing the uncertainty of estimating the sentence Defendant will ultimately receive, and fully understanding that Defendant has a right of direct appeal of the sentence pursuant to 18 U.S.C. § 3742(a) and the grounds listed therein, knowingly, voluntarily and expressly waives the right to appeal Defendant's sentence on those grounds.

14. The Attorneys for the Government agree to advise the sentencing Court of the extent and value of the Defendant's cooperation if called upon to do so by the Defendant, SHOSHANA B. SZUCH.

15. The Defendant, SHOSHANA B. SZUCH, understands that the obligations of the Attorneys for the Government within the Plea Agreement are expressly contingent upon the Defendant's abiding by federal and state laws and complying with the terms and conditions of any bond executed in this case.

16. The Defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5

U.S.C. §552a.

17. The parties hereby agree that this Plea Agreement contains the entire agreement of the parties; that this Agreement supersedes all prior promises, representations and statements of the parties; that this Agreement shall not be binding on any party until the Defendant tenders a plea of guilty to the court having jurisdiction over this matter; that this Agreement may be modified only in writing signed by all parties; and that any and all other promises, representations and statements, whether made prior to, contemporaneous with or after this Agreement, are null and void.

2/27/03
DATE

SHOSHANA B. SZUCH, Defendant

2/27/03
DATE

Lionel S. Lofton
Attorney for the Defendant

J. STROM THURMOND, JR.
UNITED STATES ATTORNEY

2/27/03
DATE

BY:
Larry J. Wszalek
Department of Justice - Tax Division
Trial Attorney

2/27/03
DATE

BY:
Mark T. Odulio
Department of Justice - Tax Division
Trial Attorney

ORIGINAL FILED

MAR 3 - 2003

LARRY W. PROPES, CLERK
CHARLESTON, SC

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

UNITED STATES OF AMERICA, Plaintiff,

v.

JEFFREY S. SZUCH, Defendant.

Criminal No: 2:03-289

**PLEA AGREEMENT**

AGREEMENT made this 24 day of February, 2003, between and among the United States of America, as represented by United States Attorney J. STROM THURMOND, JR., Department of Justice Tax Division Trial Attorneys Larry J. Wszalek and Mark T. Odulio ; the Defendant JEFFREY S. SZUCH, and Defendant's Attorney, Lionel S. Lofton , Esquire.

IN CONSIDERATION of the mutual promises made herein, the parties hereto agree as follows:

1. The Defendant, JEFFREY S. SZUCH, agrees to waive Indictment, FED. R. CRIM. P. 7(b), and arraignment, FED. R. CRIM. P. 10, and agrees to plead guilty to an Information charging tax evasion, in violation of Title 26, United States Code, Section 7201, FED.R. CRIM. P. 11. The elements of the offense are:

(a) An attempt to evade or defeat a tax or payment thereof;

(b) An additional tax due and owing;

(c) Willfulness.

2. The Defendant, JEFFREY S. SZUCH, agrees to consent to the commencement of a presentence investigation immediately, FED. R. CRIM. P. 32(c).

3. The Defendant, JEFFREY S. SZUCH, understands that in addition to any fines that the Court may impose, the Court will assess $100.00 for each felony count to which he pleads guilty. The Defendant agrees to pay the special assessment by certified check or money order and to deliver the special assessment, on the day the Defendant executes this Plea Agreement, to the Clerk, U.S. District Court, in compliance with the Statement of Special Assessment Amount attached hereto. The Defendant further agrees that any monetary penalty that the Court imposes, including the special assessment, fine, costs or restitution, is due immediately unless otherwise stated by the Court. The Defendant further agrees to submit a fully completed Financial Statement of Debtor form as requested by the Department of Justice. The Defendant further agrees that failure to pay the special assessment at the time of the entry of the guilty plea may result in the obligations of the Attorneys for the Government within this agreement becoming null and void. The Defendant understands that any monetary penalty imposed is not dischargeable in bankruptcy. The Defendant further understands that if he fails to pay the special assessment, this unpaid debt will be turned over to the collections division within the U.S. Attorney's Office for collection, 18 U.S.C. § 3013.

4. The Defendant, JEFFREY S. SZUCH, agrees to enter into the Bureau of Prisons' Inmate Financial Responsibility Program if sentenced to a term of incarceration. The Defendant agrees that any monetary penalty the court imposes, including the special assessment, fines, costs, or restitution, will be paid through participation in this program.

5. The Defendant, JEFFREY S. SZUCH, agrees to be fully truthful and forthright with the United States Department of Justice and federal law enforcement agents in their investigation of income tax offenses and other unlawful activities, to include, but not limited to, truthful and complete debriefings of the Defendant's knowledge concerning income tax offenses

and other unlawful activities. Also, the Defendant understands that he must fully disclose and provide truthful information to the Attorneys for the Government including any books, papers, or documents or any other items of evidentiary value to the investigation. The Defendant must also testify fully and truthfully before any grand juries and at any trials or other proceedings if called upon to do so by the Attorneys for the Government, subject to prosecution for perjury for not testifying truthfully. The failure of the Defendant to be fully truthful and forthright at any stage will, at the sole election of the Attorneys for the Government, cause the obligations of the Attorneys for the Government within this Agreement to become null and void. Further, it is expressly agreed that if the obligations of the Attorneys for the Government within this Agreement become null and void due to the lack of truthfulness on the part of the Defendant, the Defendant understands that: (1) the Defendant will not be permitted to withdraw his plea of guilty to the offenses described above: (2) any and all additional charges known to the Attorneys for the Government may be filed in the appropriate district: (3) the Attorneys for the Government may argue for a maximum sentence for the offense to which the Defendant has pleaded guilty; and (4) the Attorneys for the Government may use any and all information and testimony provided by the Defendant in the prosecution of the Defendant of all charges.

6. The Attorneys for the Government agree not to prosecute the Defendant, JEFFREY S. SZUCH, for other offenses committed in the District of South Carolina prior to March 2001, which are the same or similar character as those cited herein, with the understanding by the Defendant that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the Defendant for the purpose of imposing an appropriate sentence, and such other offenses may be considered as relevant conduct pursuant to Section 1B1.3 of the United States Sentencing Commission

Guidelines, FED R. CRIM. P. 8(a).

7. The Attorneys for the Government agree to recommend to any other United States Attorney or state or local prosecutor that the Defendant, JEFFREY S. SZUCH, not be prosecuted for any similar crimes occurring in other Districts and States prior to March 2001, so long as the Defendant, JEFFREY S. SZUCH, complies with the terms of this Plea Agreement.

8. The Attorneys for the Government and the Defendant, JEFFREY S. SZUCH, stipulate and agree that the tax loss is between $70,000 and $120,000 with a base offense level of 14 for purposes of calculating the Defendant's sentence pursuant to the United States Sentencing Commission Guidelines. U.S.S.G. § 2T4.1. In addition, the Attorneys for the Government and Defendant also stipulate and agree that the Defendant should receive a two-level increase in the guideline calculations for sophisticated concealment in that a fictitious entity and offshore bank account was used to conceal income in the offense. U.S.S.G. § 2T1.1(b)(2). Further, the Attorneys for the Government and Defendant stipulate and agree that the Defendant should receive a three-level reduction for Acceptance of Responsibility. U.S.S.G. § 3E1.1(a),(b). The Defendant understands that these stipulations are not binding upon the Court or the United States Probation Office, and that the Court and United States Probation Office may consider all relevant conduct in determining the appropriate guideline range and resulting sentence. U.S.S.G. § 1B1.3. In addition, the Defendant has no right to withdraw his plea should these stipulations not be accepted. Further, the Defendant understands and acknowledges that these stipulations are binding on the Government only in the event that the Defendant complies with ALL the terms of this Agreement.

9. The Defendant agrees to cooperate fully with the Internal Revenue Service in the ascertainment, computation and payment of his correct federal income tax liability for the years

1997, 1998, and 1999. To that end, the defendant will:

(a) Cooperate with the Internal Revenue Service by providing all financial information necessary to ascertain and assess Defendant's back taxes, interest, and penalties;

(b) Provide to the Internal Revenue Service all financial information necessary to determine Defendant's ability to pay;

(c) Make a good faith effort to pay all delinquent and/or additional taxes, interest and penalties, including, paying the liability stemming from the offense conduct in a lump sum should the Internal Revenue Service determine he is able to so pay, or entering an installment agreement to pay the liability in total during the period of supervised release or probation; and

(d) Timely file his federal income tax returns during the term of supervised release and refrain from incurring new credit charges or opening additional lines of credit without the approval of his probation officer unless he is in compliance with any installment payment schedule.

10. The Attorneys for the Government agree that any self-incriminating information provided by the Defendant, JEFFREY S. SZUCH, as a result of the cooperation required by the terms of this Agreement, although available to the Court, will not be used against the Defendant, JEFFREY S. SZUCH, in determining the Defendant's applicable guideline range for sentencing pursuant to the U.S. Sentencing Commission Guidelines. The provisions of this paragraph shall not be applied to restrict any such information:

(A) known to the Attorneys for the Government prior to the date of this Agreement;

(B) concerning the existence of prior convictions and sentences in determining § 4B1.1

(career offender);

(C) in a prosecution for perjury or giving a false statement; or

(D) in the event there is a breach of the cooperation provisions of this Plea Agreement. § 1B1.8, United States Sentencing Commission Guidelines.

11. Provided the Defendant, JEFFREY S. SZUCH, cooperates pursuant to the provisions of this Plea Agreement, and that cooperation is deemed by Attorneys for the Government as providing substantial assistance in the investigation or prosecution of another person who has committed an offense, the Attorneys for the Government agree to move the Court to depart from the United States Sentencing Commission Guidelines, pursuant to §5K1.1 of those Guidelines, and Title 18, United States Code, Section 3553(e), and/or move the Court for reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. The Defendant, JEFFREY S. SZUCH, further understands that any such motions by the Attorneys for the Government are not binding upon the Court, and should the Court sentence the Defendant within the Guidelines, to the maximum penalty prescribed by law or refuse to reduce the sentence imposed, the Defendant will have no right to withdraw his plea.

12. The Defendant, JEFFREY S. SZUCH, understands that the matter of sentencing is within the sole discretion of the Court, and that the sentence applicable to Defendant's case will be imposed in conformity with the United States Sentencing Commission Guidelines, Application Notes and Policy Statements. The Defendant also understands that Defendant's sentence has not yet been determined by the Court, and that any estimate of a probable sentencing range Defendant may have received from Defendant's attorney, the Attorneys for the Government, or the United States Probation Office is only a prediction, not a promise, and is not binding on the Attorneys for the Government, the Probation Office or the Court. The Defendant

further understands that the Attorneys for the Government retain the right to inform the Court of any relevant facts, to address the Court with respect to the nature of the offense, to respond to questions raised by the Court, to correct any inaccuracies or inadequacies in the presentence report, to respond to any statements made to the Court by or on behalf of the Defendant, and to summarize all evidence which would have been presented at trial to establish a factual basis for the plea, FED. R. CRIM. P. 11(f).

13. The Defendant, JEFFREY S. SZUCH, realizing the uncertainty of estimating the sentence Defendant will ultimately receive, and fully understanding that Defendant has a right of direct appeal of the sentence pursuant to 18 U.S.C. § 3742(a) and the grounds listed therein, knowingly, voluntarily and expressly waives the right to appeal Defendant's sentence on those grounds.

14. The Attorneys for the Government agree to advise the sentencing Court of the extent and value of the Defendant's cooperation if called upon to do so by the Defendant, JEFFREY S. SZUCH.

15. The Defendant, JEFFREY S. SZUCH, understands that the obligations of the Attorneys for the Government within the Plea Agreement are expressly contingent upon the Defendant's abiding by federal and state laws and complying with the terms and conditions of any bond executed in this case.

16. The Defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. §552a.

17. The parties hereby agree that this Plea Agreement contains the entire agreement of the parties; that this Agreement supersedes all prior promises, representations and statements of the parties; that this Agreement shall not be binding on any party until the Defendant tenders a plea of guilty to the court having jurisdiction over this matter; that this Agreement may be modified only in writing signed by all parties; and that any and all other promises, representations and statements, whether made prior to, contemporaneous with or after this Agreement, are null and void.

2/27/03
DATE

JEFFREY S. SZUCH, Defendant

2/27/03
DATE

Lionel S. Lofton
Attorney for the Defendant

J. STROM THURMOND, JR.
UNITED STATES ATTORNEY

2/27/03
DATE

BY: Mary Gordon Baker for Larry J. Wszalek
Larry J. Wszalek
Department of Justice - Tax Division
Trial Attorney

2/27/03
DATE

BY: Mary Gordon Baker for Mark T. Odulio
Mark T. Odulio
Department of Justice - Tax Division
Trial Attorney

U. S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

FEB 28 2003

WILLIAM S. BROWNELL, CLERK
BY: mm CC (ms) USPO
DEPUTY CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

UNITED STATES OF AMERICA )
Plaintiff, )
v. ) Criminal No. ~~02~~- 03-11-P-H
MARGO E. JORDAN, )
Defendant. )

**AGREEMENT TO PLEAD GUILTY AND COOPERATE**

The United States of America, by and through its attorneys Larry J.Wszalek and Mark T. Odulio, Trial Attorneys, Tax Division, United States Department of Justice, and MARGO E. JORDAN (hereinafter "defendant"), acting for herself and through her counsel, Bruce Merrill, Esquire, enter into the following Agreement based upon the promises and understandings set forth below:

1. Defendant agrees to waive indictment pursuant to Federal Rule of Criminal Procedure (F.R.Crim. P.) 7(b) and plead guilty to the attached Information pursuant to F.R.Crim. P. 11. The Information charges defendant with one count of violation 26 U.S.C. §7201 for the tax year 1997. The parties agree and understand that the maximum statutory penalties which may be imposed upon conviction are imprisonment for not more than five years, a fine of $250,000 or both and a three-year term of supervised release. The parties further agree and understand that the Court must impose a

SCANNED

special assessment of $100 for each count of conviction, payable to the "Clerk of Court" for deposit to the Crime Victims Fund and defendant agrees to pay such special assessments on or before the entry of the guilty plea.

2. It is agreed by and between the parties that, if all of the terms and conditions of this Agreement as set forth in writing in this document are met by defendant, the parties may petition the Court for the imposition of any lawful sentence. The parties expressly agree and understand that should the Court reject either or both of the recommendations of the parties, if any are made, that defendant will not thereby be permitted to withdraw her plea of guilty. The parties agree and understand that the Court has the discretion to impose any lawful sentence.

3. Defendant agrees to meet with attorneys and agents of the government, as needed, to tell fully, honestly, truthfully and completely all that she knows or has heard about violations of federal and state laws, including but not limited to her involvement and the involvement of others in violations of law as set forth in the Information and to answer all related questions in the same manner. Defendant agrees to provide or to aid in acquiring all documents, photographs, bills, records, receipts and all like materials to which she has access, which will corroborate this information. Defendant further agrees to testify fully, honestly, truthfully and completely at any and all grand juries, trials or other official proceedings in which her testimony is requested, in the District of Maine, or any other district. Defendant agrees to meet with government agents or attorneys in preparation for any such testimony before the grand jury, at trial or at any other official proceeding.

4. The Defendant agrees to cooperate fully with the Internal Revenue Service in the ascertainment, computation and payment of her correct federal income tax liability for the years 1997, 1998, 1999, and 2000. To that end, the defendant will:

(a) Cooperate with the Internal Revenue Service by providing all financial information necessary to ascertain and assess Defendant's back taxes, interest, and penalties;

(b) Provide to the Internal Revenue Service all financial information necessary to determine Defendant's ability to pay;

(c) Make a good faith effort to pay all delinquent and/or additional taxes, interest and penalties, including, paying the liability stemming from the offense conduct in a lump sum should the Internal Revenue Service determine she is able to so pay, or entering an installment agreement to pay the liability in total during the period of supervised release or probation; and

(d) Timely file her federal income tax returns during the term of supervised release and refrain from incurring new credit charges or opening additional lines of credit without the approval of her probation officer unless she is in compliance with any installment payment schedule.

5. It is understood that should any of the information provided by defendant or any information acquired as a result of the information provided by defendant reveal any violations of state or federal law by her, with the exception of violent criminal acts, it will be deemed as having been given or acquired under use immunity as set forth in Title 18, United States Code, Section 6001 et seq., and it may not be used against her in any criminal proceeding with the exception of prosecution of her for the acts or conduct described in the Information in the above-captioned case.

6. All information provided by defendant pursuant to this Agreement shall be considered as given pursuant to United States Sentencing Commission Sentencing Guideline Section 1B1.8.

7. If defendant should fail in any way to cooperate fully, honestly, truthfully and completely, or to complete all terms and conditions set forth in this Agreement, then the United States may be released from its commitments as set forth in this Agreement. The determination of whether defendant has so cooperated and has completed all terms and conditions set forth in this Agreement shall be made solely by the United States Attorney for the District of Maine or the Department of Justice Tax Division, but a determination adverse to defendant shall have a material and articulable basis. In the event of a failure to fully, honestly, truthfully and completely cooperate or to complete all terms and conditions set forth in this Agreement, the United States may, in its sole discretion, be released from any or all of its commitments under this Agreement, and/or declare this Agreement null and void, and/or it may bring the failure to fully cooperate to the attention of the Court and recommend at sentencing that defendant be sentenced to the maximum penalty permitted under this Agreement.

8. Nothing in this Agreement will prevent the United States from instituting prosecution of defendant for perjury, false statement or false declaration if defendant commits such acts in connection with this Agreement. Additionally, defendant understands that the United States will not tolerate any future violations of state or federal laws by her, and should any become known to have been committed after the effective date of this Agreement, nothing in this Agreement will preclude prosecution of defendant by appropriate authorities for such violations.

9. At the request of defendant, the United States Attorney's Office or the Department of Justice Tax Division will make known the cooperation provided by defendant to any individual or entity to whom defendant wishes such information disseminated.

10. Defendant agrees to waive, and hereby does waive, any and all rights she might have under the Speedy Trial Act, 18 U.S.C. Sections 3161-64, from the date of the execution of this Agreement and continuing thereafter through and including the date upon which sentence is imposed. Defendant expressly consents to the entry of an Order by the Court excluding such periods of time from such consideration.

11. Defendant agrees to waive, and hereby does waive, all rights she has under F.R.Evid. 410 and F.R.Crim.P. 11(e)(6) which preclude the admissibility of a) a withdrawn guilty plea; b) a plea of nolo contendere; c) any statement made in the course of the entry of a guilty plea, and d) any statement made in the course of plea discussions with the attorney for the government. If defendant seeks and is allowed to withdraw her plea of guilty entered pursuant to this Agreement, she understands that by waiving these rights all testimony, statements and other information she has provided at any time to attorneys, employees of the United States, law enforcement officers, the court, or the federal grand jury may and will be used against her in any prosecution or other criminal or civil proceeding.

12. In the event that the Court rejects this Agreement or defendant's plea of guilty, or defendant withdraws her plea of guilty or breaches this Agreement, defendant understands, agrees and waives any and all rights she may have to a Kastigar hearing in which the United States would have to prove that the evidence it would introduce at her trial was not tainted by any statements or other information provided by defendant pursuant to this Agreement.

13. Nothing in this Agreement shall be interpreted to require the United States to move the Court pursuant to United States Sentencing Commission Sentencing Guideline Section 5K1.1 for a downward departure.

14. Defendant understands that there are no further or other promises or agreements, either express or implied, other than those contained in this Agreement and that none will be made except in writing signed by all parties.

15. Defendant hereby waives any and all rights she has to seek compensation under the Hyde Amendment P.L. 105-119 for all proceedings related to this matter.

16. The signature of defendant in the space designated signifies her full and voluntary acceptance of this Agreement.

I have read this agreement and have carefully reviewed every part of it. I understand it and I have voluntarily agreed to it.

Date: MJ. 3/28/03

MARGO E. JORDAN, Defendant

I am legal counsel for Margo E. Jordan. I have carefully reviewed every part of this Agreement consisting of 6 pages. To my knowledge, her decision to enter into this Agreement is an informed and voluntary one.

Date: 2/28/03

Bruce Merrill, Esquire
Attorney for Defendant

FOR THE UNITED STATES:

Date: 2/28/03

Larry Wszalek
Trial Attorney, Tax Division,
United States Department of Justice

Date: 2/28/03

Mark T. Odulio
Trial Attorney, Tax Division,
United States Department of Justice



**U.S. Department of Justice**
**Tax Division**

*Western Criminal Enforcement Section*
*P.O. Box 972, Ben Franklin Station* (202) 514-5762
*Washington, D.C. 20044* *Telefax:* (202) 514-9623

April 22, 2005

Robert M. McCallum, Esq.
Seattle, Washington
Facsimile (206) 223-1099

Re: William Kittridge, Jr. - Grant of Immunity

Dear Mr. McCallum:

This letter is intended to provide notice that William Kittridge, Jr., a client you previously represented, will be served with a federal grand jury subpoena to appear before a federal grand jury in the District of Massachusetts, which is currently conducting a criminal investigation of an individual who was associated with the Institute of Global Prosperity (a.k.a. Global Prosperity Marketing Group; a.k.a. Global Prosperity Group). As we discussed over the phone, a subpoena will be forwarded to you soon.

Previously, your client, William Kittridge, Jr., was given informal immunity from prosecution for any testimony he provided before a grand jury sitting in the Western District of Washington, which was conducting a criminal investigation of individuals associated with the Institute of Global Prosperity (a.k.a. Global Prosperity Marketing Group; a.k.a. Global Prosperity Group). See Attachment A (Letter of Immunity, January 8, 2003, signed copy). The United States believes the previous grant of informal immunity will continue to apply regarding the criminal investigation in the District of Massachusetts.

Accordingly, effective the date of this letter, any testimony given by your client, William Kittridge, Jr., before the grand jury, at trial in the United States District Court, or in an interview in which an attorney for the government is present, or any information directly or indirectly derived from these statements will not be used against him in any subsequent federal criminal proceeding. No such testimony or information will be provided to any Division of the Department of Justice (including U.S. Attorneys' Offices) or any federal agency, unless such Division or agency provides letter or statutory immunity substantially similar to that set forth in this letter.

This informal use immunity is coextensive with the scope of the use immunity authorized by Title 18, United States Code, Section 6002. It is important that your client understand that, as with statutory immunity, this agreement to confer use immunity for statements made, or testimony given by William Kittridge, Jr. does not provide any protection for your client against a possible prosecution for perjury and/or false statements in the event that he intentionally provides false

information.

It should also be understood and agreed that, as with Title 18, United States Code, Section 6002, et seq., the United States may use information provided by William Kittridge, Jr. for purposes of impeachment, to the extent allowed by law, should testimony in a manner which is inconsistent with statements made according to this agreement.

Either party may terminate this agreement by written notice to the other party, and the agreement will not apply to any statements, information, or testimony provided thereafter. Please indicate your acceptance of this agreement by signing below.

If you have any questions please contact me at the phone listed below.

Sincerely,

Christopher J. Maietta
Trial Attorney
(202) 514-4661

William Kittridge, Jr.

5/16/05
Date

Robert M. McCallum, Esq.
Counsel for William Kittridge

Date

# ATTACHMENT A

US5411



U.S. Department of Justice
Tax Division

*Western Criminal Enforcement Section*
*P.O. Box 972, Ben Franklin Station*
*Washington, D.C. 20044*

*(202) 514-4895*
*Telefax: (202) 514-9623*

January 8, 2003

William A. Kittredge, Jr.
152 The Lynnway
Lynn, MA 01902

Re: Grant of Immunity

Dear Mr. Kittredge:

A federal Grand Jury sitting for the Western District of Washington is currently conducting a criminal tax investigation of individuals associated with the Institute of Global Prosperity (a.k.a. Global Prosperity Marketing Group; a.k.a. Global Prosperity Group), including, but not limited to, Daniel Andersen, David Struckman, and Lorenzo LaMantia.

Effective the date of this letter, any testimony given by you before the Grand Jury, at trial in the United States District Court, or in an interview in which an attorney for the government is present, or any information directly or indirectly derived from these statements will not be used against you in any subsequent federal criminal proceeding. No such testimony or information will be provided to any Division of the Department of Justice (including U.S. Attorney's Offices) or any federal agency, unless such Division or agency provides letter or statutory immunity substantially similar to that set forth in this letter.

This informal use immunity is coextensive with the scope of the use immunity authorized by Title 18, United States Code, Section 6002. It is important that you understand that, as with statutory immunity, this agreement to confer use immunity for statements made, or testimony given by you, does not provide any protection for you against a possible prosecution for perjury and/or false statements in the event that you intentionally provides false information.

It should also be understood and agreed that, as with Title 18, United States Code, Section 6002, et seq., the United States may use information provided by you for purposes of impeachment, to the extent allowed by law, should you testify in a manner which is inconsistent with statements made according to this agreement.

Either party may terminate this agreement by written notice to the other party, and the agreement will not apply to any statements, information, or testimony provided thereafter.

Please indicate your acceptance of this agreement by signing below.

Sincerely,

MARK T. ODULIO
Trial Attorney

LARRY J. WSZALEK
Trial Attorney

---

William A. Kittredge, Jr.

Attorney for William Kittredge, Jr.



U.S. Department of Justice
Tax Division

*Western Criminal Enforcement Section*
*P.O. Box 972, Ben Franklin Station*
*Washington, D.C. 20044*
*(202) 514-4895*
*Telefax: (202) 514-9623*

January 8, 2003

William A. Kittredge, Jr.
152 The Lynnway
Lynn, MA 01902

Re: Grant of Immunity

Dear Mr. Kittredge:

A federal Grand Jury sitting for the Western District of Washington is currently conducting a criminal tax investigation of individuals associated with the Institute of Global Prosperity (a.k.a. Global Prosperity Marketing Group; a.k.a. Global Prosperity Group), including, but not limited to, Daniel Andersen, David Struckman, and Lorenzo LaMantia.

Effective the date of this letter, any testimony given by you before the Grand Jury, at trial in the United States District Court, or in an interview in which an attorney for the government is present, or any information directly or indirectly derived from these statements will not be used against you in any subsequent federal criminal proceeding. No such testimony or information will be provided to any Division of the Department of Justice (including U.S. Attorney's Offices) or any federal agency, unless such Division or agency provides letter or statutory immunity substantially similar to that set forth in this letter.

This informal use immunity is coextensive with the scope of the use immunity authorized by Title 18, United States Code, Section 6002. It is important that you understand that, as with statutory immunity, this agreement to confer use immunity for statements made, or testimony given by you, does not provide any protection for you against a possible prosecution for perjury and/or false statements in the event that you intentionally provides false information.

It should also be understood and agreed that, as with Title 18, United States Code, Section 6002, et seq., the United States may use information provided by you for purposes of impeachment, to the extent allowed by law, should you testify in a manner which is inconsistent with statements made according to this agreement.

Either party may terminate this agreement by written notice to the other party, and the agreement will not apply to any statements, information, or testimony provided thereafter.

Please indicate your acceptance of this agreement by signing below.

Sincerely,

MARK T. ODULIO
Trial Attorney

LARRY J. WSZALEK
Trial Attorney

William A. Kittredge, Jr.

Attorney for William Kittredge, Jr.



**U.S. Department of Justice**
**Tax Division**

*Western Criminal Enforcement Section*
*P.O. Box 972, Ben Franklin Station* (202) 514-4895
*Washington, D.C. 20044* Telefax: (202) 514-9623

December 17, 2002

William A. Kittredge, Jr.
152 The Lynnway
Lynn, MA 01902

Re: Proffer Agreement

Dear Mr. Kittredge:

This letter will confirm our understanding regarding the informal immunity being provided to you at a proffer session to be scheduled at a mutually convenient time. Your proffer session shall relate to your and others participation in the Institute of Global Prosperity (a.k.a. Global Prosperity Marketing Group; a.k.a. Global Prosperity Group). By signing this letter below, you acknowledge that this proffer agreement is designed to allow the government the opportunity to evaluate the accuracy, truthfulness and completeness of your testimony. If the government is satisfied that you will give complete, truthful, and accurate information and testimony, it will provide you with immunity consistent with that set forth at 18 U.S.C. § 6002, pending U.S. Department of Justice approval. Further, you agree that no threats have been made against you or anyone else to make you enter into this proffer agreement, and you are acting voluntarily and of your own free will.

The understandings for purposes of this proffer session are as follows:

1. You shall truthfully disclose all information with respect to your activities in the Institute of Global Prosperity, the activities of others in the Institute of Global Prosperity, tax returns you may have prepared for members of the Institute of Global Prosperity, including Daniel Andersen, and other related tax matters.

2. You must at all times give complete, truthful, and accurate information and testimony. This is the essence of the agreement. Should you withdraw from this agreement or should it be judged by this office that you have intentionally given materially false, or materially incomplete, or materially misleading testimony or information, or have otherwise violated any provision of the agreement, this agreement shall be null and void and you shall thereafter be subject to prosecution for any substantive crimes of which the government has knowledge, including but not limited to, perjury, false statement, and obstruction of justice. Any such prosecution may be premised upon any information provided by you or obtained as the result of being provided by her and such information may be used against you.

3. The Government agrees that statements or information contained in your proffer may not be used in the Government's case-in-chief against you should a trial be held. If you should

testify materially contrary to the substance of the proffer, or otherwise present in a legal proceeding a position materially inconsistent with the proffer, the proffer may be used against you as impeachment or rebuttal evidence, or as the basis for a prosecution for perjury or false statement. This provision is necessary in order to assure that you do not abuse the opportunity to provide information under this informal immunity arrangement, do not make a materially false statement to a Government agency, and do not commit perjury when testifying before the grand jury or at trial.

4. The Government may make derivative use of and may pursue any investigative lead suggested by any statement made or other information provided by you. This provision is necessary in order to eliminate the necessity for a hearing at which the Government would have to prove that the evidence it would introduce at trial is not tainted by any statement made by or other information provided by you during the proffer session.

5. This agreement does not apply to acts involving actual or threatened violence. While this office has no reason to believe that you has been involved in any such acts, the burden is upon you either to disclose that there may be a potential problem with such a limitation or to face the consequence that no benefit will be gained by a subsequent disclosure which would not be covered by the terms of the agreement.

6. This agreement cannot bind state or local prosecuting authorities, although this office will bring your cooperation to the attention of other prosecuting offices if requested.

7. This agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil proceedings directly or indirectly involving you, including but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability.

Very truly yours,

MARK T. ODULIO
Trial Attorney

I have read this agreement and carefully reviewed every part of it. I understand it and I voluntarily agree to it.

DATED: 1/7/03

WILLIAM A. KITTREDGE, JR.

1/7/03

CASE NO. 05-CR-10175-WGY

Nadine J. Griffin,

# EXHIBIT "E"

**4 pages**

# Internal Revenue Service
# Criminal Investigation

## Memorandum of Interview

---

**In Re:** Nadine Griffin

**Location:** One Montvale Avenue
Stoneham, MA

**Investigation #:** 040130143
**Date:** 11/08/01
**Time:** 1:40pm to 5:15pm
**Participant(s):** Nadine Griffin, Interviewee
James Krasnoo, Attorney
Larry Wszalek, DOJ-Tax Trial Attorney
Michael Monahan, Special Agent
Jessica Crocker, Special Agent

Nadine Griffin and her attorney indicated that they understood that the proffer agreement that was signed on 10/26/01 was still in effect.

**Internal Revenue Service**
**Criminal Investigation**

# Memorandum of Interview

---

| | | | |
|---|---|---|---|
| **In Re:** | Nadine Griffin | **Location:** | Office of the United States Attorney<br>Boston, MA |
| **Investigation #:** | 040130143 | | |
| **Date:** | 10/26/01 | | |
| **Time:** | 10:30am-1:00pm<br>2:07pm-4:00pm | | |
| **Participant(s):** | Nadine Griffin, Interviewee<br>James B. Krasnoo, Defense Attorney<br>Patrick Stokes, DOJ-Tax Trial Attorney<br>Mark O'Dulio, DOJ-Tax Trial Attorney<br>Larry Wszalek, DOJ-Tax Trial Attorney<br>Eric DiDio, Special Agent<br>Jessica Crocker, Special Agent | | |

On the above date, Nadine Griffin was interviewed in the office of the United States Attorney located in Boston, MA. Griffin's attorney, James Krasnoo, reviewed the Proffer Letter and informed Griffin that the document was identical to a Proffer Letter she had already reviewed except for the date. Griffin signed the document and the interview proceeded.

(b)(6)

**Internal Revenue Service**
**Criminal Investigation**

# Memorandum of Interview

| | | | |
|---|---|---|---|
| **In Re:** | Nadine Griffin | **Location:** | One Montvale Avenue<br>Stoneham, MA 02180 |
| **Investigation #:** | 040130143 | | |
| **Date:** | November 19, 2001 | | |
| **Time:** | 9:30am to 12:55pm<br>1:45pm to 4:00pm | | |
| **Participants:** | Nadine Griffin, Interviewee<br>James Krasnoo, Defense Attorney<br>Larry Wszalek, DOJ-Tax Trial Attorney<br>Thomas Wourgiotis, Special Agent<br>Jessica Crocker, Special Agent | | |

On the above date Nadine Griffin was interviewed at the CI office in Stoneham, MA. Griffin

**Internal Revenue Service**
**Criminal Investigation**

# Memorandum of Interview

| | | | |
|---|---|---|---|
| **In Re:** | Nadine Griffin | **Location:** | One Montvale Avenue Stoneham, MA |
| **Investigation #:** | 040130143 | | |
| **Date:** | November 26, 2001 | | |
| **Time:** | 1:07pm to 5:40pm | | |
| **Participant(s):** | Nadine Griffin, Interviewee<br>James Krasnoo, Defense Attorney<br>Larry Wszalek, DOJ-Tax Attorney<br>Thomas Wourgiotis, Special Agent<br>Jessica Crocker, Special Agent | | |

On the above date, Nadine Griffin was interviewed at the CI office in Stoneham, MA. Griffin

(b)(6)

CASE NO. 05-CR-10175-WGY

Nadine J. Griffin,

# EXHIBIT "F"

**15 pages**

In 1976, P.L. 94-455, Sec. 401(c), changed the effective date for amendments made by Sec. 204(b)(2) of P.L. 94-12, to effective for tax. yrs. begin. after. 12/31/74 and before 1/1/78, from effective for tax. yrs. begin. after 12/31/74 and before 1/1/77, see below.

—P.L. 94-455, Sec. 1206(c)(2)(A), substituted "mathematical or clerical error" for "mathematical error" in paras. (a)(3) and (4) . . . Sec. 1206(c)(2)(B), added ", except that the provisions of section 6213(b)(2) (relating to abatement of mathematical or clerical error assessments) shall not apply with regard to any assessment under this paragraph" before the period at the end of paras. (a)(3) and (4), effective for returns with the meaning of Code Sec. 6213(f)(1) filed after 12/31/76.

—P.L. 94-455, Sec. 1307(d)(2)(D), substituted "and certain excise taxes" for "chapter 42, and chapter 43 taxes" in subsec. (d), effective 10/4/76.

—P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6201, effective 2/1/77.

In 1975, P.L. 94-164, Sec. 2(f), changed the effective date for amendments made by Sec. 204(b)(2) of P.L. 94-12, to effective for tax. yrs. begin. after. 12/31/74 and before 1/1/77, from effective for tax. yrs. begin. after 12/31/74 and before 1/1/76, see below.

—P.L. 94-12, Sec. 204(b)(2), added "or 43" before the period at the end of the caption in para. (a)(4), and substituted "oil) or section 43 (relating to earned income," for "oil)," in para. (a)(4), effective [as amended by Sec. 2(f) of P.L. 94-164, Sec. 401(c) of P.L. 94-455, Sec. 103(b) of P.L. 95-30 and Sec. 103(a) of P.L. 95-600, see above] for tax. yrs. begin. after 12/31/74.

In 1974, P.L. 93-406, Sec. 1016(a)(8), substituted ", chapter 42, and chapter 43" for "and chapter 42" in subsec. (d), effective 9/2/74 or other date as specified in Sec. 1017 of the Act (reproduced following Code Sec. 401).

In 1970, P.L. 91-258, Sec. 207(d)(1), substituted "uses of gasoline, special fuels, and lubricating oil" for "uses of gasoline and lubricating oil" in subsec. (a)(4) . . . Sec. 207(d)(2), substituted "under section 39" for "for use of gasoline" in the heading of subsec. (a)(4), effective 7/1/70.

In 1969, P.L. 91-172, Sec. 101(j)(38), substituted "gift, and chapter 42 taxes" for "and gift taxes" in subsec. (d), effective 1/1/70.

—P.L. 91-53, Sec. 2(b), amended subsec. (b), effective for calendar yrs. begin. after 12/31/69.

Prior to amendment, subsec. (b) read as follows:

"(b) *Estimated income tax.*

"No unpaid amount of estimated tax under section 6153 or 6154 shall be assessed."

In 1965, P.L. 89-44, Sec. 809, added para. (a)(4), effective for tax. yrs. begin. after 6/30/65.

## Sec. 6202. Establishment by regulations of mode or time of assessment.

If the mode or time for the assessment of any internal revenue tax (including interest, additional amounts, additions to the tax, and assessable penalties) is not otherwise provided for, the Secretary may establish the same by regulations.

In 1976, P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" in Code Sec. 6202, effective 2/1/77.

## Sec. 6203. Method of assessment.

The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment.

In 1976, P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6203, effective 2/1/77.

## Sec. 6204. Supplemental assessments.

**(a) General rule.**

The Secretary may, at any time within the period prescribed for assessment, make a supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect.

**(b) Restrictions on assessment.**

For restrictions on assessment of deficiencies in income, estate, gift, and certain excise taxes, see section 6213.

In 1976, P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6204, effective 2/1/77.

In 1974, P.L. 93-406, Sec. 1016(a)(27), substituted "gift, and certain excise taxes" for "and gift taxes" in subsec. (b), effective 9/2/74 or other date as specified in Sec. 1017 of this Act, reproduced in note following Code Sec. 401.

## Sec. 6205. Special rules applicable to certain employment taxes.

**(a) Adjustment of tax.**

(1) **General rule.** If less than the correct amount of tax imposed by section 3101, 3111, 3201, 3221, or 3402 is paid with respect to any payment of wages or compensation, proper adjustments, with respect to both the tax and the amount to be deducted, shall be made, without interest, in such manner and at such times as the Secretary may by regulations prescribe.

(2) **United States as employer.** For purposes of this subsection, in the case of remuneration received from the United States or a wholly-owned instrumentality thereof during any calendar year, each head of a Federal agency or instrumentality who makes a return pursuant to section 3122 and each agent, designated by the head of a Federal agency or instrumentality, who makes a return pursuant to such section shall be deemed a separate employer.

(3) **Guam or American Samoa as employer.** For purposes of this subsection, in the case of remuneration received during any calendar year from the Government of Guam, the Government of American Samoa, a political subdivision of either, or any instrumentality of any one or more of the foregoing which is wholly owned thereby, the Governor of Guam, the Governor of American Samoa, and each agent designated by either who makes a return pursuant to section 3125 shall be deemed a separate employer.

(4) **District of Columbia as employer.** For purposes of this subsection, in the case of remuneration received during any calendar year from the District of Columbia or any instrumentality which is wholly owned thereby, the Mayor of the District of Columbia and each agent designated by him who makes a return pursuant to section 3125 shall be deemed a separate employer.

(5) **States and political subdivisions as employer.** For purposes of this subsection, in the case of remuneration received from a State or any political subdivision thereof (or any instrumentality of any one or more of the foregoing which is wholly owned thereby) during any calendar year, each head of an agency or instrumentality, and each agent designated by either, who makes a return pursuant to section 3125 shall be deemed a separate employer.

**(b) Underpayments.**

If less than the correct amount of tax imposed by section 3101, 3111, 3201, 3221, or 3402 is paid or deducted with respect to any payment of wages or compensation and the underpayment cannot be adjusted under subsection (a) of this section, the amount of the underpayment shall be assessed and collected in such manner and at such times (subject to the statute of limitations properly applicable thereto) as the Secretary may by regulations prescribe.

In 1986, P.L. 99-272, Sec. 13205(a)(2)(D), added para. (a)(5), effective for services performed after 3/31/86.

In 1976, P.L. 94-455, Sec. 1906(a)(13), substituted "Mayor of the District of Columbia and each agent designated by him" for "Commissioners of the District of Columbia and each agent designated by them" in para. (a)(4), effective 2/1/77.

(c) *Compensation of child.* Any income tax assessed against a child, to the extent of the amount attributable to income included in the gross income of the child solely by reason of section 73(a) or the corresponding provision of prior law, if not paid by the child, shall, for the purposes of the income tax imposed by chapter 1 of the Code (or the corresponding provisions of prior law), be considered as having also been properly assessed against the parent. In any case in which the earnings of the child are included in the gross income of the child solely by reason of section 73(a) or the corresponding provision of prior law, the parent's liability is an amount equal to the amount by which the tax assessed against the child (and not paid by him) has been increased by reason of the inclusion of such earnings in the gross income of the child. Thus, if for the calendar year 1954 the child has income of $1,000 from investments and of $3,000 for services rendered, and the latter amount is includible in the gross income of the child under section 73(a) and the child has no wife or dependents, the tax liability determined under section 3 is $625. If the child had only the investment income of $1,000, his tax liability would be $62. If the tax of $625 is assessed against the child, the difference between $625 and $62, or $563, is the amount of such tax which is considered to have been properly assessed against the parent, if not paid by the child.

### § 301.6203-1 Method of assessment.

The district director and the director of the regional service center shall appoint one or more assessment officers. The district director shall also appoint assessment officers in a Service Center servicing his district. The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. The date of the assessment is the date the summary record is signed by an assessment officer. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed.

### § 301.6204-1 Supplemental assessments.

If any assessment is incomplete or incorrect in any material respect, the district director or the director of the regional service center, subject to the restrictions with respect to the assessment of deficiencies in income, estate, gift, chapter 41, 42, 43, and 44 taxes, and subject to the applicable period of limitation, may make a supplemental assessment for the purpose of correcting or completing the original assessment.

[T.D. 7838, 47 FR 44249, Oct. 7, 1982]

### § 301.6205-1 Special rules applicable to certain employment taxes.

For regulations under section 6205, see § 31.6205-1 of this chapter (Employment Tax Regulations).

DEFICIENCY PROCEDURES

### § 301.6211-1 Deficiency defined.

(a) In the case of the income tax imposed by subtitle A of the Code, the estate tax imposed by chapter 11, subtitle B, of the Code, the gift tax imposed by chapter 12, subtitle B, of the Code, and any excise tax imposed by chapter 41, 42, 43, or 44 of the Code, the term "deficiency" means the excess of the tax, (income, estate, gift, or excise tax as the case may be) over the sum of the amount shown as such tax by the taxpayer upon his return and the amounts previously assessed (or collected without assessment) as a deficiency; but such sum shall first be reduced by the amount of rebates made. If no return is made, or if the return (except a return of income tax pursuant to sec. 6014) does not show any tax, for the purpose of the definition "the amount shown as

—P.L. 103-66, Sec. 13242(d)(15), added "and diesel fuel" after "gasoline" in the heading of subsec. (f), effective 1/1/94.

In 1990, P.L. 101-508, Sec. 11217(b)(1)(A), added "communications services and" before "airline" in the heading of subsec. (e) ... Sec. 11217(b)(1)(B), added "section 4251 or" before "subsection (a) or (b)" in subsec. (e), effective for payments of taxes considered collected during semimonthly periods begin. after 12/31/90.

—P.L. 101-508, Sec. 11334(a), amended subsec. (g), effective for amounts required to be deposited after 12/31/90.

Prior to amendment, subsec. (g) read as follows:

"(g) Deposits of social security taxes and withheld income taxes.

"(1) In general. If, under regulations prescribed by the Secretary, a person is required to make deposits of taxes imposed by chapters 21 and 24 on the basis of eighth-month periods, such person shall, for the years specified in paragraph (2), make deposits of such taxes on the applicable banking day after any day on which such person has $100,000 or more of such taxes for deposit.

"(2) Specified years. For purposes of paragraph (1)—

| In the case of: | The applicable banking day is: |
|---|---|
| 1990 | 1st |
| 1991 | 2nd |
| 1992 | 3rd |
| 1993 | 1st |
| 1994 | 1st" |

—P.L. 101-508, Sec. 11334(b), deleted Sec. 7632(b)(2) of P.L. 101-239, part of the effective date for changes made by Sec. 7632(a) of P.L. 101-239, see below.

Prior to deletion, Sec. 7632(b)(2) of P.L. 101-239 read as follows:

"(2) Rule for 1995 and thereafter.—For calendar year 1995 and thereafter, the Secretary of the Treasury shall prescribe regulations with respect to the date on which deposits of such taxes shall be made in order to minimize the unevenness in the revenue effects of the amendment made by subsection (a) [Sec. 7632(a)] ."

—P.L. 101-508, Sec. 11801(c)(22)(A), [as corrected by Sec. 1704(t)(52) of P.L. 104-188, see above] substituted "chapter 21, 31, 32, or 33, or by section 4481" for "chapters 21, 31, 32, 33, section 4481 of chapter 36, section 4501(a) of chapter 37" in subsec. (b), effective 11/5/90, except as provided in Sec. 11821(b) of this Act, reproduced in note following Code Sec. 6428.

In 1989, P.L. 101-239, Sec. 7502(a), redesignated subsec. (e) as subsec. (f) and added new subsec. (e), effective for payments of taxes considered collected for semimonthly periods begin. after 6/30/90.

—P.L. 101-239, Sec. 7507(a), redesignated subsec. (f) as subsec. (g) [as redesignated by Sec. 7502(a) of this Act] and added new subsec. (f), effective for payments of taxes for tax periods begin. after 12/31/89.

—P.L. 101-239, Sec. 7632(a), redesignated subsec. (g) as subsec. (h) [as redesignated by Sec. 7507(a) of this Act] and added new subsec. (g), effective for amounts required to be deposited after 7/31/90 [amended by Sec. 11334(b), P.L. 101-508, see above].

In 1988, P.L. 100-647, Sec. 6107(a), amended subsec. (d), effective for articles sold by the manufacturer, producer, or importer after 12/31/88.

Prior to amendment, subsec. (d) read as follows:

"(d) Time for payment of manufacturers excise tax on sport fishing equipment.

"The tax imposed by section 4161(a) (relating to manufacturers excise tax on sport fishing equipment) shall be due and payable on the date for filing the return for such tax."

—P.L. 100-418, Sec. 1941(b)(2)(G)(i), substituted "For" for "(1) For" in para. (e)(1) ... Sec. 1941(b)(2)(G)(ii), deleted para. (e)(2), effective for crude oil removed from the premises on or after 8/23/88.

Prior to deletion, para. (e)(2) read as follows:

"(2) For depositary requirements applicable to the windfall profit tax imposed by section 4986, see section 4995(b)."

In 1984, P.L. 98-369, Sec. 734(i), amended Sec. 518(a) of P.L. 97-424 (reproduced below), by substituting "any Federal Reserve Bank" for "any government depository authorized under section 6302 of such Code."

—P.L. 98-369, Sec. 1015(c), redesignated subsec. (d) as subsec. (e) and added new subsec. (d), effective for articles sold by the manufacturer, producer, or importer after 9/30/84.

In 1983, P.L. 98-76, Sec. 226, provides:

"SEC. 226. DEPOSITARY SCHEDULES.

"Effective on and after January 1, 1984, the times for making payments prescribed under section 6302 of the Internal Revenue Code of 1954 with respect to the taxes imposed by chapter 22 of such Code shall be the same as the times prescribed under such section which apply to the taxes imposed by chapters 21 and 24 of such Code."

—P.L. 97-424, Sec. 518, [as amended by Sec. 734(i) of P.L. 98-369, see above] provides:

""SEC. 518 EXTENSION OF PAYMENT DUE DATE FOR CERTAIN FUEL TAXES.

"(a) 14-Day extension.—The Secretary shall prescribe regulations which permit any qualified person whose liability for tax under section 4081 of the Internal Revenue Code of 1954 is payable with respect to semi-monthly periods to pay such tax on or before the day which is 14 days after the close of such semi-monthly period if such payment is made by wire transfer to any Federal Reserve Bank.

"(b) Qualified person defined.— For purposes of this section—

"(1) In general. The term 'qualified person' means—

"(A) any person other than any person whose average daily production of crude oil for the preceding calendar quarter exceeds 1,000 barrels, and

"(B) any independent refiner (within the meaning of section 4995(b)(4) of such Code).

"(2) Aggregation rules. For purposes of paragraph (1), in determining whether any person's production exceeds 1,000 barrels per day, rules similar to the rules of section 4992(e) of the Internal Revenue Code of 1954 shall apply.

"(c) Special rule where 14th day falls on Saturday, Sunday, or holiday.—If, but for this subsection, the due date under subsection (a) would fall on a Saturday, Sunday, or a holiday in the District of Columbia, such due date shall be deemed to be the immediately preceding day which is not a Saturday, Sunday, or such a holiday."

In 1980, P.L. 96-223, Sec. 101(c)(2), amended subsec. (d), effective for periods after 2/29/80.

Prior to amendment, subsec. (d) read as follows:

"(d) Cross reference. For treatment of payment of earned income advance amounts as payment of withholding and FICA taxes, see section 3507(d)."

—P.L. 96-222, Sec. 101(a)(2)(D), changed the effective date for amendments made by Sec. 105(e) of P.L. 95-600 to remuneration paid after 6/30/79, from effective for remuneration paid after 6/30/78.

In 1978, P.L. 95-600, Sec. 105(e), added new subsec. (d), for remuneration paid after 6/30/79.

In 1977, P.L. 95-147, Sec. 3(a), substituted ", trust companies, domestic building and loan associations, or credit unions" for "or trust companies" and substituted ", trust companies, domestic building and loan associations, and credit unions" for "and trust companies" in subsec. (c), effective for amounts deposited after 10/28/77.

In 1976, P.L. 94-455, Sec. 1906(a)(17), substituted "section 4501(a) of chapter 37" for "section 4501(a) or 4511 of chapter 37, or section 4701 or 4721 of chapter 39" in subsec. (b), effective 2/1/77.

—P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6302, effective 2/1/77.

In 1956, P.L. 627, Sec. 206(b), added "section 4481 of chapter 36" after "33" in subsec. (b), effective 7/1/56.

### Sec. 6303. Notice and demand for tax.

**(a) General rule.**

Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

**(b) Assessment prior to last date for payment.**

Except where the Secretary believes collection would be jeopardized by delay, if any tax is assessed prior to the last date prescribed for payment of such tax, payment of such tax shall not be demanded under subsection (a) until after such date.

In 1976, P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6303, effective 2/1/77.

### Sec. 6304. Fair tax collection practices.

**(a) Communication with the taxpayer.**

Without the prior consent of the taxpayer given directly to the Secretary or the express permission of a court of competent jurisdiction, the Secretary may not communicate with a taxpayer in connection with the collection of any unpaid tax—

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the taxpayer;

(2) if the Secretary knows the taxpayer is represented by any person authorized to practice before the Internal Revenue Service with respect to such unpaid tax and has knowledge of, or can readily ascertain, such person's name and address, unless such person fails to respond within a reasonable period of time to a communication from the Secretary or unless such person consents to direct communication with the taxpayer; or

(3) at the taxpayer's place of employment if the Secretary knows or has reason to know that the taxpayer's employer prohibits the taxpayer from receiving such communication.

In the absence of knowledge of circumstances to the contrary, the Secretary shall assume that the convenient time for communicating with a taxpayer is after 8 a.m. and before 9 p.m., local time at the taxpayer's location.

**(b) Prohibition of harassment and abuse.**

The Secretary may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any unpaid tax. Without limiting the general application of the foregoing, the following conduct is a violation of this subsection:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(4) Except as provided under rules similar to the rules in section 804 of the Fair Debt Collection Practices Act (15 U.S.C. 1692b), the placement of telephone calls without meaningful disclosure of the caller's identity.

**(c) Civil action for violations of section.**

For civil action for violations of this section, see section 7433.

In 1998, P.L. 105-206, Sec. 3466(a), added Code Sec. 6304, effective 7/22/98.

## Sec. 6305. Collection of certain liability.

**(a) In general.**

Upon receiving a certification from the Secretary of Health and Human Services, under section 452(b) of the Social Security Act with respect to any individual, the Secretary shall assess and collect the amount certified by the Secretary of Health and Human Services, in the same manner, with the same powers, and (except as provided in this section) subject to the same limitations as if such amount were a tax imposed by subtitle C the collection of which would be jeopardized by delay, except that—

(1) no interest or penalties shall be assessed or collected,

(2) for such purposes, paragraphs (4), (6), and (8) of section 6334(a) (relating to property exempt from levy) shall not apply.

(3) there shall be exempt from levy so much of the salary, wages, or other income of an individual as is being withheld therefrom in garnishment pursuant to a judgment entered by a court of competent jurisdiction for the support of his minor children,

(4) in the case of the first assessment against an individual for delinquency under a court or administrative order against such individual for a particular person or persons, the collection shall be stayed for a period of 60 days immediately following notice and demand as described in section 6303, and

(5) no additional fee may be assessed for adjustments to an amount previously certified pursuant to such section 452(b) with respect to the same obligor.

**(b) Review of assessments and collections.**

No court of the United States, whether established under article I or article III of the Constitution, shall have jurisdiction of any action, whether legal or equitable, brought to restrain or review the assessment and collection of amounts by the Secretary under subsection (a), nor shall any such assessment and collection be subject to review by the Secretary in any proceeding. This subsection does not preclude any legal, equitable, or administrative action against the State by an individual in any State court or before any State agency to determine his liability for any amount assessed against him and collected, or to recover any such amount collected from him, under this section.

In 1996, P.L. 104-193, Sec. 361(a)(1), deleted "and" at the end of para. (a)(3)... Sec. 361(a)(2), substituted ", and" for the period at the end of para. (a)(4)... Sec. 361(a)(3), added para. (a)(5)... Sec. 361(a)(4), substituted "Secretary of Health and Human Services" for "Secretary of Health, Education, and Welfare" each place it appeared in subsec. (a), effective 10/1/97.

—P.L. 104-193, Sec. 395(a)-(c), of this Act provides:

"(a) In general. Except as otherwise specifically provided (but subject to subsections (b) and (c))—

"(1) the provisions of this title requiring the enactment of State laws under section 466 of the Social Security Act, or revision of State plans under section 454 of such Act, shall be effective with respect to periods beginning on and after October 1, 1996; and

"(2) all other provisions of this title shall become effective upon the date of the enactment of this Act.

"(b) Grace period for State law changes. The provisions of this title shall become effective with respect to a State on the later of —

"(1) the date specified in this title, or

"(2) the effective date of laws enacted by the legislature of such State implementing such provisions,

but in no event later than the 1st day of the 1st calendar quarter beginning after the close of the 1st regular session of the State legislature that begins after the date of the enactment of this Act. For purposes of the previous sentence, in the case of a State that has a 2-year legislative session, each year of such session shall be deemed to be a separate regular session of the State legislature.

"(c) Grace period for State constitutional amendment. A State shall not be found out of compliance with any requirement enacted by this title if the State is unable to so comply without amending the State constitution until the earlier of—

"(1) 1 year after the effective date of the necessary State constitutional amendment; or

"(2) 5 years after the date of the enactment of this Act."

In 1981, P.L. 97-35, Sec. 2332(g), substituted "court or administrative order" for "court order" in para. (a)(4), effective 10/1/81.

In 1976, P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6305, effective 2/1/77.

In 1975, P.L. 94-46, Sec. 2, changed the effective date for amendments made by Sec. 101(b)(1) of P.L. 93-647, from 7/1/75 to 8/1/75, see below.

—P.L. 93-647, Sec. 101(b)(1), added new Code Sec. 6305, effective [as amended by Sec. 101(f) of P.L. 94-46, see above] 7/1/75.

## Sec. 6306. Qualified tax collection contracts.

**(a) In general.**

Nothing in any provision of law shall be construed to prevent the Secretary from entering into a qualified tax collection contract.

**(b) Qualified tax collection contract.**

For purposes of this section, the term "qualified tax collection contract" means any contract which—

(1) is for the services of any person (other than an officer or employee of the Treasury Department)—

(A) to locate and contact any taxpayer specified by the Secretary,

(2) *Contributions*. For purposes of its books and records, or for purposes of furnishing information to a shareholder, the S corporation must determine:

(i) The character of the amount received by the corporation (for example, whether it is a contribution, loan, or repayment of a loan);

(ii) The amount of money received by the corporation; and

(iii) The basis to the corporation of contributed property (including necessary preliminary determinations, such as the shareholder's basis in the contributed property).

To the extent that a determination of an item relating to a contribution can be made from these and similar determinations that the corporation is required to make, that item is a subchapter S item. To the extent that the determination requires other information, however, that item is not a subchapter S item. Such other information would include those factors used in determining whether there is recapture under section 47 by the contributing shareholder of the general business credit because of the contribution of property in circumstances in which that determination is irrelevant to the corporation.

(3) *Distributions*. For purposes of its books and records, or for purposes of furnishing information to a shareholder, the S corporation must determine:

(i) The character of the amount transferred to a shareholder (for example, whether it is a dividend, compensation, loan, or repayment of a loan);

(ii) The amount of money distributed to a shareholder;

(iii) The fair market value of property distributed to a shareholder;

(iv) The adjusted basis to the corporation of distributed property; and

(v) The character of corporation property (for example, whether an item is inventory or a capital asset).

To the extent that a determination of an item relating to a distribution can be made from these and similar determinations that the corporation is required to make, that item is a subchapter S item. To the extent that the determination requires other information, however, that item is not a subchapter S item. Such other information would include the determination of a shareholder's basis in the shareholder's stock or in the indebtedness of the S corporation to the shareholder.

(d) *Cross reference*. For the definition of subchapter S item for purposes of the windfall profit tax, see §51.6245-1T.

(e) *Effective date*. This section shall apply to taxable years beginning after December 31, 1982.

[T.D. 8122, 52 FR 3003, Jan. 30, 1987]

## Collection

GENERAL PROVISIONS

**§301.6301-1 Collection authority.**

The taxes imposed by the internal revenue laws shall be collected by district directors of internal revenue. See, however, section 6304, relating to the collection of certain taxes under the provisions of the Tariff Act of 1930 (19 U.S.C. ch. 4).

**§301.6302-1 Mode or time of collection of taxes.**

(a) *Employment and excise taxes*. For provisions relating to the mode or time of collection of certain employment and excise taxes and the use of authorized financial institutions in connection with the payment thereof, see the regulations relating to the particular tax.

(b) *Income taxes*. (1) For provisions relating to the use of authorized financial institutions in depositing income and estimated income taxes of certain corporations, see §1.6302-1 of this chapter (Income Tax Regulations).

(2) For provisions relating to the use of authorized financial institutions in depositing the tax required to be withheld under chapter 3 of the Code on nonresident aliens and foreign corporations and tax-free covenant bonds, see §1.6302-2 of this chapter.

[32 FR 15241, Nov. 2, 1967, as amended by T.D. 8952, 66 FR 33832, June 26, 2001]

**§301.6303-1 Notice and demand for tax.**

(a) *General rule*. Where it is not otherwise provided by the Code, the district director or the director of the regional service center shall, after the making

of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be given as soon as possible and within 60 days. However, the failure to give notice within 60 days does not invalidate the notice. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address. For further guidance regarding the definition of last known address, see § 301.6212-2.

(b) *Assessment prior to last date for payment.* If any tax is assessed prior to the last date prescribed for payment of such tax, demand that such tax be paid will not be made before such last date, except where it is believed collection would be jeopardized by delay.

[32 FR 15241, Nov. 3, 1967, as amended by T.D. 8939, 66 FR 2820, Jan. 12, 2001]

**§ 301.6305-1 Assessment and collection of certain liability.**

(a) *Scope.* Section 6305(a) requires the Secretary of the Treasury or his delegate to assess and collect amounts which have been certified by the Secretary of Health and Human Services as the amount of a delinquency determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child or of a child and the parent with whom the child is living. These amounts, referred to as "child and spousal support", are to be collected in the same manner and with the same powers exercised by the Secretary of the Treasury or his delegate in the collection of an employment tax which would be jeopardized by delay. However, where the assessment is the first assessment against an individual for a delinquency described in this paragraph for a particular individual or individuals, the collection is to be stayed for a period of 60 days following notice and demand. In addition, no interest or penalties (with the exception of the penalties imposed by sections 6332(c)(2) and 6657) shall be assessed or collected on the amounts, paragraphs (4), (6) and (8) of section 6334(a) (relating to property exempt from levy) shall not apply; and, there shall be exempt from levy so much of the salary, wages, or other income of the individual which is subject to garnishment pursuant to a judgment entered by a court for the support of his or her minor children. Section 6305(b) provides that sole jurisdiction for any action brought to restrain or review assessment and collection of the certified amounts shall be in a State court or a State administrative agency.

(b) *Assessment and collection*—(1) *General rule.* Upon receipt of a certification or recertification from the Secretary of Health and Human Services or his delegate under section 452(b) of title IV of the Social Security Act as amended (relating to collection of child and spousal support obligations with respect to an individual), the district director or his delegate shall assess and collect the certified amount (or recertified amount). Except as provided in paragraph (c) of this section, the amount so certified shall be assessed and collected in the same manner, with the same powers, and subject to the same limitations as if the amount were an employment tax the collection of which would be jeopardized by delay. However, the provisions of subtitle F with respect to assessment and collection of taxes shall not apply with respect to assessment and collection of a certified amount where such provisions are clearly inappropriate to, and incompatible with, the collection of certified amounts generally. For example, section 6861(g) which allows the Secretary or his delegate to abate a jeopardy assessment if he finds a jeopardy does not exist will not apply.

(2) *Method of assessment.* An assessment officer appointed by the district director pursuant to § 301.6203-1 to make assessments of tax shall also make assessments of certified amounts. The assessment of a certified amount shall be made by the assessment officer signing the summary record of assessment. The date of assessment is the date the summary record is signed by the assessment officer. The summary record, through supporting records as necessary, shall provide—

(i) The assessed amount;

(ii) The name, social security number, and last known address of the individual owing the assessed amount. For

**Sec. 6751. Procedural requirements.**

**(a) Computation of penalty included in notice.**

The Secretary shall include with each notice of penalty under this title information with respect to the name of the penalty, the section of this title under which the penalty is imposed, and a computation of the penalty.

**(b) Approval of assessment.**

**(1) In general.** No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

**(2) Exceptions.** Paragraph (1) shall not apply to—

(A) any addition to tax under section 6651, 6654, or 6655; or

(B) any other penalty automatically calculated through electronic means.

**(c) Penalties.**

For purposes of this section, the term "penalty" includes any addition to tax or any additional amount.

---

**In 2000,** P.L. 106-554, Sec. 1(a)(7) [which enacted into law Sec. 302(b) of H.R. 5662], substituted "June 30, 2001" for "December 31, 2000" and added "In the case of any notice of penalty issued after June 30, 2001, and before July 1, 2003, the requirements of section 6751(a) of the Internal Revenue Code of 1986 shall be treated as met if such notice contains a telephone number at which the taxpayer can request a copy of the taxpayer's assessment and payment history with respect to such penalty." in Sec. 3306(c) of P.L. 105-206, see below.

**In 1998,** P.L. 105-206, Sec. 3306(a), added Code Sec. 6751, effective for notices issued, and penalties assessed, after June 30, 2001. In the case of any notice of penalty issued after June 30, 2001, and before July 1, 2003, the requirements of section 6751(a) of the Internal Revenue Code of 1986 shall be treated as met if such notice contains a telephone number at which the taxpayer can request a copy of the taxpayer's assessment and payment history with respect to such penalty.

---

## CHAPTER 69.—GENERAL PROVISIONS RELATING TO STAMPS

Sec.

6801. Authority for establishment, alteration, and distribution.
6802. Supply and distribution.
6803. Accounting and safeguarding.
6804. Attachment and cancellation.
6805. Redemption of stamps.
6806. Occupational tax stamps.
6807. Stamping, marking, and branding seized goods.
6808. Special provisions relating to stamps.

**Sec. 6801. Authority for establishment, alteration, and distribution.**

**(a) Establishment and alteration.**

The Secretary may establish, and from time to time alter, renew, replace, or change the form, style, character, material, and device of any stamp, mark, or label under any provision of the laws relating to internal revenue.

**(b) Preparation and distribution of regulations, forms, stamps and dies.**

The Secretary shall prepare and distribute all the instructions, regulations, directions, forms, blanks, and stamps; and shall provide proper and sufficient adhesive stamps and other stamps or dies for expressing and denoting the several stamp taxes.

---

**In 1984,** P.L. 98-369, Sec. 454(c)(13), substituted "several stamp taxes." for "several stamp taxes; except that stamps required by or prescribed pursuant to the provisions of section 5205 or section 5235 may be prepared and distributed by persons authorized by the Secretary, under such controls for the protection of the revenue as shall be deemed necessary." in subsec. (b), effective 7/1/85.

**In 1976,** P.L. 94-569, Sec. 2, substituted all that follows "several stamp taxes" for the period at the end of subsec. (b), effective 10/20/76.

—P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6801, effective 2/1/77.

---

**Sec. 6802. Supply and distribution.**

The Secretary shall furnish, without prepayment, to—

**(1) Postmaster General.** The Postmaster General a suitable quantity of adhesive stamps, coupons, tickets, or such other devices as may be prescribed by the Secretary pursuant to section 6302(b) or this chapter, to be distributed to, and kept on sale by, the various postmasters in the United States in all post offices of the first and second classes, and such post offices of the third and fourth classes as—

(A) are located in county seats, or

(B) are certified by the Secretary to the Postmaster General as necessary.

**(2) Designated depositary of the United States.** Any designated depositary of the United States a suitable quantity of adhesive stamps to be kept on sale by such designated depositary.

---

**In 1976,** P.L. 94-455, Sec. 1906(a)(36), substituted a period for the semicolon at the end of para. (2), effective 2/1/77. The Act apparently meant for the amendment to be made at the end of subpara. (1)(B), and has been corrected thusly.

—P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6802, effective 2/1/77.

**In 1965,** P.L. 89-44, Sec. 601(d)(1), deleted "(other than stamps on playing cards)" after "adhesive stamps" in para. (1), effective 6/22/65.

—P.L. 89-44, Sec. 601(d)(2), deleted para. (3), effective 1/1/66.

Prior to deletion, para. (3) read as follows:

"(3) State agents. Any person who is—

"(A) duly appointed and acting as agent of any State for the sale of stock transfer stamps of such State, and

"(B) designated by the Secretary or his delegate for the purpose,

a suitable quantity of such adhesive stamps as are required by section 4301, to be kept on sale by such person."

---

**Sec. 6803. Accounting and safeguarding.**

**(a) Bond.**

In cases coming within the provisions of paragraph (2) of section 6802, the Secretary may require a bond, with sufficient sureties, in a sum to be fixed by the Secretary, conditioned for the faithful return, whenever so required, of all quantities or amounts undisposed of and for the payment monthly for all quantities or amounts sold or not remaining on hand.

**(b) Regulations.**

The Secretary may from time to time make such regulations as he may find necessary to insure the safekeeping or prevent the illegal use of all adhesive stamps referred to in paragraph (2) of section 6802.

---

**In 1976,** P.L. 94-455, Sec. 1906(a)(37), amended Code Sec. 6803.

Prior to amendment, Code Sec. 6803 read as follows:

"SEC. 6803. ACCOUNTING AND SAFEGUARDING.

"*(b) Depositaries and State agents.*

"(1) Bond. In cases coming within the provisions of paragraph (2) or (3) of section 6802, the Secretary or his delegate may require a bond, with sufficient sureties, in a sum to be fixed by the Secretary or his delegate, conditioned for the faithful return, whenever so required, of all quantities or amounts undisposed of and for the payment monthly for all quantities or amounts sold or not remaining on hand.

"(2) Regulations. The Secretary or his delegate may from time to time make such regulations as he may find necessary to insure the safekeeping or prevent the illegal use of all adhesive stamps referred to in paragraphs (2) and (3) of section 6802."

**In 1972,** P.L. 92-310, Sec. 230(a), deleted subsec. (a), effective 6/6/72.

Prior to deletion, subsec. (a) read as follows:

—P.L. 95-600, Sec. 321(b)(2), added new subsec. (q), effective for amounts paid or incurred after 12/31/78, in tax. yrs. end. after 12/31/78.

—P.L. 95-600, Sec. 504(b)(3), added "and refund" after "carryback" the first place it appears in subsec. (m), effective for tentative refund claims filed on and after 11/6/78.

—P.L. 95-600, Sec. 701(t)(3)(A), substituted "43, or 44" for "or 43" in para. (e)(3), effective 10/4/76.

—P.L. 95-600, Sec. 703(n), substituted "section 6213(b)(3)" for "Section 6213(b)(2)" in subsecs. (h), (j), and (o), effective 10/4/76.

—P.L. 95-600, Sec. 703(p)(2), deleted the last sentence of subsec. (h), effective for losses sustained in tax. yrs. ending after 11/6/78.

Prior to amendment, the last sentence of subsec. (h) read as follows:

"In the case of a deficiency attributable to the application of a net operating loss carryback, such deficiency may be assessed within 18 months after the date on which the taxpayer files in accordance with section 172(b)(3) a copy of the certification (with respect to the taxable year of the net operating loss) issued under section 317 of the Trade Expansion Act of 1962, if later than the date prescribed by the preceding sentence."

—P.L. 95-227, Sec. 4(d)(4), para. (e)(3), substituted "43, or 44" for "or 43", in the second sentence of para. (e)(3), effective for contributions, acts, and expenditures made after 12/31/77, in and for tax. yrs. begin. after 12/31/77.

—P.L. 95-227, Sec. 4(d)(5), para. (n)(1) substitutes "For purposes of any tax imposed by chapter 42 (other than section 4940) or by section 4975, the return referred to in this section shall be the return filed by the private foundation, plan, or trust (as the case may be) for the year in which the act (or failure to act) giving rise to liability for such tax occurred" for the first sentence in para. (n)(1), effective for contributions, acts and expenditures made after 12/31/77, in and for tax. yrs. begin. after 12/31/77.

**In 1977,** P.L. 95-30, Sec. 202(d)(4)(A), added subsec. (p), effective for tax. yrs. begin. after 12/31/76 and to credit carrybacks from such yrs.

—P.L. 95-30, Sec. 202(d)(5)(B), substituted "a work incentive program carryback, or a new employee credit carryback" for "or a work incentive program carryback" in subsec. (m) and substituted "(j), (o), or (p)" for "(j), or (o)" each place it appeared in subsec. (m), effective for tax. yrs. begin. after 12/31/76 and to credit carrybacks from such yrs.

**In 1976,** P.L. 94-455, Sec. 1031(b)(5), substituted "section 904(c)" for "section 904(d)" each place it appeared in subsec. (i), effective for tax. yrs. begin. after 12/31/75.

—P.L. 94-455, Sec. 1035(d)(3), substituted "excess foreign taxes) or under section 907(f) (relating to carryback and carryover of disallowed oil and gas extraction taxes)" for "excess foreign taxes)" and substituted "section 904(c) or 907(f)" for "section 904(c)" in subsec. (i), as previously amended by this Act, effective for taxes paid or accrued during tax. yrs. end. after 10/4/76.

—P.L. 94-455, Sec. 1302(b), added para. (n)(3), effective for tax. yrs. begin. after 12/31/74.

—P.L. 94-455, Sec. 1307(d)(2)(F)(vi), substituted "chapter 41, 42," for "chapter 42" in para. (e)(3), effective 10/4/76.

—P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6501, effective 2/1/77.

—P.L. 94-455, Sec. 2107(g)(2)(A), added ", and investment credit carryback," after "net operating loss carryback" in subsec. (o), effective 10/4/76.

**In 1974,** P.L. 93-406, Sec. 1016(a)(14), substituted "chapter 42 or 43" for "chapter 42" in para. (e)(3), effective 9/2/74 or other date as specified in Sec. 1017 of the Act (reproduced following Code Sec. 401).

**In 1971,** P.L. 92-178, Sec. 504(c), added para. (g)(3), for tax. yrs. end. after 12/31/71, except that a corporation may be a DISC for any tax. yr. beg... before 1/1/72.

—P.L. 92-178, Sec. 601(d)(1), added subsec. (o) . . . Sec. 601(e)(2), substituted "an investment credit carryback, or a work incentive program carryback" for "or an investment credit carryback" in subsec. (m) and substituted "(h), (j), or (o)" for "(h) or (j)" in subsec. (m), effective for tax. yrs. begin. after 12/31/71.

**In 1970,** P.L. 91-614, Sec. 102(d)(8), substituted "during the period for which the return was filed" for "during the year," in the first sentence of para. (e)(2) effective for gifts made after 12/31/70.

**In 1969,** P.L. 91-172, Sec. 101(g)(1), added new subsec. (n) . . . Sec. 101(g)(2), added para. (c)(7) . . . Sec. 101(g)(3), added new sentence to end of subsec. (e)(3), effective 1/1/70.

—P.L. 91-172, Sec. 512(e)(1), amended subsec. (h), substituted "loss carryback or a capital loss carryback" for "loss carryback" in subsec. (j) and substituted "net operating loss carryback, a capital loss carryback, or an investment credit carryback" for "net operating loss carryback or an investment credit carryback" in subsec. (m), effective for net capital losses sustained in tax. yrs. begin. after 12/31/69.

Prior to amendment subsec. (h) read as follows:

"(h) Net operating loss carrybacks.

"In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss which results in such carryback may be assessed, or within 18 months after the date on which the taxpayer files in accordance with section 172(b)(3) a copy of the certification (with respect to such taxable year) issued under section 317 of the Trade Expansion Act of 1962, whichever is later."

**In 1967,** P.L. 90-225, Sec. 2(c), amended subsec. (j) by adding the last phrase beginning "or with respect to any", effective with respect to investment credit carrybacks attributable to net operating loss carrybacks from tax. yrs. end. after 7/31/67.

**In 1966,** P.L. 89-809, Sec. 105(f)(3), substituted "chapter 3, 21, or 24" for "Chapter 21 or 24" in paras. (b)(1) and (2) and added "and tax imposed by chapter 3" to heading of subsec. (b)(2), effective 11/13/66.

—P.L. 89-721, Sec. 2(f), added "concluding deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2))" after "investment credit carryback", in subsec. (j), effective for tax. yrs. end. after 12/31/61, but only in the case of applications filed after 11/2/66.

—P.L. 89-721, Sec. 3(a), added subsec. (m) to apply to any case where the application under Code Sec. 6411 is filed after 11/2/66.

**In 1965,** P.L. 89-44, Sec. 810(a), added para. (b)(4) . . . Sec. 810(b)(1), added para. (e)(3) . . . Sec. 810(b)(2), substituted "Substantial omission of items" for "Omission from gross income" in the heading of subsec. (e), effective for returns filed after 6/30/65.

**In 1964,** P.L. 88-272, Sec. 225(c)(6), substituted "gross income and adjusted ordinary gross income, described in section 543" for "gross income, described in section 543(a)" in subsec. (f) for tax. yrs. begin. after 12/31/63.

—P.L. 88-571, Sec. 3(b), added subsec. (k) and redesignated former subsec. (k) as (l) effective for amounts added to policyholders surplus accounts for tax. yrs. begin. after 12/31/58.

**In 1962,** P.L. 87-858, Sec. 3(b)(4), substituted "802(a)" for "802(a)(1)" in subsec. (c)(6), effective for tax. yrs. begin. after 12/31/61.

—P.L. 87-794, Sec. 317(a), amended subsec. (h), effective for net operating losses for tax. yrs. end. after 12/31/55.

Prior to amendment, subsec. (h) read as follows:

"(h ... y attributable to t... back (including ... sions of section ... e before the exp... able year of the ... assessed."

— ... mer subsec. (j) ...

EXHIBIT
PAGE
of

In ... nated former subsec. (i) as (j), effective for tax. yrs. begin. after 12/31/57.

**In 1959,** P.L. 86-69, Sec. 3(g), added subsec. (c)(6), effective for tax. yrs. begin. after 12/31/57.

**In 1958,** P.L. 85-859, substituted "at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid" for "within 3 years after such tax became due" in subsec. (a), effective 1/1/59.

—P.L. 85-866, Sec. 80(a), substituted "subsection (c), (e), or (f)," for "subsection (c)," in the first sentence of subsec. (d) . . . Sec. 80(b), amended the second sentence of subsec. (d) . . . Sec. 81(a), substituted "organization" for "corporation" each place it appeared in para. (g)(2) . . . Sec. 81(b), redesignated subsec. (h) as subsec. (i) and added new subsec. (h), effective 8/17/54.

## Sec. 6502. Collection after assessment.

### (a) Length of period.

Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

**(1)** within 10 years after the assessment of the tax, or

**(2)** if—

(A) there is an installment agreement between the taxpayer and the Secretary, prior to the date which is 90 days after the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer at the time the installment agreement was entered into; or

## Limitations

### LIMITATIONS ON ASSESSMENT AND COLLECTION

**§ 301.6501(a)-1 Period of limitations upon assessment and collection.**

(a) The amount of any tax imposed by the Code (other than a tax collected by means of stamps) shall be assessed within 3 years after the return was filed. For rules applicable in cases where the return is filed prior to the due date thereof, see section 6501(b). In the case of taxes payable by stamp, assessment shall be made at any time after the tax became due and before the expiration of 3 years after the date on which any part of the tax was paid. For exceptions and additional rules, see subsections (b) to (g) of section 6501, and for cross references to other provisions relating to limitations on assessment and collection, see sections 6501(h) and 6504.

(b) No proceeding in court without assessment for the collection of any tax shall be begun after the expiration of the applicable period for the assessment of such tax.

**§ 301.6501(b)-1 Time return deemed filed for purposes of determining limitations.**

(a) *Early return.* Any return, other than a return of tax referred to in paragraph (b) of this section, filed before the last day prescribed by law or regulations for the filing thereof (determined without regard to any extension of time for filing) shall be considered as filed on such last day.

(b) *Returns of social security tax and of income tax withholding.* If a return on or after November 13, 1966, of tax imposed by chapter 3 of the Code (relating to withholding of tax on nonresident aliens and foreign corporations and tax-free covenant bonds), or if a return of tax imposed by chapter 21 of the Code (relating to the Federal Insurance Contributions Act) or by chapter 24 of the Code (relating to collection of income tax at source on wages), for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be deemed filed on April 15 of such succeeding calendar year. For example, if quarterly returns of the tax imposed by chapter 24 of the Code are filed for the four quarters of 1955 on April 30, July 31, and October 31, 1955, and on January 31, 1956, the period of limitation for assessment with respect to the tax required to be reported on such return is measured from April 15, 1956. However, if any of such returns is filed after April 15, 1956, the period of limitation for assessment of the tax required to be reported on that return is measured from the date it is in fact filed.

(c) *Returns executed by district directors or other internal revenue officers.* The execution of a return by a district director or other authorized internal revenue officer or employee under the authority of section 6020(b) shall not start the running of the statutory period of limitations on assessment and collection.

**§ 301.6501(c)-1 Exceptions to general period of limitations on assessment and collection.**

(a) *False return.* In the case of a false or fraudulent return with intent to evade any tax, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time after such false or fraudulent return is filed.

(b) *Willful attempt to evade tax.* In the case of a willful attempt in any manner to defeat or evade any tax imposed by the Code (other than a tax imposed by subtitle A or B, relating to income, estate, or gift taxes), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

(c) *No return.* In the case of a failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time after the date prescribed for filing the return. For special rules relating to filing a return for chapter 42 and similar taxes, see §§ 301.6501(n)-1, 301.6501(n)-2, and 301.6501(n)-3.

(d) *Extension by agreement.* The time prescribed by section 6501 for the assessment of any tax (other than the estate tax imposed by chapter 11 of the Code) may, prior to the expiration of such time, be extended for any period

gate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy.

"(2) Corporation in liquidation. If the Secretary or his delegate finds that the collection of the income tax of a corporation for the current or the preceding taxable year will be jeopardized by the distribution of all or a portion of the assets of such corporation in the liquidation of the whole or any part of its capital stock, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable.

*"(b) Reopening of taxable period.*

"Notwithstanding the termination of the taxable period of the taxpayer by the Secretary or his delegate, as provided in subsection (a), the Secretary or his delegate may reopen such taxable period each time the taxpayer is found by the Secretary or his delegate to have received income, within the current taxable year, since a termination of the period under subsection (a). A taxable period so terminated by the Secretary or his delegate may be reopened by the taxpayer (other than a nonresident alien) if he files with the Secretary or his delegate a true and accurate return of the items of gross income and of the deductions and credits allowed under this title for such taxable period, together with such other information as the Secretary or his delegate may by regulations prescribe. If the taxpayer is a nonresident alien the taxable period so terminated may be reopened by him if he files, or causes to be filed, with the Secretary or his delegate a true and accurate return of his total income derived from all sources within the United States, in the manner prescribed in this title."

—P.L. 94-455, Sec. 1204(b)(2), deleted subsec. (e) and added new subsecs. (e) and (f), for action taken under Code Secs. 6851, 6861 or 6862 where the notice and demand takes place after '76. P.L. 94-528, Sec. 2(a), postponed the effective date for this amendment to be for notices and demands taking place after 2/28/77.

Prior to amendment, subsec. (e) read as follows:

*"(e) Furnishing of bond where taxable year is closed by the Secretary or his delegate.*

"Payment of taxes shall not be enforced by any proceedings under the provisions of this section prior to the expiration of the time otherwise allowed for paying such taxes if the taxpayer furnishes, under regulations prescribed by the Secretary or his delegate, a bond to insure the timely making of returns with respect to, and payment of, such taxes or any income or excess profits taxes for prior years."

—P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 6851, effective 2/1/77.

**In 1958,** P.L. 85-866, designated existing provisions of subsec. (d) as para. (d)(1), added opening provisions and para. (d)(2), effective 8/17/54.

## Sec. 6852. Termination assessments in case of flagrant political expenditures of section 501(c)(3) organizations.

**(a) Authority to make.**

**(1) In general.** If the Secretary finds that—

(A) a section 501(c)(3) organization has made political expenditures, and

(B) such expenditures constitute a flagrant violation of the prohibition against making political expenditures,

the Secretary shall immediately make a determination of any income tax payable by such organization for the current or immediately preceding taxable year, or both, and shall immediately make a determination of any tax payable under section 4955 by such organization or any manager thereof with respect to political expenditures during the current or preceding taxable year, or both. Notwithstanding any other provision of law, any such tax shall become immediately due and payable. The Secretary shall immediately assess the amount of tax so determined (together with all interest, additional amounts, and additions to the tax provided by law) for the current year or the preceding taxable year, or both, and shall cause notice of such determination and assessment to be given to the organization or any manager thereof, as the case may be, together with a demand for immediate payment of such tax.

**(2) Computation of tax.** In the case of a current taxable year, the Secretary shall determine the taxes for the period beginning on the 1st day of such current taxable year and ending on the date of the determination under paragraph (1) as though such period were a taxable year of the organization, and shall take into account any prior determination made under this subsection with respect to such current taxable year.

**(3) Treatment of amounts collected.** Any amounts collected as a result of any assessments under this subsection shall, to the extent thereof, be treated as a payment of income tax for such taxable year, or tax under section 4955 with respect to the expenditure, as the case may be.

**(4) Section inapplicable to assessments after due date.** This section shall not authorize any assessment of tax for the preceding taxable year which is made after the due date of the organization's return for such taxable year (determined with regard to any extensions).

**(b) Definitions and special rules.**

**(1) Definitions.** For purposes of this section, the terms "section 501(c)(3) organization", "political expenditure", and "organization manager" have the respective meanings given to such terms by section 4955.

**(2) Certain rules made applicable.** The provisions of sections 6851(b), 6861(f), and 6861(g) shall apply with respect to any assessment made under subsection (a), except that determinations under section 6861(g) shall be made on the basis of whether the requirements of subsection (a)(1)(B) of this section are met in lieu of whether jeopardy exists.

---

**In 1987,** P.L. 100-203, Sec. 10713(b)(1), added Code Sec. 6582, effective 12/22/87.

---

## PART II.—JEOPARDY ASSESSMENTS

Sec.

6861. Jeopardy assessments of income, estate, gift, and certain excise taxes.

6862. Jeopardy assessment of taxes other than income, estate, gift, and certain excise taxes.

6863. Stay of collection of jeopardy assessments.

6864. Termination of extended period for payment in case of carryback.

---

**In 1974,** P.L. 93-406, Sec. 1016(b)(5), substituted "gift, and certain excise taxes" for "and gift taxes" in items 6861 and 6862.

---

## Sec. 6861. Jeopardy assessments of income, estate, gift, and certain excise taxes.

**(a) Authority for making.**

If the Secretary believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary for the payment thereof.

**(b) Deficiency letters.**

If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates

center upon the merits of any claim presented under or authorized by this section, shall in the absence of fraud or mistake in mathematical calculation, be final and not subject to revision by any accounting officer.

[T.D. 7188, 37 FR 12795, June 29, 1972]

**§ 301.6806-1 Posting occupational tax stamps.**

For provisions relating to the posting of specific stamps used with respect to a particular tax, other than a special tax under subchapter B of chapter 35, subchapter B of chapter 36, or subtitle E, see the regulations relating to such tax. For penalties for failure to post occupational tax stamps, see section 7273.

[T.D. 7188, 37 FR 12795, June 29, 1972]

## Jeopardy, Bankruptcy, and Receiverships

### JEOPARDY

TERMINATION OF TAXABLE YEAR

**§ 301.6851-1 Termination of taxable year.**

For regulations under section 6851, see §§ 1.6851-1 to 1.6851-3, inclusive, of this chapter (Income Tax Regulations).

**§ 301.6852-1 Termination assessments of tax in the case of flagrant political expenditures of section 501(c)(3) organizations.**

(a) *Authority for making.* Any assessment under section 6852 as a result of a flagrant violation by a section 501(c)(3) organization of the prohibition against making political expenditures must be authorized by the District Director.

(b) *Determination of income tax.* An organization shall be subject to an assessment of income tax under section 6852 only if the flagrant violation of the prohibition against making political expenditures results in revocation of the organization's tax exemption under section 501(a) because it is not described in section 501(c)(3). An organization subject to such an assessment is not liable for income taxes for any period prior to the effective date of the revocation of the organization's tax exemption.

(c) *Payment.* Where a District Director has made a determination of income tax under paragraph (b) of this section or of section 4955 excise tax, notwithstanding any other provision of law, any tax will become immediately due and payable. The taxpayer is required to pay the amount of the assessment within 10 days after the District Director sends the notice and demand for immediate payment regardless of the filing of an administrative appeal or of a court petition. Regardless of filing an administrative appeal or of petitioning a court, enforced collection action may proceed after the 10-day payment period unless the taxpayer posts the bond described in section 6863. For purposes of collection procedures such as section 6331 (regarding levy), assessments under the authority of paragraph (a) of this section do not constitute situations in which the collection of such tax is in jeopardy and, therefore, do not suspend normal collection procedures.

(d) *Effective date.* This section is effective December 5, 1995.

[T.D. 8628, 60 FR 62212, Dec. 5, 1995]

JEOPARDY ASSESSMENTS

**§ 301.6861-1 Jeopardy assessments of income, estate, gift, and certain excise taxes.**

(a) *Authority for making.* If a district director or director of a service center believes that the assessment or collection of a deficiency in income, estate, gift, or chapter 41, 42, 43, or 44 tax will be jeopardized by delay, then the director is required to assess such deficiency immediately, together with the interest, additional amounts, and additions to the tax provided by law. A district director will make an assessment under this section if collection is determined to be in jeopardy because at least one of the conditions described in § 1.6851-1(a)(1) (i), (ii), or (iii) (relating to termination assessments) exists. A jeopardy assessment may be made before or after the mailing of the notice of deficiency provided by section 6212. However, a jeopardy assessment for a taxable year under section 6861 cannot be made after a decision of the Tax Court with respect to such taxable year has become final (see section 7481) or

after the taxpayer has filed a petition for review of the decision of the Tax Court with respect to such taxable year. In the case of a deficiency determined by a decision of the Tax Court which has become final or with respect to which the taxpayer has filed a petition for review and has not filed a bond as provided in section 7485, assessment may be made in accordance with the provisions of section 6215, without regard to section 6861.

(b) *Amount of jeopardy assessment.* If a notice of a deficiency is mailed to the taxpayer before it is discovered that delay would jeopardize the assessment or collection of the tax, a jeopardy assessment may be made in an amount greater or less than that included in the deficiency notice. If a deficiency is assessed on account of jeopardy after the decision of the Tax Court is rendered, the jeopardy assessment may be made only with respect to the deficiency determined by the Tax Court.

(c) *Jurisdiction of Tax Court.* If the jeopardy assessment is made before the notice in respect of the tax to which the jeopardy assessment relates has been mailed pursuant to section 6212(a), the district director shall, within 60 days after the making of the assessment, send the taxpayer a notice of deficiency pursuant to such subsection. The taxpayer may file a petition with the Tax Court for a redetermination of the amount of the deficiency within the time prescribed in section 6213(a). If the petition of the taxpayer is filed with the Tax Court, either before or after the making of the jeopardy assessment, the Commissioner, through his counsel, is required to notify the Tax Court of such assessment or of any abatement thereof, and the Tax Court has jurisdiction to redetermine the amount of the deficiency, together with all other amounts assessed at the same time in connection therewith.

(d) *Payment and collection of jeopardy assessment.* After a jeopardy assessment has been made, the district director is required to send notice and demand to the taxpayer for the amount of the jeopardy assessment. Regardless of whether the taxpayer has filed a petition with the Tax Court, he is required to make payment of the amount of such assessment (to the extent that it has not been abated) within 10 days after the sending of notice and demand by the district director, unless before the expiration of such 10-day period he files with the district director a bond as provided in section 6863. Section 6331 provides that, if the district director makes a finding that the collection of the tax is in jeopardy, he may make demand for immediate payment of the amount of the jeopardy assessment and, in such case, the taxpayer shall immediately pay such amount or shall immediately file the bond provided in section 6863. If a petition is not filed with the Tax Court within the period prescribed in section 6213(a), the district director will be so advised, and, if collection of the deficiency has been stayed by the timely filing of a bond as provided in section 6863, he should then give notice and make demand for payment of the amount assessed plus interest. After the Tax Court has rendered its decision and such decision has become final, the district director will be notified of the action taken. He will then send notice and demand for payment of the unpaid portion of the amount determined by the Tax Court, the collection of which has been stayed by the bond. If the amount of the jeopardy assessment is less than the amount determined by the Tax Court, the difference will be assessed and collected as part of the tax upon the issuance of a notice and demand therefor. If the amount of the jeopardy assessment is in excess of the amount determined by the Tax Court, the unpaid portion of such excess will be abated. If any part of the excess amount has been paid, it will be credited or refunded to the taxpayer as provided in section 6402, without the filing of claim therefor.

(e) *Abatement of excessive assessment.* The district director or the director of the regional service center may, at any time before the decision of the Tax Court is rendered, abate a jeopardy assessment in whole or in part if the district director believes that such assessment is excessive in amount.

(f) *Abatement if jeopardy does not exist.* (1) The district director or the director of the regional service center may abate a jeopardy assessment in whole

or in part, if it is shown to the satisfaction of the district director that jeopardy does not exist. An abatement may not be made under this paragraph after a decision of the Tax Court in respect of the deficiency has been rendered or, if no petition is filed with such court, after the expiration of the period for filing such petition.

(2) After abatement of a jeopardy assessment in whole or in part, a deficiency may be assessed and collected in the manner authorized by law as if the jeopardy assessment or part thereof so abated had not existed. If a notice of deficiency has been sent to the taxpayer before the abatement of the jeopardy assessment in whole or in part, whether such notice was sent before or after the making of the assessment, such abatement will not affect the validity of the notice or of any proceedings for redetermination based thereon. The period of limitation on the making of assessments and the beginning of levy or a proceeding in court for collection in respect of any deficiency shall be determined as if the jeopardy assessment so abated had not been made, except that the running of such period shall in any event be suspended for the period from the date of such jeopardy assessment until the expiration of the tenth day after the date on which such jeopardy assessment is abated in whole or in part. The provisions of this subparagraph may be illustrated by the following example:

*Example.* On March 18, 1958, 28 days before the last day of the 3-year period of limitations on assessment, a jeopardy assessment is made in respect of a proposed deficiency. On May 2, 1958, before the mailing of the notice of deficiency provided by section 6861(b), this assessment is abated. By virtue of this subparagraph, the last day of the period of limitations for the making of an assessment is June 9, 1958, that is, the 38th day after the date of the abatement. If the notice of deficiency provided for in section 6861(b) has been sent before the abatement, the running of the period of limitations on assessment would have been suspended pursuant to the provisions of the section 6503(a).

(3) See section 7429 with respect to requesting the district director to review the making of the jeopardy assessment.

(g) *Special rules for chapters 42 and 43 taxes.* For purposes of paragraph (a) of this section, the amount of a deficiency with respect to any tax imposed by section 4941(a), 4942(a), 4943(a), 4944(a), 4945(a), 4951(a), 4952(a), 4955(a), 4971(a) or 4975(a) shall include the amount of additional tax imposed by section 4941(b), 4942(b), 4943(b), 4944(b), 4945(b), 4951(b), 4952(b), 4955(b), 4971(b) or 4975(b) for failure to correct the act (or failure to act) which gave rise to liability for the initial tax.

[32 FR 15241, Nov. 3, 1967, as amended by T.D. 7575, 43 FR 58817, Dec. 18, 1978; T.D. 7838, 47 FR 44253, Oct. 7, 1982; T.D. 8084, 51 FR 16305, May 2, 1986; T.D. 8628, 60 FR 62213, Dec. 5, 1995]

**§ 301.6862-1 Jeopardy assessment of taxes other than income, estate, gift, and certain excise taxes.**

(a) If the district director believes that the collection of any tax (other than income, estate, gift, chapter 41, 42, 43, or 44 tax) will be jeopardized by delay, the director shall, whether or not the time otherwise prescribed by law for filing the return or paying such tax has expired, immediately assess such tax, together with all interest, additional amounts and additions to the tax provided by law. A district director will make an assessment under this section if collection is determined to be in jeopardy because at least one of the conditions described in § 1.6851-1(a)(1)(i), (ii), or (iii) (relating to termination assessments) exists. For example, assume that a taxpayer incurs on January 18, 1977, liability for tax imposed by section 4061, that the last day on which return and payment of such tax is required to be made is May 2, 1977, and that on January 18, 1977, the district director determines that collection of such tax would be jeopardized by delay. In such case, the district director shall immediately assess the tax.

(b) The tax, interest, additional amounts, and additions to the tax will, upon assessment, become immediately due and payable, and the district director shall, without delay, issue a notice and demand for payment thereof in full. Upon failure or refusal to pay the amount demanded, collection thereof by levy shall be lawful without regard to the 10-day period provided in section 6331 (a). However, the collection of the

## Limitations

### LIMITATIONS ON ASSESSMENT AND COLLECTION

**§ 301.6501(a)-1 Period of limitations upon assessment and collection.**

(a) The amount of any tax imposed by the Code (other than a tax collected by means of stamps) shall be assessed within 3 years after the return was filed. For rules applicable in cases where the return is filed prior to the due date thereof, see section 6501(b). In the case of taxes payable by stamp, assessment shall be made at any time after the tax became due and before the expiration of 3 years after the date on which any part of the tax was paid. For exceptions and additional rules, see subsections (b) to (g) of section 6501, and for cross references to other provisions relating to limitations on assessment and collection, see sections 6501(h) and 6504.

(b) No proceeding in court without assessment for the collection of any tax shall be begun after the expiration of the applicable period for the assessment of such tax.

**§ 301.6501(b)-1 Time return deemed filed for purposes of determining limitations.**

(a) *Early return.* Any return, other than a return of tax referred to in paragraph (b) of this section, filed before the last day prescribed by law or regulations for the filing thereof (determined without regard to any extension of time for filing) shall be considered as filed on such last day.

(b) *Returns of social security tax and of income tax withholding.* If a return on or after November 13, 1966, of tax imposed by chapter 3 of the Code (relating to withholding of tax on nonresident aliens and foreign corporations and tax-free covenant bonds), or if a return of tax imposed by chapter 21 of the Code (relating to the Federal Insurance Contributions Act) or by chapter 24 of the Code (relating to collection of income tax at source on wages), for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be deemed filed on April 15 of such succeeding calendar year. For example, if quarterly returns of the tax imposed by chapter 24 of the Code are filed for the four quarters of 1955 on April 30, July 31, and October 31, 1955, and on January 31, 1956, the period of limitation for assessment with respect to the tax required to be reported on such return is measured from April 15, 1956. However, if any of such returns is filed after April 15, 1956, the period of limitation for assessment of the tax required to be reported on that return is measured from the date it is in fact filed.

(c) *Returns executed by district directors or other internal revenue officers.* The execution of a return by a district director or other authorized internal revenue officer or employee under the authority of section 6020(b) shall not start the running of the statutory period of limitations on assessment and collection.

**§ 301.6501(c)-1 Exceptions to general period of limitations on assessment and collection.**

(a) *False return.* In the case of a false or fraudulent return with intent to evade any tax, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time after such false or fraudulent return is filed.

(b) *Willful attempt to evade tax.* In the case of a willful attempt in any manner to defeat or evade any tax imposed by the Code (other than a tax imposed by subtitle A or B, relating to income, estate, or gift taxes), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

(c) *No return.* In the case of a failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time after the date prescribed for filing the return. For special rules relating to filing a return for chapter 42 and similar taxes, see §§ 301.6501(n)-1, 301.6501(n)-2, and 301.6501(n)-3.

(d) *Extension by agreement.* The time prescribed by section 6501 for the assessment of any tax (other than the estate tax imposed by chapter 11 of the Code) may, prior to the expiration of such time, be extended for any period

In 1966, P.L. 89-719, amended item 6323 from "Validity against mortgagees, pledgees, purchasers, and judgment creditors" ... deleted "partial" before "discharge" in item 6325.

**Sec. 6321. Lien for taxes.**

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

**Sec. 6322. Period of lien.**

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

In 1966, P.L. 89-719, Sec. 113, added "(or a judgment against the taxpayer arising out of such liability)" after "liability for the amount so assessed" effective after 11/2/66, regardless of when a lien or a title of the U.S. arose or when the lien or interest of any other person was acquired. For a special exception included in Sec. 114 of P.L. 89-719 see the note to Code Sec. 6323.

**Sec. 6323. Validity and priority against certain persons.**

**(a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.**

The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

**(b) Protection for certain interests even though notice filed.**

Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

(1) **Securities.** With respect to a security (as defined in subsection (h)(4))—

(A) as against a purchaser of such security who at the time of purchase did not have actual notice or knowledge of the existence of such lien; and

(B) as against a holder of a security interest in such security who, at the time such interest came into existence, did not have actual notice or knowledge of the existence of such lien.

(2) **Motor vehicles.** With respect to a motor vehicle (as defined in subsection (h)(3)), as against a purchaser of such motor vehicle, if—

(A) at the time of the purchase such purchaser did not have actual notice or knowledge of the existence of such lien, and

(B) before the purchaser obtains such notice or knowledge, he has acquired possession of such motor vehicle and has not thereafter relinquished possession of such motor vehicle to the seller or his agent.

(3) **Personal property purchased at retail.** With respect to tangible personal property purchased at retail, as against a purchaser in the ordinary course of the seller's trade or business, unless at the time of such purchase such purchaser intends such purchase to (or knows such purchase will) hinder, evade, or defeat the collection of any tax under this title.

(4) **Personal property purchased in casual sale.** With respect to household goods, personal effects, or other tangible personal property described in section 6334(a) purchased (not for resale) in a casual sale for less than $1,000, as against the purchaser, but only if such purchaser does not have actual notice or knowledge (A) of the existence of such lien, or (B) that this sale is one of a series of sales.

(5) **Personal property subject to possessory lien.** With respect to tangible personal property subject to a lien under local law securing the reasonable price of the repair or improvement of such property, as against a holder of such a lien, if such holder is, and has been, continuously in possession of such property from the time such lien arose.

(6) **Real property tax and special assessment liens.** With respect to real property, as against a holder of a lien upon such property, if such lien is entitled under local law to priority over security interests in such property which are prior in time, and such lien secures payment of—

(A) a tax of general application levied by any taxing authority based upon the value of such property;

(B) a special assessment imposed directly upon such property by any taxing authority, if such assessment is imposed for the purpose of defraying the cost of any public improvement; or

(C) charges for utilities or public services furnished to such property by the United States, a State or political subdivision thereof, or an instrumentality of any one or more of the foregoing.

(7) **Residential property subject to a mechanic's lien for certain repairs and improvements.** With respect to real property subject to a lien for repair or improvement of a personal residence (containing not more than four dwelling units) occupied by the owner of such residence, as against a mechanic's lienor, but only if the contract price on the contract with the owner is not more than $5,000.

(8) **Attorneys' liens.** With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

(9) **Certain insurance contracts.** With respect to a life insurance, endowment, or annuity contract, as against the organization which is the insurer under such contract, at any time—

(A) before such organization had actual notice or knowledge of the existence of such lien;

(B) after such organization had such notice or knowledge, with respect to advances required to be made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge; or

(C) after satisfaction of a levy pursuant to section 6332(b), unless and until the Secretary delivers to such organization a notice, executed after the date of such satisfaction, of the existence of such lien.

(10) **Deposit-secured loans.** With respect to a savings deposit, share, or other account with an institution described in section 581 or 591, to the extent of any loan made by such institution without actual notice or knowledge of the existence of such lien, as against such institution, if such loan is secured by such account.