**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA, Plaintiff,

vs.

Nadine J. Griffin, Accused, Belligerent Claimant.

CASE NO. 05-CR-10175-WGY

VERIFIED NOTICE OF ALIBI AND ENTRAPMENT DEFENSE: AFFIDAVIT AND EXHIBITS IN SUPPORT MANDATORY JUDICIAL NOTICE OF TITLE 26 U.S.C. § 83 AND OTHER APPLICABLE STATUTES

Nadine J. Griffin

COMES NOW Nadine J. Griffin, Accused, Belligerent Claimant proceeding on her own behalf herein gives notice pursuant to Rule 12.1 of the Federal Rules of Criminal Procedure, that she intends to impose an alibi and entrapment defense due to the advice given and proffered by the Constitution for the United States of America, Acts of the United States Congress, United States Supreme Court decisions, the Internal Revenue Code, Treasury Regulations and other applicable doctrines, statues and law reduced to writing as public law allowing statutory exemptions, deductions and exclusions on her compensation for labor property as codified within the Constitution and the Internal Revenue Code of 1954, as amended.

Executed this 27 day of February, 2006.

Signature: [signature]

Nadine J. Griffin
Accused, Belligerent Claimant
c/o 36 Center Street, #143
Wolfeboro, New Hampshire [03894]

**VERIFIED AFFIDAVIT IN SUPPORT**

State of New Hampshire )
) subscribed and sworn
County of _____________)

1. Nadine J. Griffin declares and states as follows:
2. I am the accused Belligerent Claimant, hereinafter referred to as "Affiant" in the above-entitled action and competent to testify to the facts stated herein to wit:
3. That all statements made within this affidavit are true and correct not meant to mislead;
4. That Nadine J. Griffin exists as a Conscious Living, Breathing, Flesh and Blood Sentient Being; NOT a statutory person, persons, natural person, artificial person, individual, corporation, entity, or any other sub-status, fourth class citizen *ens legis* creation of any government, federal, state, local or otherwise;
5. That Affiant Nadine J. Griffin is unschooled in law, not an attorney or bar-association member, and is attempting to defend and dispose of this action to the best of Affiant's ability with reliance upon your statutes, codes, rules and regulations; including those relied upon by the plaintiff and established by the Constitution of the United States of America, United States Congress, and the United States Supreme Court;
6. That on or about July 13, 2005 Affiant was formally charged under cause number 05- CR-10175-WGY for alleged violations of 26 U.S.C. § 7206, two counts of filing a false returns for the tax years 1998 and 1999;
7. That Affiant was induced by public law (established by employees of United States plaintiff) to believe that their political subdivision and corporate collections [a]gency the Internal Revenue Service are not above the law and bound by a number of statutes, codes, rules

and regulations restricting their ability to act outside the limited scope of their authority and stay within the law.

8. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that her labor was, and is, a property right having value subject to an exemption and deduction for loss of life and liberty while earning a living to provide for herself and her family.

9. That Affiant was induced by the Constitution for the United States of America at Article XIII to believe that: *"Neither slavery nor involuntary servitude . . . shall exist within the United States, or any place subject to their jurisdiction."*

10. That Affiant was induced by the Constitution for the United States of America at Article V to believe that: *". . . nor shall private property be taken for public use, without just compensation."*

11. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that the taking of her compensation for labor property for public use entitled Affiant to just compensation for the fair market value of her labor as protected by the Fifth Amendment of the United States Constitution.

12. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that the fair market value of her labor within the Internal Revenue Code as codified at 26 U.S.C. § 83, was subject to exemption, deductions, and exclusions..

13. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that 26 U.S.C. § 83 states, <u>only</u> the <u>excess</u> of the "<u>fair market value</u>" of property in the connection with the performance of services shall be included in gross income. (see Exhibit A)

14. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) having authored Title 26 of the United States Code, and is fully aware that 26 U.S.C. § 61(a) and (b) Part II and applicable regulations employ the proper application of "gross income" and at all times Affiant attempted to comply with that section of the statute;

15. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that 26 U.S.C. § 61(a) and (b) "For items specifically included in gross income, see part II (sec. 83 and following), employs § 83 or 26 CFR § 1.83-1 Property transferred in connection with the performance of services. (a) Inclusion in gross income – (1) General Rule. Section 83 Provides rules for the taxation of property transferred to an employee or independent contractor in connection with the performance of services. ". . . , such property is not taxable under § 83(a) until it has been transferred . . . to such person and become substantially vested . . . in such person. In that case, the excess of . . . The fair market value of such property . . . at the time the property becomes substantially vested, over . . . the amount paid for such property shall be included as compensation in the gross income . . . This section clearly states only the "excess of the fair market value over the amount paid shall be included in gross income.";

16. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that 26 U.S.C. § 83(a) requires, when compensation is received in [exchange] for services, from the FMV of the compensation, the "excess over the amount paid" (cost) is to be included in gross income;

17. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that the "amount paid" for the compensation be

established, the "excess" identified, and that such excess be included in gross income. To figure that "amount paid" or cost of the compensation, regulation requires that § 1012 and the regulations thereunder be applied. 26 CFR § 1.83-4(b)(2);

18. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that if property to which 1.83-1 applies is transferred at an arm's length, the basis of the property in the hands of the transferee shall be determined under section 1012 and the regulations thereunder;

19. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that Affiant's labor property and the cost of the compensation at 26 U.S.C. § 1012 will either include it or exclude it as a cost. Pursuant to 26 U.S.C. § 1012 and implementing regulations, intangible personal property (labor) is not excluded and 26 CFR 1.1012-1(a) states: ". . . The cost is the amount paid for such property in cash or other property";

20. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that pursuant to 26 CFR § 1.1001-1(a) ...from the amount realized upon the sale or exchange there shall be withdrawn a sum sufficient to restore the adjusted basis prescribed by section 1011 and the regulations thereunder... The amount that remains after the adjusted basis has been restored to the taxpayer constitutes the realized gain;

21. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that 26 CFR 1.83-3(g) Amount paid. "For the purposes of section 83 and the regulations thereunder, the term "amount paid" refers to the value of any money or property paid for the transfer of property to which § 83 applies;

22. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that reliance upon the statute that embraces intangible personal property as a cost is prescribed as the measure of Affiant's cost when having only sold my labor;

23. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that Affiant was under the equal protection clause of the Fourteenth Amendment to the Constitution and could not be deprived of access to that portion of the internal revenue laws and/or income tax laws that clearly provide an exemption, deduction or exclusion when applying accounting methods to gross income on any compensation subject to the provisions of 26 U.S.C. §§ 83(a), 212, 1001, 1011, and 1012.

24. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that the law embraces labor as a cost, despite the fact that it is property within which Affiant's basis is measured by loss of life, liberty and time is an intangible – yet the sole creator of other property

25. That Affiant was induced by public law and precedent (published by employees of the United States plaintiff) to believe that Affiant's labor which can only be manifested with life work, is the most valuable of all property rights, subject to an undetermined number of limited years relevant based on the elements of time, profession, lifestyle, stress, and other undetermined factors until such time Affiant can no longer perform such task for whatever reason.

26. Affiant states employees of the United States plaintiff did know, or should have known, that "... Every man is born with a God given unalienable right to the fruits of his own labor, as

generally admitted; and that no other person can rightfully deprive him of those fruits, and appropriate them against his will." "In principle, there can be no difference between the case of selling labor and the case of selling goods."

27. Affiant states employees of the United States plaintiff admits in IRS Publication 556 – that they can ignore the plain language of the statutes and Supreme Court precedent and "***apply its interpretation of the law***" to any case and has intentionally and willfully ignored the limitations placed on them by Congressional Mandate, statutes, implementing regulations and the Unites States Constitution. (see Exhibit B)

28. Affiant has been denied equal protection of the laws by the United States Plaintiff's employee's depriving Affiant of her private property for public use without due process of law or just compensation, applying its "interpretation of the law" concluding that Affiant does not have access to that part of the Internal Revenue Code, United States Code or regulations allowing Affiant restore the fair market value of Affiant's labor without penalty or prosecution.

**VERIFICATION**

I, Nadine J. Griffin, declare under penalty of perjury as a Conscious, Thinking, Feeling, Living, Breathing, Flesh and Blood Sentient Being that the foregoing is true and correct. All Rights retained without recourse.

Executed this 27 day of February, 2006.

Signature: Nadine J. Griffin

Nadine J. Griffin
c/o 36 Center Street, #143
Wolfeboro, New Hampshire [03894]

## NOTARY ACKNOWLEDGMENT

State of New Hampshire )
) subscribed and sworn
County of Carroll )

On this 27 day, of February, 2006, Nadine J. Griffin personally appeared, personally known to me, or proved to me on the basis of satisfactory evidence to be the one whose name is subscribed to within this instrument and who did take an Oath.

Witness my hand and official seal.

Margaret L Culverwell
Signature of Notary

My Commission Expires: ____________

**Attachment(s):**

**EXHIBIT A:** Copy of Internal Revenue Code Section 83 and other applicable statutes

**EXHIBIT B:** IRS Publication 556

**CERTIFICATE OF MAILING**

I, Nadine J. Griffin, certify that February 27 2006, I mailed a true and correct copy of the above and foregoing VERIFIED NOTICE OF ALIBI AND ENTRAPMENT DEFENSE: AFFIDAVIT AND EXHIBITS IN SUPPORT MANDATORY JUDICIAL NOTICE OF TITLE 26 UNITED STATES CODE SECTION 83 AND OTHER APPLICABLE STATUTES; by certified mail addressed as follows:

Christopher Maietta
U.S. Dept. of Justice, Tax Division
601 "D" Street, NW, Room 7012
Washington, DC 20004
Certified Mail No 7004 1160 0007 4198 1067

William Smith, Majority Chief Counsel
Preet Bharara, Minority Chief Counsel
US Committee on the Judiciary
Subcommittee on Administrative Oversight and the Courts
224 Dirksen Senate Office Building
Washington, D.C. 20510
Certified Mail No. 7004 1160 0007 4198 1050

Executed this 27 day of February, 2006.

Nadine J. Griffin

CASE NO. 05-CR-10175-WGY

Nadine J. Griffin,

# EXHIBIT "A"

**15 pages**

AUGUST 2005

Includes the
Tax Provisions
of the Energy and
Transportation Acts
of 2005

# THE COMPLETE

All the Income, Estate & Gift, Employment, Excise, Procedure and Administrative Provisions

Updated to reflect all tax legislation through August 31, 2005

THOMSON
TM
RIA

Visit http://ria.thomson.com – Gateway to RIA's Research & Practice Aids

PART I.—DEFINITION OF GROSS INCOME, ADJUSTED GROSS INCOME, TAXABLE INCOME, ETC.

Sec.
61. Gross income defined.
62. Adjusted gross income defined.
63. Taxable income defined.
64. Ordinary income defined.
65. Ordinary loss defined.
66. Treatment of community income.
67. 2-percent floor on miscellaneous itemized deductions.
68. Overall limitation on itemized deductions.

**In 1990,** P.L. 101-508, Sec. 11103(d), added item 68.

**In 1986,** P.L. 99-514, Sec. 132(d), added item 67.

**In 1984,** P.L. 98-369, Sec. 424(b)(2)(C), deleted "where spouses live apart" from the end of item 66.

**In 1980,** P.L. 96-605, Sec. 101(b), added item 66.

**In 1976,** P.L. 94-455, Sec. 1901(b)(4)(A), added items 64 and 65.... Sec. 1901(b)(4)(B), substituted "taxable income, etc." for "and taxable income" in the heading for Part I.

## Sec. 61. Gross income defined.

### (a) General definition.

Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, fringe benefits, and similar items;

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

(4) Interest;

(5) Rents;

(6) Royalties;

(7) Dividends;

(8) Alimony and separate maintenance payments;

(9) Annuities;

(10) Income from life insurance and endowment contracts;

(11) Pensions;

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income;

(14) Income in respect of a decedent; and

(15) Income from an interest in an estate or trust.

### (b) Cross references.

For items specifically included in gross income, see part II (sec. 71 and following). For items specifically excluded from gross income, see part III (sec. 101 and following).

**In 2002,** P.L. 107-134, Sec. 105, of this Act, reads as follows:

"SEC. 105. EXCLUSION OF CERTAIN CANCELLATIONS OF INDEBTEDNESS.

"(a) In general. For purposes of the Internal Revenue Code of 1986—

"(1) gross income shall not include any amount which (but for this section) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of any taxpayer if the discharge is by reason of the death of an individual incurred as the result of the terrorist attacks against the United States on September 11, 2001, or as the result of illness incurred as a result of an attack involving anthrax occurring on or after September 11, 2001, and before January 1, 2002, and

"(2) return requirements under section 6050P of such Code shall not apply to any discharge described in paragraph (1).

"(b) Effective date. This section shall apply to discharges made on or after September 11, 2001, and before January 1, 2002."

**In 2001,** P.L. 107-16, Sec. 803, of this Act, reads as follows:

"SEC. 803. NO FEDERAL INCOME TAX ON RESTITUTION RECEIVED BY VICTIMS OF THE NAZI REGIME OR THEIR HEIRS OR ESTATES.

"(a) In general. For purposes of the Internal Revenue Code of 1986, any excludable restitution payments received by an eligible individual (or the individual's heirs or estate) and any excludable interest—

"(1) shall not be included in gross income; and

"(2) shall not be taken into account for purposes of applying any provision of such Code which takes into account excludable income in computing adjusted gross income, including section 86 of such Code (relating to taxation of Social Security benefits).

For purposes of such Code, the basis of any property received by an eligible individual (or the individual's heirs or estate) as part of an excludable restitution payment shall be the fair market value of such property as of the time of the receipt.

"(b) Eligible individual. For purposes of this section, the term 'eligible individual' means a person who was persecuted on the basis of race, religion, physical or mental disability, or sexual orientation by Nazi Germany, any other Axis regime, or any other Nazi-controlled or Nazi-allied country.

"(c) Excludable restitution payment. For purposes of this section, the term 'excludable restitution payment' means any payment or distribution to an individual (or the individual's heirs or estate) which—

"(1) is payable by reason of the individual's status as an eligible individual, including any amount payable by any foreign country, the United States of America, or any other foreign or domestic entity, or a fund established by any such country or entity, any amount payable as a result of a final resolution of a legal action, and any amount payable under a law providing for payments or restitution of property;

"(2) constitutes the direct or indirect return of, or compensation or reparation for, assets stolen or hidden from, or otherwise lost to, the individual before, during, or immediately after World War II by reason of the individual's status as an eligible individual, including any proceeds of insurance under policies issued on eligible individuals by European insurance companies immediately before and during World War II; or

"(3) consists of interest which is payable as part of any payment or distribution described in paragraph (1) or (2).

"(d) Excludable interest. For purposes of this section, the term 'excludable interest' means any interest earned by—

"(1) escrow accounts or settlement funds established pursuant to the settlement of the action entitled 'In re: Holocaust Victim Assets Litigation,' (E.D.N.Y.) C.A. No. 96-4849,

"(2) funds to benefit eligible individuals or their heirs created by the International Commission on Holocaust Insurance Claims as a result of the Agreement between the Government of the United States of America and the Government of the Federal Republic of Germany concerning the Foundation 'Remembrance, Responsibility, and Future,' dated July 17, 2000, or

"(3) similar funds subject to the administration of the United States courts created to provide excludable restitution payments to eligible individuals (or eligible individuals' heirs or estates).

"(e) Effective date.

"(1) In general. This section shall apply to any amount received on or after January 1, 2000.

"(2) No inference. Nothing in this Act shall be construed to create any inference with respect to the proper tax treatment of any amount received before January 1, 2000."

**In 1988,** P.L. 100-647, Sec. 6252(a)(1), repealed Sec. 6 of P. L. 98-4 [reproduced below].

Prior to repeal, Sec. 6 of P. L. 98-4 read as follows:

"Sec. 6. Study.

"(a) General rule.

"The Secretary of the Treasury or his delegate, after consultation with the Secretary of Agriculture, shall conduct a study of

"(1) the 1983 payment-in-kind program, and

"(2) the tax treatment provided with respect to such program by this Act.

"(b) Report.

"Not later than September 1, 1983, the Secretary of the Treasury shall submit to the Congress a report on the study conducted under subsection (a), together with such recommendations as he may deem advisable."

**In 1986,** P.L. 99-272, Sec. 13207(d), redesignated Sec. 531(g) of P.L. 98-369 as Sec. 531(h) [reproduced below].

**In 1984,** P.L. 98-369, Sec. 531(c), substituted "commissions, fringe benefits, and similar items" for "commissions, and similar items" in para. (a)(1), effective on 1/1/85. Sec. 531(h) of this Act [as amended by Sec. 13207(d) of P.L. 99-272, see above] provides:

"(h) Moratorium on issuance of regulations relating to faculty housing.

"(1) In general. Any regulation providing for the inclusion in gross income under section 61 of the Internal Revenue Code of 1954 of the excess (if any) of the fair market value of qualified campus lodging over the greater of—

"(A) the operating costs paid or incurred in furnishing such lodging, or

"(B) the rent received for such lodging,

shall not be issued before January 1, 1986.

"(2) Qualified campus lodging. For purposes of this subsection, the term 'qualified campus logding' means lodging which is—

"(A) located on (or in close proximity to) a campus of an educational institution (described in section 170(b)(1)(A)(ii) of the Internal Revenue Code of 1954), and

"(13) Jury duty pay remitted to employer. The deduction allowed by section 220."

**In 1988,** P.L. 100-647, Sec. 1001(b)(3)(A), added the last sentence to subpara. (a)(2)(A) . . . Sec. 6007(b), added para. (a)(13), effective for tax. yrs. begin. after 12/31/86.

—P.L. 100-485, Sec. 702(a), added subsec. (c), effective for tax. yrs. begin. after 12/31/88.

**In 1986,** P.L. 99-514, Sec. 131(b)(1), deleted para. (16) . . . Sec. 132(b)(1), amended para. (2) . . . Sec. 132(b)(2), substituted "(a) General rule. For purposes of this subtitle" for "For purposes of this subtitle" in matter preceding para. (1), and added subsec. (b) . . . Sec. 132(c), deleted para. (a)(8) [as amended] . . . Sec. 301(b)(1), deleted para. (a)(3) [as amended] and redesignated paras. (a)(4), (a)(5), (a)(6), (a)(7), (a)(10), (a)(11), (a)(12), (a)(13) (a)(14), and (a)(15) [as amended] as paras. (a)(3) through (a)(12), effective for tax. yrs. begin. after 12/31/86.

Prior to deletion, para. (16) read as follows:

"(16) Deduction for two-earner married couples. The deduction allowed by section 221."

Prior to amendment, para. (2) read as follows:

"(2) Trade and business deductions of employees.

"(A) Reimbursed expenses. The deductions allowed by part VI (Sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer.

"(B) Expenses for travel away from home. The deductions allowed by part VI (Sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

"(C) Transportation expenses. The deductions allowed by part VI (Sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

"(D) Outside salesmen. The deductions allowed by part VI (Sec. 161 and following) which are attributable to a trade or business carried on by the taxpayer, if such trade or business consists of the performance of services by the taxpayer as an employee and if such trade or business is to solicit, away from the employer's place of business, business for the employer."

Prior to deletion, para (a)(8) [as amended] read as follows:

"(8) Moving expense deduction. The deduction allowed by section 217."

Prior to deletion, para. (a)(3) [as amended] read as follows:

"(3) Long-term capital gains. The deduction allowed by section 1202."

—P.L. 99-514, Sec. 1875(c)(3), deleted "to the extent attributable to contributions made on behalf of such individual" after "section 404" in para. (7) [redesignated as para. (a)(6) by Sec. 301 of this Act, see above], effective for tax. yrs. begin. after 12/31/83.

**In 1984,** P.L. 98-369, Sec. 491(d)(2)(A), substituted "the deduction allowed by section 404" for "the deductions allowed by section 404 and section 405(c)" in para. (7) . . . Sec. 491(d)(2)(B), substituted "and annuity" for "annuity, and bond purchase" in the heading of para. (7), effective for obligations issued after 12/31/83.

**In 1982,** P.L. 97-354, Sec. 5(a)(17), deleted para. (9), effective for yrs. begin. after 12/31/83.

Prior to deletion, para. (9) read as follows:

"(9) Pension, etc., plans of electing small business corporations. The deduction allowed by section 1379(b)(3)."

**In 1981,** P.L. 97-34, Sec. 103(b), added para. (16) after para. (15) (as redesignated by Sec. 112(b)(2) of this Act, see below), effective for tax. yrs. end. after 12/31/81.

—P.L. 97-34, Sec. 112(b)(2), deleted para. (14) and redesignated paras. (15) and (16) as paras. (14) and (15), effective for tax. yrs. begin. after 12/31/81.

Prior to deletion, para. (14) read as follows:

"(14) Deduction for certain expenses of living abroad. The deduction allowed by section 913."

—P.L. 97-34, Sec. 311(h)(1), deleted "and the deduction allowed by section 220 (relating to retirement savings for certain married individuals)" following "certain retirement savings)" in para. (10), effective for tax. yrs. begin. after 12/31/81. Sec. 311(i)(2) of this Act provides:

"(2) Transitional rule. For purposes of the Internal Revenue Code of 1954, any amount allowed as a deduction under section 220 of such Code (as in effect before its repeal by this Act) shall be treated as if it were allowed by section 219 of such Code."

**In 1980,** P.L. 96-608, Sec. 3(a), added para. (16), effective for repayments made in tax. yrs. begin after 12/28/80.

—P.L. 96-451, Sec. 301(b), added para. (15), effective for additions to capital account made after 12/31/79.

**In 1979,** P.L. 96-167, Sec. 2, substituted "May 31, 1981" for "December 31, 1979" each place it appeared in Sec. 2 of P.L. 95-427, reproduced below.

**In 1978,** P.L. 95-615, Sec. 203(b), added para. (14), effective for tax. yrs. begin. after 12/31/77. Sec. 209(c) of the Act provides:

"(c) Election of Prior Law.

"(1) A taxpayer may elect not to have the amendments made by this title apply with respect to any taxable year beginning after December 31, 1977, and before January 1, 1979.

"(2) An election under this subsection shall be filed with a taxpayer's timely filed return for the first taxable year beginning after December 31, 1977."

—P.L. 95-427, Sec. 2, provides as follows:

"Sec. 2. Commuting Expenses.

With respect to transportation costs paid or incurred after December 31, 1976, and on or before May 31, 1981, the application of sections 62, 162, and 262 and of chapters 21, 23, and 24 of the Internal Revenue Code of 1954 to transportation expenses in traveling between a taxpayer's residence and place of work shall be determined—

"(1) without regard to Revenue Ruling 76-453 (and without regard to any other regulation, ruling, or decision reaching the same result as, or a result similar to, the result set forth in such Revenue Ruling); and

"(2) with full regard to the rules in effect before Revenue Ruling 76-453."

**In 1976,** P.L. 94-455, Sec. 502(a), added para. (13), effective for tax. yrs. begin. after 12/31/76.

—P.L. 94-455, Sec. 1501(b)(1), added "and the deduction allowed by section 220 (relating to retirement savings for certain married individuals)" after "(relating to deduction of certain retirement savings)" in para. (10), effective for tax. yrs. begin. after 12/31/76.

—P.L. 94-455, Sec. 1901(a)(8), redesignated para. (11) as added by Sec. 6(a) of P.L. 93-483, as para. (12), effective for tax. yrs. begin. after 12/31/76.

—P.L. 94-455, Sec. 1901(a)(9), substituted "trade or business, to the extent" for "trade or business to the extent" in para. (12), as redesignated by Sec. 1901(a)(8) of this Act, effective for tax. yrs. begin. after 12/31/76.

**In 1974,** P.L. 93-483, Sec. 6(a), added para. (11), titled "Penalties forfeited because of premature withdrawal of funds from time savings accounts or deposits.", effective for tax. yrs. begin. after 12/31/72.

—P.L. 93-406, Sec. 2002(a)(2), added para. (10), effective for tax. yrs. begin. after 12/31/74.

—P.L. 93-406, Sec. 2005(c)(9), added para. (11), effective for distributions or payments made after '73, in tax. yrs. begin. after '73.

**In 1969,** P.L. 91-172, Sec. 531(b), added para. (9), effective for tax. yrs. of electing small business corporations begin. after 12/31/70.

**In 1964,** P.L. 88-272, Sec. 213(b), added para. (8), effective for expenses incurred after 12/31/63, in tax. yrs. end. after 12/31/63.

**In 1962,** P.L. 87-792, Sec. 7, added para. (7), effective for tax. yrs. begin. after 12/31/62.

## Sec. 63. Taxable income defined.

**(a) In general.**

Except as provided in subsection (b), for purposes of this subtitle, the term "taxable income" means gross income minus the deductions allowed by this chapter (other than the standard deduction).

**(b) Individuals who do not itemize their deductions.**

In the case of an individual who does not elect to itemize his deductions for the taxable year, for purposes of this subtitle, the term "taxable income" means adjusted gross income, minus—

**(1)** the standard deduction, and

**(2)** the deduction for personal exemptions provided in section 151.

**(c) Standard deduction.**

For purposes of this subtitle—

**(1) In general.** Except as otherwise provided in this subsection, the term "standard deduction" means the sum of—

(A) the basic standard deduction, and

(B) the additional standard deduction.

**(2) Basic standard deduction.** For purposes of paragraph (1), the basic standard deduction is—

(A) 200 percent of the dollar amount in effect under subparagraph (C) for the taxable year in the case of—

(i) a joint return, or

(ii) a surviving spouse (as defined in section 2(a)),

"(iii) held by or for no fewer than 500 persons at all times during the taxable year.

"(B) Secretary may reduce 500 person requirement.—The Secretary of the Treasury or his delegate may by regulation decrease the minimum shareholder requirement of subparagraph (A)(iii) in the case of regulated investment companies which experience a loss of shareholders through net redemptions of their shares."

**In 1986,** P.L. 99-514, Sec. 132(a), added Code Sec. 67, effective for tax. yrs. begin. after 12/31/86, except as provided by P.L. 100-203, Sec. 10104(a) (see above).

### Sec. 68. Overall limitation on itemized deductions.

**(a) General rule**

In the case of an individual whose adjusted gross income exceeds the applicable amount, the amount of the itemized deductions otherwise allowable for the taxable year shall be reduced by the lesser of—

**(1)** 3 percent of the excess of adjusted gross income over the applicable amount, or

**(2)** 80 percent of the amount of the itemized deductions otherwise allowable for such taxable year.

**(b) Applicable amount.**

**(1) In general.** For purposes of this section, the term "applicable amount" means $100,000 ($50,000 in the case of a separate return by a married individual within the meaning of section 7703).

**(2) Inflation adjustments.** In the case of any taxable year beginning in a calendar year after 1991, each dollar amount contained in paragraph (1) shall be increased by an amount equal to—

(A) such dollar amount, multiplied by

(B) the cost-of-living adjustment determined under section 1(f)(3) for the calendar year in which the taxable year begins, by substituting "calendar year 1990" for "calendar year 1992" in subparagraph (B) thereof.

**(c) Exception for certain itemized deductions.**

For purposes of this section, the term "itemized deductions" does not include—

**(1)** the deduction under section 213 (relating to medical, etc. expenses),

**(2)** any deduction for investment interest (as defined in section 163(d)), and

**(3)** the deduction under section 165(a) for casualty or theft losses described in paragraph (2) or (3) of section 165(c) or for losses described in section 165(d).

**(d) Coordination with other limitations.**

This section shall be applied after the application of any other limitation on the allowance of any itemized deduction.

**(e) Exception for estates and trusts.**

This section shall not apply to any estate or trust.

• ***Caution:*** Subsecs. (f) and (g), following, are effective for tax. yrs. begin. after 12/31/2005. For sunset provisions, see Sec. 901 of P.L. 107-16 reproduced in the history of this Code Sec.

**(f) Phaseout of limitation.**

**(1) In general.** In the case of taxable years beginning after December 31, 2005, and before January 1, 2010, the reduction under subsection (a) shall be equal to the applicable fraction of the amount which would (but for this subsection) be the amount of such reduction.

**(2) Applicable fraction.** For purposes of paragraph (1), the applicable fraction shall be determined in accordance with the following table:

| For taxable years beginning in calendar year— | The applicable fraction is— |
|---|---|
| 2006 and 2007 | ⅔ |
| 2008 and 2009 | ⅓. |

**(g) Termination.**

This section shall not apply to any taxable year beginning after December 31, 2009.

**In 2002,** P.L. 107-358, Sec. 2, added subsec. (c) in Sec. 901 of P.L. 107-16 [see below], effective 12/17/2002.

**In 2001,** P.L. 107-16, Sec. 103(a), added subsecs. (f) and (g), effective for tax. yrs. begin. after 12/31/2005.

—P.L. 107-16, Sec. 901, of this Act [as amended by Sec. 2 of P.L. 107-358, see above], reads as follows:

"SEC. 901. SUNSET OF PROVISIONS OF ACT.

"(a) In general. All provisions of, and amendments made by, this Act shall not apply—

"(1) to taxable, plan, or limitation years beginning after December 31, 2010, or

"(2) in the case of title V, to estates of decedents dying, gifts made, or generation skipping transfers, after December 31, 2010.

"(b) Application of certain laws. The Internal Revenue Code of 1986 and the Employee Retirement Income Security Act of 1974 shall be applied and administered to years, estates, gifts, and transfers described in subsection (a) as if the provisions and amendments described in subsection (a) had never been enacted.

"(c) Exception. Subsection (a) shall not apply to section 803 (relating to no federal income tax on restitution received by victims of the Nazi regime or their heirs or estates)."

**In 1998,** P.L. 105-277, Sec. 4004(b)(2), substituted "for casualty or theft losses described in paragraph (2) or (3) of section 165(c) or for losses described in section 165(d)" for "for losses described in subsection (c)(3) or (d) of section 165" in para. (c)(3), effective for tax. yrs. begin. after 12/31/90.

**In 1993,** P.L. 103-66, Sec. 13201(b)(3)(E), substituted "1992" for "1989" in subpara. (b)(2)(B), effective for tax. yrs. begin. after 12/31/92.

—P.L. 103-66, Sec. 13204, deleted subsec. (f), effective 8/10/93.

Prior to deletion, subsec. (f) read as follows:

"(f) Termination. This section shall not apply to any taxable year beginning after December 31, 1995."

**In 1990,** P.L. 101-508, Sec. 11103(a), added Code Sec. 68, effective for tax. yrs. begin. after 12/31/90.

## PART II.—ITEMS SPECIFICALLY INCLUDED IN GROSS INCOME

Sec.
71. Alimony and separate maintenance payments.
72. Annuities; certain proceeds of endowment and life insurance contracts.
73. Services of child.
74. Prizes and awards.
75. Dealers in tax-exempt securities.
76. Repealed. [Mortgages made or obligations issued by joint-stock land banks.]
77. Commodity credit loans.
78. Dividends received from certain foreign corporations by domestic corporations choosing foreign tax credit.
79. Group-term life insurance purchased for employees.
80. Restoration of value of certain securities.
81. Repealed. [Increase in vacation pay suspense account.]
82. Reimbursement of moving expenses. [Reimbursement for expenses of moving.]
83. Property transferred in connection with performance of services.
84. Transfer of appreciated property to political organizations.
85. Unemployment compensation.
86. Social security and tier 1 railroad retirement benefits.

Prior to repeal, Code Sec. 81 read as follows:

"SEC. 81. INCREASE IN VACATION PAY SUSPENSE ACCOUNT.

"There shall be included in gross income for the taxable year the amount of any increase in any suspense account for such taxable year required by paragraph (2)(B) of section 463(c) (relating to accrual of vacation pay)."

**In 1986,** P.L. 99-514, Sec. 805(c)(1)(A), amended Code Sec. 81, effective for tax. yrs. begin. after 12/31/86.

Prior to amendment, Code Sec. 81 read as follows:

"SEC. 81. CERTAIN INCREASES IN SUSPENSE ACCOUNTS.

"There shall be included in gross income for the taxable year for which an increase is required—

"(1) Certain dealers' reserves.—The amount of any increase in the suspense account required by paragraph (4)(B)(ii) of section 166(f) (relating to certain debt obligations guaranteed by dealers).

"(2) Vacation pay.—The amount of any increase in the suspense account required by paragraph (2)(B) of section 463(c) (relating to accrual of vacation pay)."

**In 1976,** P.L. 94-455, Sec. 605(b), substituted "section 166(f)" for "section 166(g)" in para. (1) effective, for guarantees made after 12/31/75 in tax. yrs. begin. after 12/31/75.

**In 1975,** P.L. 93-625, Sec. 4(c)(1), amended Code Sec. 81, effective for tax. yrs. begin. after 12/31/73, except as provided in Sec. 4(d)(2) of the Act, reproduced below.

Prior to amendment, Code Sec. 81 read as follows:

"Sec. 81. Increases in suspense account under section 166(g).

"The amount of any increase in the suspense account required by paragraph (4)(B)(ii) of section 166(g) (relating to certain debt obligations guaranteed by dealers) shall be included in gross income for the taxable year for which such increase is required."

—P.L. 93-625, Sec. 4(d)(2), reads as follows:

"(2) If the taxpayer maintained an account for vacation pay under section 97 of the Technical Amendments Act of 1958, as amended, for his last taxable year ending before January 1, 1973, the amendments made by this section shall apply to taxable years ending after December 31, 1972."

**In 1966,** P.L. 89-722, added Code Sec. 81, effective for tax. yrs. end. after 10/21/65.

## Sec. 82. Reimbursement for expenses of moving.

Except as provided in section 132(a)(6), there shall be included in gross income (as compensation for services) any amount received or accrued, directly or indirectly, by an individual as a payment for or reimbursement of expenses of moving from one residence to another residence which is attributable to employment or self-employment.

**In 1993,** P.L. 103-66, Sec. 13213(d)(3)(A), substituted "Except as provided in section 132(a)(6), there shall" for "There shall" in Code Sec. 82, effective for reimbursements or other payments in respect of expenses incurred after 12/31/93.

**In 1974,** P.L. 93-490, Sec. 2, provides as follows for tax. yrs. end. before 1/1/76 (made permanent, see subsec. 217(g)):

*"(a) In General.*

"Notwithstanding the provisions of section 82 (relating to reimbursement for expenses of moving) and section 217 (relating to moving expenses), of the Internal Revenue Code of 1954, the Secretary of the Treasury, in the administration of those sections, is authorized—

"(1) to enter into an agreement with the Secretary concerned under which the Secretary concerned will not be required to withhold tax on, or to report, moving expense reimbursements made to members of the armed forces;

"(2) to permit any taxpayer who is a member of the armed forces not to include in adjusted gross income the amount of any reimbursement in kind of moving expenses made by the Secretary concerned; and

"(3) to permit any taxpayer who is a member of the armed forces to deduct any amount paid by him as moving expenses in connection with any move required by the Secretary concerned, in excess of any reimbursement received for such expenses, without regard to the provisions of section 217(c) (relating to conditions), to the extent it is otherwise deductible under section 217.

*"(b) Definitions.*

"For purposes of this section, the term—

"(1) 'armed forces' has the meaning given it by section 101(4) of title 37, United States Code;

"(2) 'Secretary concerned' means the Secretary of Defense and, with respect to the Coast Guard, the Secretary of Transportation; and

"(3) 'adjusted gross income' and 'moving expenses' have the meanings given them by sections 62 and 217(b), respectively, of the Internal Revenue Code of 1954."

**In 1969,** P.L. 91-172, Sec. 231(b), added Code Sec. 82, effective for tax. yrs. begin. after 12/31/69, except that the amendments made by this section shall not apply (at the election of the taxpayer made at such time and manner as the Secretary of the Treasury or his delegate prescribes) with respect to moving expenses paid or incurred before July 1, 1970, in connection with the commencement of work by the taxpayer as an employee at a new principal place of work of which the taxpayer had been notified by his employer on or before December 19, 1969.

## Sec. 83. Property transferred in connection with performance of services.

**(a) General rule.**

If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of—

**(1)** the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over

**(2)** the amount (if any) paid for such property,

shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. The preceding sentence shall not apply if such person sells or otherwise disposes of such property in an arm's length transaction before his rights in such property become transferable or not subject to a substantial risk of forfeiture.

**(b) Election to include in gross income in year of transfer.**

**(1) In general.** Any person who performs services in connection with which property is transferred to any person may elect to include in his gross income, for the taxable year in which such property is transferred, the excess of—

(A) the fair market value of such property at the time of transfer (determined without regard to any restriction other than a restriction which by its terms will never lapse), over

(B) the amount (if any) paid for such property.

If such election is made, subsection (a) shall not apply with respect to the transfer of such property, and if such property is subsequently forfeited, no deduction shall be allowed in respect of such forfeiture.

**(2) Election.** An election under paragraph (1) with respect to any transfer of property shall be made in such manner as the Secretary prescribes and shall be made not later than 30 days after the date of such transfer. Such election may not be revoked except with the consent of the Secretary.

**(c) Special rules.**

For purposes of this section—

**(1) Substantial risk of forfeiture.** The rights of a person in property are subject to a substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual.

**(2) Transferability of property.** The rights of a person in property are transferable only if the rights in such property of any transferee are not subject to a substantial risk of forfeiture.

**(3) Sales which may give rise to suit under Section 16(b) of the Securities Exchange Act of 1934.** So long as the sale of property at a profit could subject a person to suit under section 16(b) of the Securities Exchange Act of 1934, such person's rights in such property are—

Section 1.1274-5 also issued under 26 U.S.C. 1275(d).
Section 1.1274A-1 also issued under 26 U.S.C. 1274A(e) and 26 U.S.C. 1275(d).
Section 1.1275-1 also issued under 26 U.S.C. 1275(d).
Section 1.1275-2 also issued under 26 U.S.C. 1275(d).
Section 1.1275-3 also issued under 26 U.S.C. 1275(d).
Section 1.1275-4 also issued under 26 U.S.C. 1275(d).
Section 1.1275-5 also issued under 26 U.S.C. 1275(d).
Section 1.1275-6 also issued under 26 U.S.C. 1275(d).
Section 1.1275-7 also issued under 26 U.S.C. 1275(d).
Section 1.1286-1 also issued under 26 U.S.C. 1275(D) and 1286(f).
Section 1.1286-2 also issued under 26 U.S.C. 1286(f).
Section 1.1287-1 also issued under 26 U.S.C. 165 (j)(3).
Section 1.1291-1 also issued under 26 U.S.C. 1291.
Section 1.1291-9 also issued under 26 U.S.C. 1291(d)(2).
Section 1.1291-10 also issued under 26 U.S.C. 1291(d)(2).
Section 1.1293-1 also issued under 26 U.S.C. 1293.
Section 1.1294-1T also issued under 26 U.S.C. 1294.
Section 1.1295-1 also issued under 26 U.S.C. 1295.
Section 1.1295-3 also issued under 26 U.S.C. 1295.
Section 1.1296(e)-1 also issued under 26 U.S.C. 1296(e).
Section 1.1297-3T also issued under 26 U.S.C. 1297(b)(1).
Section 1.1301-1 also issued under 26 U.S.C. 1301(c).
Section 1.1361-1(j) (6), (10) and (11) also issued under 26 U.S.C. 1361(d)(2)(B)(iii).
Section 1.1361-1(l) also issued under 26 U.S.C. 1361(c)(5)(C).
Sections 1.1362-1, 1.1362-2, 1.1362-3, 1.1362-4, 1.1362-5, 1.1362-6, 1.1362-7, and 1.1363-1 also issued under 26 U.S.C. 1377.
Section 1.1368-1(f) and (g) also issued under 26 U.S.C. 1377(c).
Section 1.1368-2(b) also issued under 26 U.S.C. 1368(c).
Section 1.1374-1 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-2 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-3 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-4 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-5 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-6 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-7 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-8 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-9 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1374-10 also issued under 26 U.S.C. 1374(e) and 337(d).
Section 1.1377-1 also issued under 26 U.S.C. 1377(a)(2) and (c).
Section 1.1394-1 also issued under 26 U.S.C. 1397D.
Section 1.1396-1 also issued under 26 U.S.C. 1397D.
Section 1.1397E-1 also issued under 26 U.S.C. 1397E(b) and (d).

SOURCE: T.D. 6500, 25 FR 11910, Nov. 26, 1960; 25 FR 14021, Dec. 31, 1960, unless otherwise noted.

## GAIN OR LOSS ON DISPOSITION OF PROPERTY

### DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS

**§ 1.1001-1 Computation of gain or loss.**

(a) *General rule.* Except as otherwise provided in subtitle A of the Code, the gain or loss realized from the conversion of property into cash, or from the exchange of property for other property differing materially either in kind or in extent, is treated as income or as loss sustained. The amount realized from a sale or other disposition of property is the sum of any money received plus the fair market value of any property (other than money) received. The fair market value of property is a question of fact, but only in rare and extraordinary cases will property be considered to have no fair market value. The general method of computing such gain or loss is prescribed by section 1001 (a) through (d) which contemplates that from the amount realized upon the sale or exchange there shall be withdrawn a sum sufficient to restore the adjusted basis prescribed by section 1011 and the regulations thereunder (i.e., the cost or other basis adjusted for receipts, expenditures, losses, allowances, and other items chargeable against and applicable to such cost or other basis). The amount which remains after the adjusted basis has been restored to the taxpayer constitutes the realized gain. If the amount realized upon the sale or exchange is insufficient to restore to the

| EXHIBIT | PAGE | of |
|---|---|---|
| | | |

BASIS RULES OF GENERAL APPLICATION

**§ 1.1011–1 Adjusted basis.**

The adjusted basis for determining the gain or loss from the sale or other disposition of property is the cost or other basis prescribed in section 1012 or other applicable provisions of subtitle A of the code, adjusted to the extent provided in sections 1016, 1017, and 1018 or as otherwise specifically provided for under applicable provisions of internal revenue laws.

**§ 1.1011–2 Bargain sale to a charitable organization.**

(a) *In general.* (1) If for the taxable year a charitable contributions deduction is allowable under section 170 by reason of a sale or exchange of property, the taxpayer's adjusted basis of such property for purposes of determining gain from such sale or exchange must be computed as provided in section 1011(b) and paragraph (b) of this section. If after applying the provisions of section 170 for the taxable year, including the percentage limitations of section 170(b), no deduction is allowable under that section by reason of the sale or exchange of the property, section 1011(b) does not apply and the adjusted basis of the property is not required to be apportioned pursuant to paragraph (b) of this section. In such case the entire adjusted basis of the property is to be taken into account in determining gain from the sale or exchange, as provided in § 1.1011–1(e). In ascertaining whether or not a charitable contributions deduction is allowable under section 170 for the taxable year for such purposes, that section is to be applied without regard to this section and the amount by which the contributed portion of the property must be reduced under section 170(e)(1) is the amount determined by taking into account the amount of gain which would have been ordinary income or long-term capital gain if the contributed portion of the property had been sold by the donor at its fair market value at the time of the sale or exchange.

(2) If in the taxable year there is a sale or exchange of property which gives rise to a charitable contribution which is carried over under section 170(b)(1)(D)(ii) or section 170(d) to a subsequent taxable year or is postponed under section 170(a)(3) to a subsequent taxable year, section 1011(b) and paragraph (b) of this section must be applied for purposes of apportioning the adjusted basis of the property for the year of the sale or exchange, whether or not such contribution is allowable as a deduction under section 170 in such subsequent year.

(3) If property is transferred subject to an indebtedness, the amount of the indebtedness must be treated as an amount realized for purposes of determining whether there is a sale or exchange to which section 1011(b) and this section apply, even though the transferee does not agree to assume or pay the indebtedness.

(4)(i) Section 1011(b) and this section apply where property is sold or exchanged in return for an obligation to pay an annuity and a charitable contributions deduction is allowable under section 170 by reason of such sale or exchange.

(ii) If in such case the annuity received in exchange for the property is nonassignable, or is assignable but only to the charitable organization to which the property is sold or exchanged, and if the transferor is the only annuitant or the transferor and a designated survivor annuitant or annuitants are the only annuitants, any gain on such exchange is to be reported as provided in example (8) in paragraph (c) of this section. In determining the period over which gain may be reported as provided in such example, the life expectancy of the survivor annuitant may not be taken into account. The fact that the transferor may retain the right to revoke the survivor's annuity or relinquish his own right to the annuity will not be considered, for purposes of this subdivision, to make the annuity assignable to someone other than the charitable organization. Gain on an exchange of the type described in this subdivision pursuant to an agreement which is entered into after December 19, 1969, and before May 3, 1971, may be reported as provided in example (8) in paragraph (c) of this section, even though the annuity is assignable.

| EXHIBIT | PAGE | of |
|---|---|---|
| | | |

church of $40,245 ($100,000 − $59,755). See Rev. Rul. 84-162, 1984-2 C.B. 200, for transfers for which the valuation date falls after November 23, 1984. (See § 601.601(d)(2)(ii)(*b*) of this chapter). For the applicable valuation tables in connection therewith, see § 20.2031-7(d)(6) of this chapter. See, however, § 1.7520-3(b) (relating to exceptions to the use of standard actuarial factors in certain circumstances).

(c) Under paragraph (b) of this section, the adjusted basis for determining gain on the bargain sale is $11,951 ($20,000 × $59,755 / $100,000). Accordingly, A has a recognized long-term capital gain of $47,804 ($59,755 − $11,951) on the bargain sale. Such gain is to be reported by A ratably over the period of years measured by the expected return multiple under the contract, but only from that portion of the annual payments which is a return of his investment in the contract under section 72 of the Code. For such purposes, the investment in the contract is $59,755, that is, the present value of the annuity.

(d) The computation and application of the exclusion ratio, the gain, and the ordinary annuity income are as follows, determined by using the expected return multiple of 15.0 applicable under table I of § 1.72-9:

| | |
|---|---|
| A's expected return (annual payments of $5,000 × 15) | $75,000.00 |
| Exclusion ratio ($59,755 investment in contract divided by expected return of $75,000) | 79.7% |
| Annual exclusion (annual payments of $5,000 × 79.7%) | $3,985.00 |
| Ordinary annuity income ($5,000 − $3,985) | $1,015.00 |
| Long-term capital gain per year ($47,804/15) with respect to the annual exclusion | $3,186.93 |

(e) The exclusion ratio of 79.7 percent applies throughout the life of the contract. During the first 15 years of the annuity, A is required to report ordinary income of $1,015 and long-term capital gain of $3,186.93 with respect to the annuity payments he receives. After the total long-term capital gain of $47,804 has been reported by A, he is required to report only ordinary income of $1,015.00 per annum with respect to the annuity payments he receives.

(d) *Effective date.* This section applies only to sales and exchanges made after December 19, 1969.

(e) *Cross reference.* For rules relating to the treatment of liabilities on the sale or other disposition or encumbered property, see § 1.1001-2.

[T.D. 7207, 37 FR 20798, Oct. 5, 1972, as amended by T.D. 7741, 45 FR 81745, Dec. 12, 1980; T.D. 8176, 53 FR 5570, Feb. 25, 1988; 53 FR 11002, Apr. 4, 1988; T.D. 8540, 59 FR 30148, June 10, 1994]

### § 1.1012-1 Basis of property.

(a) *General rule.* In general, the basis of property is the cost thereof. The cost is the amount paid for such property in cash or other property. This general rule is subject to exceptions stated in subchapter O (relating to gain or loss on the disposition of property), subchapter C (relating to corporate distributions and adjustments), subchapter K (relating to partners and partnerships), and subchapter P (relating to capital gains and losses), chapter 1 of the code.

(b) *Real estate taxes as part of cost.* In computing the cost of real property, the purchaser shall not take into account any amount paid to the seller as reimbursement for real property taxes which are treated under section 164(d) as imposed upon the purchaser. This rule applies whether or not the contract of sale calls for the purchaser to reimburse the seller for such real estate taxes paid or to be paid by the seller. On the other hand, where the purchaser pays (or assumes liability for) real estate taxes which are treated under section 164(d) as imposed upon the seller, such taxes shall be considered part of the cost of the property. It is immaterial whether or not the contract of sale specifies that the sale price has been reduced by, or is in any way intended to reflect, real estate taxes allocable to the seller under section 164(d). For illustrations of the application of this paragraph, see paragraph (b) of § 1.1001-1.

(c) *Sale of stock*—(1) *In general.* If shares of stock in a corporation are sold or transferred by a taxpayer who purchased or acquired lots of stock on different dates or at different prices, and the lot from which the stock was sold or transferred cannot be adequately identified, the stock sold or transferred shall be charged against the earliest of such lots purchased or acquired in order to determine the cost or other basis of such stock and in order to determine the holding period of such stock for purposes of subchapter P, chapter 1 of the code. If, on the other hand, the lot from which the stock is sold or transferred can be adequately identified, the rule stated in the preceding sentence is not applicable. As to what constitutes "adequate identification", see subparagraphs (2), (3), and (4) of this paragraph.



definition of moving expenses), irrespective of the dollar limitations contained in section 217(b)(3) and the conditions contained in section 217(c), as well as items not described in section 217 (b), such as a loss sustained on the sale or exchange of personal property, storage charges, taxes, or expenses of refitting rugs or draperies.

(5) *Attributable to employment or self-employment.* Any amount received or accrued from an employer, a client, a customer, or similar person in connection with the performance of services for such employer, client, customer, or similar person, is attributable to employment or self-employment. Thus, for example, if an employer reimburses an employee for a loss incurred on the sale of the employee's house, reimbursement is attributable to the performance of services if made because of the employer-employee relationship. Similarly, if an employer in order to prevent an employee's sustaining a loss on a sale of a house acquires the property from the employee at a price in excess of fair market value, the employee is considered to have received a payment attributable to employment to the extent that such payment exceeds the fair market value of the property.

(b) *Effective date*—(1) *In general.* Except as provided in subparagraph (2) of this paragraph, paragraph (a) of this section is applicable only to amounts received or accrued in taxable years beginning after December 31, 1969.

(2) *Election with respect to payments or reimbursements for expenses paid or incurred before January 1, 1971.* Paragraph (a) of this section does not apply with respect to moving expenses paid or incurred before January 1, 1971, in connection with the commencement of work by an employee at a new principal place of work where such employee had been notified by his employer on or before December 19, 1969, of such move and the employee makes an election under paragraph (h) of § 1.217-2.

[T.D. 7195, 37 FR 13533, July 11, 1972, as amended by T.D. 7578, 43 FR 59355, Dec. 20, 1978]

**§ 1.83-1 Property transferred in connection with the performance of services.**

(a) *Inclusion in gross income*—(1) *General rule.* Section 83 provides rules for the taxation of property transferred to an employee or independent contractor (or beneficiary thereof) in connection with the performance of services by such employee or independent contractor. In general, such property is not taxable under section 83(a) until it has been transferred (as defined in § 1.83-3(a)) to such person and become substantially vested (as defined in § 1.83-3(b)) in such person. In that case, the excess of—

(i) The fair market value of such property (determined without regard to any lapse restriction, as defined in § 1.83-3(i)) at the time that the property becomes substantially vested, over

(ii) The amount (if any) paid for such property,

shall be included as compensation in the gross income of such employee or independent contractor for the taxable year in which the property becomes substantially vested. Until such property becomes substantially vested, the transferor shall be regarded as the owner of such property, and any income from such property received by the employee or independent contractor (or beneficiary thereof) or the right to the use of such property by the employee or independent contractor constitutes additional compensation and shall be included in the gross income of such employee or independent contractor for the taxable year in which such income is received or such use is made available. This paragraph applies to a transfer of property in connection with the performance of services even though the transferor is not the person for whom such services are performed.

(2) *Life insurance.* The cost of life insurance protection under a life insurance contract, retirement income contract, endowment contract, or other contract providing life insurance protection is taxable generally under section 61 and the regulations thereunder during the period such contract remains substantially nonvested (as defined in § 1.83-3(b)). The cost of such life insurance protection is the reasonable

| EXHIBIT | PAGE | of |
|---|---|---|
| | | |

assets are subject to a substantial risk of forfeiture to the extent E's child has not become entitled to any grants.

*Example (3).* On November 25, 1971, corporation X gives to E, an employee, in connection with his performance of services to corporation X, a bonus of 100 shares of corporation X stock. Under the terms of the bonus arrangement E is obligated to return the corporation X stock to corporation X if he terminates his employment for any reason. However, for each year occurring after November 25, 1971, during which E remains employed with corporation X, E ceases to be obligated to return 10 shares of the corporation X stock. Since in each year occurring after November 25, 1971, for which E remains employed he is not required to return 10 shares of corporation X's stock, E's rights in 10 shares each year for 10 years cease to be subject to a substantial risk of forfeiture for each year he remains so employed.

*Example (4).* (a) Assume the same facts as in example (3) except that for each year occurring after November 25, 1971, for which E remains employed with corporation X, X agrees to pay, in redemption of the bonus shares given to E if he terminates employment for any reason, 10 percent of the fair market value of each share of stock on the date of such termination of employment. Since corporation X will pay E 10 percent of the value of his bonus stock for each of the 10 years after November 25, 1971, in which he remains employed by X, and the risk of a decline in value is not a substantial risk of forfeiture, E's interest in 10 percent of such bonus stock becomes substantially vested in each of those years.

(b) The following chart illustrates the fair market value of the bonus stock and the fair market value of the portion of bonus stock that becomes substantially vested on November 25, for the following years:

| Year | Fair market value of | |
|---|---|---|
| | All stock | Portion of stock that becomes vested |
| 1972 | $200 | $20 |
| 1973 | 300 | 30 |
| 1974 | 150 | 15 |
| 1975 | 150 | 15 |
| 1976 | 100 | 10 |

If E terminates his employment on July 1, 1977, when the fair market value of the bonus stock is $100, E must return the bonus stock to X, and X must pay, in redemption of the bonus stock, $50 (50 percent of the value of the bonus stock on the date of termination of employment). E has recognized income under section 83(a) and § 1.83–1(a) with respect to 50 percent of the bonus stock, and E's basis in that portion of the stock equals the amount of income recognized, $90. Under § 1.83–1(e), the $40 loss E incurred upon forfeiture ($90 basis less $50 redemption payment) is an ordinary loss.

*Example (5).* On January 7, 1971, corporation X, a computer service company, transfers to E, 100 shares of corporation X stock for $50. E is a highly compensated salesman who sold X's products in a three-state area since 1960. At the time of transfer each share of X stock has a fair market value of $100. The stock is transferred to E in connection with his termination of employment with X. Each share of X stock is subject to the sole condition that E can keep such share only if he does not engage in competition with X for a 5-year period in the three-state area where E had previously sold X's products. E, who is 45 years old, has no intention of retiring from the work force. In order to earn a salary comparable to his current compensation, while preventing the risk of forfeiture from arising, E will have to expend a substantial amount of time and effort in another industry or market to establish the necessary business contacts. Thus, under these facts and circumstances E's rights in the stock are subject to a substantial risk of forfeiture.

(d) *Transferability of property.* For purposes of section 83 and the regulations thereunder, the rights of a person in property are transferable if such person can transfer any interest in the property to any person other than the transferor of the property, but only if the rights in such property of such transferee are not subject to a substantial risk of forfeiture. Accordingly, property is transferable if the person performing the services or receiving the property can sell, assign, or pledge (as collateral for a loan, or as security for the performance of an obligation, or for any other purpose) his interest in the property to any person other than the transferor of such property and if the transferee is not required to give up the property or its value in the event the substantial risk of forfeiture materializes. On the other hand, property is not considered to be transferable merely because the person performing the services or receiving the property may designate a beneficiary to receive the property in the event of his death.

(e) *Property.* For purposes of section 83 and the regulations thereunder, the term "property" includes real and personal property other than either money or an unfunded and unsecured promise to pay money or property in the future. The term also includes a

EXHIBIT
PAGE
of

beneficial interest in assets (including money) which are transferred or set aside from the claims of creditors of the transferor, for example, in a trust or escrow account. See, however, § 1.83-8(a) with respect to employee trusts and annuity plans subject to section 402(b) and section 403(c). In the case of a transfer of a life insurance contract, retirement income contract, endowment contract, or other contract providing life insurance protection, only the cash surrender value of the contract is considered to be property. Where rights in a contract providing life insurance protection are substantially nonvested, see § 1.83-1(a)(2) for rules relating to taxation of the cost of life insurance protection.

(f) *Property transferred in connection with the performance of services.* Property transferred to an employee or an independent contractor (or beneficiary thereof) in recognition of the performance of, or the refraining from performance of, services is considered transferred in connection with the performance of services within the meaning of section 83. The existence of other persons entitled to buy stock on the same terms and conditions as an employee, whether pursuant to a public or private offering may, however, indicate that in such circumstances a transfer to the employee is not in recognition of the performance of, or the refraining from performance of, services. The transfer of property is subject to section 83 whether such transfer is in respect of past, present, or future services.

(g) *Amount paid.* For purposes of section 83 and the regulations thereunder, the term "amount paid" refers to the value of any money or property paid for the transfer of property to which section 83 applies, and does not refer to any amount paid for the right to use such property or to receive the income therefrom. Such value does not include any stated or unstated interest payments. For rules regarding the calculation of the amount of unstated interest payments, see § 1.483-1(c). When section 83 applies to the transfer of property pursuant to the exercise of an option, the term "amount paid" refers to any amount paid for the grant of the option plus any amount paid as the exercise price of the option. For rules regarding the forgiveness of indebtedness treated as an amount paid, see § 1.83-4(c).

(h) *Nonlapse restriction.* For purposes of section 83 and the regulations thereunder, a restriction which by its terms will never lapse (also referred to as a "nonlapse restriction") is a permanent limitation on the transferability of property—

(1) Which will require the transferee of the property to sell, or offer to sell, such property at a price determined under a formula, and

(2) Which will continue to apply to and be enforced against the transferee or any subsequent holder (other than the transferor).

A limitation subjecting the property to a permanent right of first refusal in a particular person at a price determined under a formula is a permanent nonlapse restriction. Limitations imposed by registration requirements of State or Federal security laws or similar laws imposed with respect to sales or other dispositions of stock or securities are not nonlapse restrictions. An obligation to resell or to offer to sell property transferred in connection with the performance of services to a specific person or persons at its fair market value at the time of such sale is not a nonlapse restriction. See § 1.83-5(c) for examples of nonlapse restrictions.

(i) *Lapse restriction.* For purposes of section 83 and the regulations thereunder, the term "lapse restriction" means a restriction other than a nonlapse restriction as defined in paragraph (h) of this section, and includes (but is not limited to) a restriction that carries a substantial risk of forfeiture.

(j) *Sales which may give rise to suit under section 16(b) of the Securities Exchange Act of 1934*—(1) *In general.* For purposes of section 83 and the regulations thereunder if the sale of property at a profit within six months after the purchase of the property could subject a person to suit under section 16(b) of the Securities Exchange Act of 1934, the person's rights in the property are treated as subject to a substantial risk of forfeiture and as not transferable until the earlier of (i) the expiration of such six-month period, or (ii) the first

| EXHIBIT | PAGE | of |
|---|---|---|
| | | |

day on which the sale of such property at a profit will not subject the person to suit under section 16(b) of the Securities Exchange Act of 1934. However, whether an option is "transferable by the optionee" for purposes of §1.83-7(b)(2)(i) is determined without regard to section 83(c)(3) and this paragraph (j).

(2) *Examples.* The provisions of this paragraph may be illustrated by the following examples:

*Example (1).* On January 1, 1983, X corporation sells to P, a beneficial owner of 12% of X corporation stock, in connection with P's performance of services, 100 shares of X corporation stock at $10 per share. At the time of the sale the fair market value of the X corporation stock is $100 per share. P, as a beneficial owner of more 10% of X corporation stock, is liable to suit under section 16(b) of the Securities Exchange Act of 1934 for recovery of any profit from any sale and purchase or purchase and sale of X corporation stock within a six-month period, but no other restrictions apply to the stock. Because the section 16(b) restriction is applicable to P, P's rights in the 100 shares of stock purchased on January 1, 1983, are treated as subject to a substantial risk of forfeiture and as not transferable through June 29, 1983. P chooses not to make an election under section 83 (b) and therefore does not include any amount with respect to the stock purchase in gross income as compensation on the date of purchase. On June 30, 1983, the fair market value of X corporation stock is $250 per share. P must include $24,000 (100 shares of X corporation stock × $240 ($250 fair market value per share less $10 price paid by P for each share)) in gross income as compensation on June 30, 1983. If, in this example, restrictions other than section 16(b) applied to the stock, such other restrictions (but not section 16(b)) would be taken into account in determining whether the stock is subject to a substantial risk of foreiture and is nontransferable for periods after June 29, 1983.

*Example (2).* Assume the same facts as in example (1) except that P is not an insider on or after May 1, 1983, and the section 16(b) restriction does not apply beginning on that date. On May 1, 1983, P must include in gross income as compensation the difference between the fair market value of the stock on that date and the amount paid for the stock.

*Example (3).* Assume the same facts as in example (1) except that on June 1, 1983, X corporation sells to P an additional 100 shares of X corporation stock at $20 per share. At the time of the sale the fair market value of the X corporation stock is $150 per share. On June 30, 1983, P must include $24,000 in gross income as compensation with respect to the January 1, 1983 purchase. On November 30, 1983, the fair market value of X corporation stock is $200 per share. Accordingly, on that date P must include $18,000 (100 shares of X corporation stock × $180 ($200 fair market value per share less $20 price paid by P for each share)) in gross income as compensation with respect to the June 1, 1983 purchase.

(3) *Effective date.* This paragraph applies property transferred after December 31, 1981.

(k) *Special rule for certain accounting rules.* (1) For purposes of section 83 and the regualtions thereunder, property is subject to substantial risk of forfeiture and is not transferable so long as the property is subject to a restriction on transfer to comply with the "Pooling-of-Interests Accounting" rules set forth in Accounting Series Release Numbered 130 ((10/5/72) 37 FR 20937; 17 CFR 211.130) and Accounting Series Release Numbered 135 ((1/18/73) 38 FR 1734; 17 CFR 211.135).

(2) *Effective date.* This paragraph applies to property transferred after December 31, 1981.

[T.D. 7554, 43 FR 31916, July 24, 1978, as amended by T.D. 8042, 50 FR 31713, Aug. 6, 1985; 50 FR 39664, Sept. 30, 1985]

### § 1.83–4 Special rules.

(a) *Holding period.* Under section 83(f), the holding period of transferred property to which section 83(a) applies shall begin just after such property is substantially vested. However, if the person who has performed the services in connection with which property is transferred has made an election under section 83(b), the holding period of such property shall begin just after the date such property is transferred. If property to which section 83 and the regulations thereunder apply is transferred at arm's length, the holding period of such property in the hands of the transferee shall be determined in accordance with the rules provided in section 1223.

(b) *Basis.* (1) Except as provided in paragraph (b)(2) of this section, if property to which section 83 and the regulations thereunder apply is acquired by any person (including a person who acquires such property in a subsequent transfer which is not at arm's length), while such property is still substantially nonvested, such person's basis

| EXHIBIT | PAGE | of |
|---|---|---|
| | | |

for the property shall reflect any amount paid for such property and any amount includible in the gross income of the person who performed the services (including any amount so includible as a result of a disposition by the person who acquired such property.) Such basis shall also reflect any adjustments to basis provided under sections 1015 and 1016.

(2) If property to which §1.83–1 applies is transferred at arm's length, the basis of the property in the hands of the transferee shall be determined under section 1012 and the regulations thereunder.

(c) *Forgiveness of indebtedness treated as an amount paid.* If an indebtedness that has been treated as an amount paid under §1.83–1(a)(1)(ii) is subsequently cancelled, forgiven or satisfied for an amount less than the amount of such indebtedness, the amount that is not, in fact, paid shall be includible in the gross income of the service provider in the taxable year in which such cancellation, forgiveness or satisfaction occurs.

[T.D. 7554, 43 FR 31918, July 24, 1978]

**§ 1.83–5 Restrictions that will never lapse.**

(a) *Valuation.* For purposes of section 83 and the regulations thereunder, in the case of property subject to a nonlapse restriction (as defined in §1.83–3(h)), the price determined under the formula price will be considered to be the fair market value of the property unless established to the contrary by the Commissioner, and the burden of proof shall be on the commissioner with respect to such value. If stock in a corporation is subject to a nonlapse restriction which requires the transferee to sell such stock only at a formula price based on book value, a reasonable multiple of earnings or a reasonable combination thereof, the price so determined will ordinarily be regarded as determinative of the fair market value of such property for purposes of section 83. However, in certain circumstances the formula price will not be considered to be the fair market value of property subject to such a formula price restriction, even though the formula price restriction is a substantial factor in determining such value. For example, where the formula price is the current book value of stock, the book value of the stock at some time in the future may be a more accurate measure of the value of the stock than the current book value of the stock for purposes of determining the fair market value of the stock at the time the stock becomes substantially vested.

(b) *Cancellation*—(1) *In general.* Under section 83(d)(2), if a nonlapse restriction imposed on property that is subject to section 83 is cancelled, then, unless the taxpayer establishes—

(i) That such cancellation was not compensatory, and

(ii) That the person who would be allowed a deduction, if any, if the cancellation were treated as compensatory, will treat the transaction as not compensatory, as provided in paragraph (c)(2) of this section, the excess of the fair market value of such property (computed without regard to such restriction) at the time of cancellation, over the sum of—

(iii) The fair market value of such property (computed by taking the restriction into account) immediately before the cancellation, and

(iv) The amount, if any, paid for the cancellation, shall be treated as compensation for the taxable year in which such cancellation occurs. Whether there has been a noncompensatory cancellation of a nonlapse restriction under section 83(d)(2) depends upon the particular facts and circumstances. Ordinarily the fact that the employee or independent contractor is required to perform additional services or that the salary or payment of such a person is adjusted to take the cancellation into account indicates that such cancellation has a compensatory purpose. On the other hand, the fact that the original purpose of a restriction no longer exists may indicate that the purpose of such cancellation is noncompensatory. Thus, for example, if a so-called "buy-sell" restriction was imposed on a corporation's stock to limit ownership of such stock and is being cancelled in connection with a public offering of the stock, such cancellation will generally be regarded as noncompensatory. However, the mere fact that the employer is willing to forego a deduction under section 83(h) is insufficient evidence to

| EXHIBIT | PAGE | of |
|---|---|---|
| | | |

However, the fair market value of X common stock at the time of transfer, subject to the book value restriction, is greater than $0 since B was willing to agree to provide valuable personal services in exchange for the stock. In determining the fair market value of the stock, the expected book value after construction of the office building would be given great weight. The likelihood of completion of construction would be a factor in determining the expected book value after completion of construction.

[T.D. 7554, 43 FR 31918, July 24, 1978]

## § 1.83-6 Deduction by employer.

(a) *Allowance of deduction*—(1) *General rule*. In the case of a transfer of property in connection with the performance of services, or a compensatory cancellation of a nonlapse restriction described in section 83(d) and § 1.83-5, a deduction is allowable under section 162 or 212 to the person for whom the services were performed. The amount of the deduction is equal to the amount included as compensation in the gross income of the service provider under section 83 (a), (b), or (d)(2), but only to the extent the amount meets the requirements of section 162 or 212 and the regulations thereunder. The deduction is allowed only for the taxable year of that person in which or with which ends the taxable year of the service provider in which the amount is included as compensation. For purposes of this paragraph, any amount excluded from gross income under section 79 or section 101(b) or subchapter N is considered to have been included in gross income.

(2) *Special Rule*. For purposes of paragraph (a)(1) of this section, the service provider is deemed to have included the amount as compensation in gross income if the person for whom the services were performed satisfies in a timely manner all requirements of section 6041 or section 6041A, and the regulations thereunder, with respect to that amount of compensation. For purposes of the preceding sentence, whether a person for whom services were performed satisfies all requirements of section 6041 or section 6041A, and the regulations thereunder, is determined without regard to § 1.6041-3(c) (exception for payments to corporations). In the case of a disqualifying disposition of stock described in section 421(b), an employer that otherwise satisfies all requirements of section 6041 and the regulations thereunder will be considered to have done so timely for purposes of this paragraph (a)(2) if Form W-2 or Form W-2c, as appropriate, is furnished to the employee or former employee, and is filed with the federal government, on or before the date on which the employer files the tax return claiming the deduction relating to the disqualifying disposition.

(3) *Exceptions*. Where property is substantially vested upon transfer, the deduction shall be allowed to such person in accordance with his method of accounting (in conformity with sections 446 and 461). In the case of a transfer to an employee benefit plan described in § 1.162-10(a) or a transfer to an employees' trust or annuity plan described in section 404(a)(5) and the regulations thereunder, section 83(h) and this section do not apply.

(4) *Capital expenditure, etc*. No deduction is allowed under section 83(h) to the extent that the transfer of property constitutes a capital expenditure, an item of deferred expense, or an amount properly includible in the value of inventory items. In the case of a capital expenditure, for example, the basis of the property to which such capital expenditure relates shall be increased at the same time and to the same extent as any amount includible in the employee's gross income in respect of such transfer. Thus, for example, no deduction is allowed to a corporation in respect of a transfer of its stock to a promoter upon its organization, notwithstanding that such promoter must include the value of such stock in his gross income in accordance with the rules under section 83.

(5) *Effective date*. Paragraphs (a)(1) and (2) of this section apply to deductions for taxable years beginning on or after January 1, 1995. However, taxpayers may also apply paragraphs (a)(1) and (2) of this section when claiming deductions for taxable years beginning before that date if the claims are not barred by the statute of limitations. Paragraphs (a) (3) and (4) of this section are effective as set forth in § 1.83-8(b).

(b) *Recognition of gain or loss*. Except as provided in section 1032, at the time

| EXHIBIT | PAGE | of |
|---|---|---|
| | | |

of a transfer of property in connection with the performance of services the transferor recognizes gain to the extent that the transferor receives an amount that exceeds the transferor's basis in the property. In addition, at the time a deduction is allowed under section 83(h) and paragraph (a) of this section, gain or loss is recognized to the extent of the difference between (1) the sum of the amount paid plus the amount allowed as a deduction under section 83(h), and (2) the sum of the taxpayer's basis in the property plus any amount recognized pursuant to the previous sentence.

(c) *Forfeitures*. If, under section 83(h) and paragraph (a) of this section, a deduction, an increase in basis, or a reduction of gross income was allowable (disregarding the reasonableness of the amount of compensation) in respect of a transfer of property and such property is subsequently forfeited, the amount of such deduction, increase in basis or reduction of gross income shall be includible in the gross income of the person to whom it was allowable for the taxable year of forfeiture. The basis of such property in the hands of the person to whom it is forfeited shall include any such amount includible in the gross income of such person, as well as any amount such person pays upon forfeiture.

(d) *Special rules for transfers by shareholders*—(1) *Transfers*. If a shareholder of a corporation transfers property to an employee of such corporation or to an independent contractor (or to a beneficiary thereof), in consideration of services performed for the corporation, the transaction shall be considered to be a contribution of such property to the capital of such corporation by the shareholder, and immediately thereafter a transfer of such property by the corporation to the employee or independent contractor under paragraphs (a) and (b) of this section. For purposes of this (1), such a transfer will be considered to be in consideration for services performed for the corporation if either the property transferred is substantially nonvested at the time of transfer or an amount is includible in the gross income of the employee or independent contractor at the time of transfer under §1.83–1(a)(1) or §1.83–2(a). In the case of such a transfer, any money or other property paid to the shareholder for such stock shall be considered to be paid to the corporation and transferred immediately thereafter by the corporation to the shareholder as a distribution to which section 302 applies. For special rules that may applyto a corporation's transfer of its own stock to any person in consideration of services performed for another corporation or partnership, see §1.1032–3. The preceding sentence applies to transfers of stock and amounts paid for such stock occurring on or after May 16, 2000.

(2) *Forfeiture*. If, following a transaction described in paragraph (d)(1) of this section, the transferred property is forfeited to the shareholder, paragraph (c) of this section shall apply both with respect to the shareholder and with respect to the corporation. In addition, the corporation shall in the taxable year of forfeiture be allowed a loss (or realize a gain) to offset any gain (or loss) realized under paragraph (b) of this section. For example, if a shareholder transfers property to an employee of the corporation as compensation, and as a result the shareholder's basis of \$200*x* in such property is allocated to his stock in such corporation and such corporation recognizes a short-term capital gain of \$800*x*, and is allowed a deduction of \$1,000*x* on such transfer, upon a subsequent forfeiture of the property to the shareholder, the shareholder shall take \$200*x* into gross income, and the corporation shall take \$1,000*x* into gross income and be allowed a short-term capital loss of \$800*x*.

(e) *Options*. [Reserved]

(f) *Reporting requirements*. [Reserved]

[T.D. 7554, 43 FR 31919, July 24, 1978, as amended by T.D. 8599, July 19, 1995; T.D. 8883, 65 FR 31076, May 16, 2000]

**§ 1.83–7 Taxation of nonqualified stock options.**

(a) *In general*. If there is granted to an employee or independent contractor (or beneficiary thereof) in connection with the performance of services, an option to which section 421 (relating generally to certain qualified and other options) does not apply, section 83(a) shall apply to such grant if the option has a readily ascertainable fair market

| EXHIBIT | PAGE | of |
|---|---|---|
| | | |

CASE NO. 05-CR-10175-WGY Nadine J. Griffin,

# EXHIBIT "B"

**4 pages**



Department of the Treasury
Internal Revenue Service

**Publication 556**
(Rev. August 2005)
Cat. No. 15104N

# Examination of Returns, Appeal Rights, and Claims for Refund

**Get forms and other information faster and easier by:**

**Internet** • www.irs.gov

## Contents

Important Reminder . . . . . 1
Introduction . . . . . 1
Examination of Returns . . . . . 2
Appeal Rights . . . . . 8
Claims for Refund . . . . . 12
How To Get Tax Help . . . . . 16
Index . . . . . 18

## The IRS Mission

Provide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all.

## Important Reminder

**Fast track mediation.** The IRS offers fast track mediation services to help taxpayers resolve many disputes resulting from:

- Examinations (audits),
- Offers in compromise,
- Trust fund recovery penalties, and
- Other collection actions.

See *Fast track mediation* under *If You Do Not Agree.*

## Introduction

The Internal Revenue Service (IRS) accepts most federal tax returns as filed. However, the IRS examines (or audits) some returns to determine if income, expenses, and credits are being reported accurately.

If your return is selected for examination, it does not suggest that you made an error or are dishonest. Returns are chosen by computerized screening, by random sample, or by an income document matching program. See *Examination selection criteria*, later. You should also know that many examinations result in a refund or acceptance of the tax return without change.

This publication discusses general rules and procedures that the IRS follows in examinations. It explains what happens during an examination and your appeal rights, both within the IRS and in the federal court system. It also explains how to file a claim for refund of tax you already paid.

As a taxpayer, you have the right to be treated fairly, professionally, promptly, and courteously by IRS employees. Publication 1, Your Rights as a Taxpayer, explains your rights when dealing with the IRS.

**Comments and suggestions.** We welcome your comments about this publication and your suggestions for future editions.

You can write to us at the following address:

Internal Revenue Service
Individual Forms and Publications Branch
SE:W:CAR:MP:T:I
1111 Constitution Ave. NW, IR-6406
Washington, DC 20224

We respond to many letters by telephone. Therefore, it would be helpful if you would include your daytime phone number, including the area code, in your correspondence.

You can email us at **taxforms@irs.gov*. (The asterisk must be included in the address.) Please put "Publications Comment" on the subject line. Although we cannot respond individually to each email, we do appreciate your feedback and will consider your comments as we revise our tax products.

***Tax questions.*** If you have a tax question, visit *www.irs.gov* or call 1-800-829-1040. We cannot answer tax questions at either of the addresses listed above.

***Ordering forms and publications.*** Visit *www.irs.gov/formspubs* to download forms and publications, call 1-800-829-3676, or write to the National Distribution Center at the address shown under *How To Get Tax Help* in the back of this publication.

## Useful Items

You may want to see:

**Publication**

- ❑ **1** Your Rights as a Taxpayer
- ❑ **5** Your Appeal Rights and How To Prepare a Protest If You Don't Agree
- ❑ **547** Casualties, Disasters, and Thefts
- ❑ **594** The IRS Collection Process
- ❑ **910** Guide to Free Tax Services
- ❑ **971** Innocent Spouse Relief (And Separation of Liability and Equitable Relief)
- ❑ **1546** The Taxpayer Advocate Service of the IRS
- ❑ **1660** Collection Appeal Rights
- ❑ **3605** Fast Track Mediation
- ❑ **3920** Tax Relief for Victims of Terrorist Attacks

**Form (and Instructions)**

- ❑ **843** Claim for Refund and Request for Abatement
- ❑ **1040X** Amended U.S. Individual Income Tax Return
- ❑ **2848** Power of Attorney and Declaration of Representative
- ❑ **4506** Request for Copy of Tax Return
- ❑ **4506-T** Request for Transcript of Tax Return
- ❑ **8379** Injured Spouse Claim and Allocation
- ❑ **8857** Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief)

See *How To Get Tax Help*, near the end of this publication, for information about getting these publications and forms.

# Examination of Returns

Your return may be examined for a variety of reasons, and the examination may take place in any one of several ways. After the examination, if any changes to your tax are proposed, you can either agree with those changes and pay any additional tax you may owe, or you can disagree with the changes and appeal the decision.

**Examination selection criteria.** Your return may be selected for examination on the basis of computer scoring. A computer program called the Discriminant Inventory Function System (DIF) assigns a numeric score to each individual and some corporate tax returns after they have been processed. If your return is selected because of a high score under the DIF system, the potential is high that an examination of your return will result in a change to your income tax liability.

Your return may also be selected for examination on the basis of information received from third-party documentation, such as Forms 1099 and W-2, that does not match the information reported on your return. Or, your return may be selected to address both the questionable treatment of an item and to study the behavior of similar taxpayers (a market segment) in handling a tax issue.

In addition, your return may be selected as a result of information received from other sources on potential non-compliance with the tax laws or inaccurate filing. This information can come from a number of sources, including newspapers, public records, and individuals. The information is evaluated for reliability and accuracy before it is used as the basis of an examination or investigation.

**Notice of IRS contact of third parties.** The IRS must give you reasonable notice before contacting other persons about your tax matters. You must be given reasonable notice in advance that, in examining or collecting your tax liability, the IRS may contact third parties such as your neighbors, banks, employers, or employees. The IRS must also give you notice of specific contacts by providing you with a record of persons contacted on both a periodic basis and upon your request.



*This provision does not apply:*

- *To any pending criminal investigation,*
- *When providing notice would jeopardize collection of any tax liability,*
- *Where providing notice may result in reprisal against any person, or*
- *When you authorized the contact.*

**Taxpayer Advocate Service.** The Taxpayer Advocate Service is an independent organization within the IRS whose goal is to help taxpayers resolve problems with the IRS. If you have an ongoing issue with the IRS that has not been resolved through normal processes, or you have suffered, or are about to suffer a significant hardship as a result of the administration of the tax laws, contact the Taxpayer Advocate Service.

*Before contacting the Taxpayer Advocate, you should first discuss any problem with a supervisor. Your local Taxpayer Advocate will assist you if you are unable to resolve the problem with the supervisor.*

For more information, see Publication 1546. See *How To Get Tax Help*, near the end of this publication for more information about contacting the Taxpayer Advocate Service.

**Comments from small business.** The Small Business and Agricultural Regulatory Enforcement Ombudsman and 10 Regional Fairness Boards have been established to receive comments from small business about federal agency enforcement actions. The Ombudsman will annually evaluate the enforcement activities of each agency and rate their responsiveness to small business. If you wish to comment on the enforcement actions of the IRS, you can take any of the following steps.

- Fax your comments to 1-202-481-5719.
- Write to the following address:
  Office of the National Ombudsman
  U.S. Small Business Administration
  409 3rd Street, SW
  Washington, DC 20416.
- Call 1-888-734-3247.
- Send an email to *ombudsman@sba.gov.*
- File a comment or complaint online at *www.sba.gov/ombudsman.*

## If Your Return Is Examined

Some examinations are handled entirely by mail. Examinations not handled by mail can take place in your home, your place of business, an Internal Revenue office, or the office of your attorney, accountant, or enrolled agent. If the time, place, or method is not convenient for you, the examiner will try to work out something more suitable. However, the IRS makes the final determination of when, where, and how the examination will take place.

Throughout the examination, you can act on your own behalf or have someone represent you or accompany you. If you filed a joint return, either you or your spouse, or both, can meet with the IRS. You can have someone represent or accompany you. This person can be any federally authorized practitioner, including an attorney, a certified public accountant, an enrolled agent (a person enrolled to practice before the IRS), an enrolled actuary, or the person who prepared the return and signed it as the preparer.

If you want someone to represent you in your absence, you must furnish that person with proper written authorization. You can use Form 2848 or any other properly written authorization. If you want to consult with an attorney, a certified public accountant, an enrolled agent, or any other person permitted to represent a taxpayer during an interview for examining a tax return or collecting tax, you should make arrangements with that person to be available for the interview. In most cases, the IRS must suspend the interview and reschedule it. The IRS cannot suspend the interview if you are there because of an administrative summons.

***Third party authorization.*** If you checked the box in the signature area of your income tax return (Form 1040, Form 1040A, or Form 1040EZ) to allow the IRS to discuss your return with another person (a third party designee), this authorization does not replace Form 2848. The box you checked on your return only authorizes the other person to receive information about the processing of your return and the status of your refund during the period your return is being processed. For more information, see the instructions for your return.

***Confidentiality privilege.*** Generally, the same confidentiality protection that you have with an attorney also applies to certain communications that you have with federally authorized practitioners.

Confidential communications are those that:

- Advise you on tax matters within the scope of the practitioner's authority to practice before the IRS,
- Would be confidential between an attorney and you, and
- Relate to noncriminal tax matters before the IRS, or
- Relate to noncriminal tax proceedings brought in federal court by or against the United States.

In the case of communications in connection with the promotion of a person's participation in a tax shelter, the confidentiality privilege does not apply to written communications between a federally authorized practitioner and that person, any director, officer, employee, agent, or representative of that person, or any other person holding a capital or profits interest in that person.

A tax shelter is any entity, plan, or arrangement, a significant purpose of which is the avoidance or evasion of income tax.

**Recordings.** You can make an audio recording of the examination interview. Your request to record the interview should be made in writing. You must notify the examiner 10 days in advance and bring your own recording equipment. The IRS also can record an interview. If the IRS initiates the recording, you must be notified 10 days in advance and you can get a copy of the recording at your expense.

**Transfers to another area.** Generally, your return is examined in the area where you live. But if your return can be examined more quickly and conveniently in another area, such as where your books and records are located, you can ask to have the case transferred to that area.

**Repeat examinations.** The IRS tries to avoid repeat examinations of the same items, but sometimes this happens. If your tax return was examined for the same items in either of the 2 previous years and no change was proposed to your tax liability, please contact the IRS as soon as possible to see if the examination should be discontinued.

## The Examination

An examination usually begins when you are notified that your return has been selected. The IRS will tell you which records you will need. The examination can proceed more easily if you gather your records before any interview.

Any proposed changes to your return will be explained to you or your authorized representative. It is important that you understand the reasons for any proposed changes. You should not hesitate to ask about anything that is unclear to you.

The IRS must follow the tax laws set forth by Congress in the Internal Revenue Code. The IRS also follows Treasury Regulations, other rules, and procedures that were written to administer the tax laws. The IRS also follows court decisions. However, the IRS can lose cases that involve taxpayers with the same issue and still apply its interpretation of the law to your situation.

Most taxpayers agree to changes proposed by examiners, and the examinations are closed at this level. If you do not agree, you can appeal any proposed change by following the procedures provided to you by the IRS. A more complete discussion of appeal rights is found later under *Appeal Rights*.

## If You Agree

If you agree with the proposed changes, you can sign an agreement form and pay any additional tax you may owe. You must pay interest on any additional tax. If you pay when you sign the agreement, the interest is generally figured from the due date of your return to the date of your payment.

If you do not pay the additional tax when you sign the agreement, you will receive a bill that includes interest. If you pay the amount due within 10 business days of the billing date, you will not have to pay more interest or penalties. This period is extended to 21 calendar days if the amount due is less than $100,000.

If you are due a refund, you will receive it sooner if you sign the agreement form. You will be paid interest on the refund.

If the IRS accepts your tax return as filed, you will receive a letter in a few weeks stating that the examiner proposed no changes to your return. You should keep this letter with your tax records.

## If You Do Not Agree

If you do not agree with the proposed changes, the examiner will explain your appeal rights. If your examination takes place in an IRS office, you can request an immediate meeting with the examiner's supervisor to explain your position. If an agreement is reached, your case will be closed.

If you cannot reach an agreement with the supervisor at this meeting, or if the examination took place outside of an IRS office, the examiner will write up your case explaining your position and the IRS' position. The examiner will forward your case for processing.

**Fast track mediation.** The IRS offers fast track mediation services to help taxpayers resolve many disputes resulting from:

- Examinations (audits),
- Offers in compromise,
- Trust fund recovery penalties, and
- Other collection actions.

Most cases that are not docketed in any court qualify for fast track mediation. Mediation can take place at a conference you request with a supervisor, or later. The process involves an Appeals Officer who has been trained in mediation. You may represent yourself at the mediation session, or someone else can act as your representative. For more information, see Publication 3605.

**30-day letter and 90-day letter.** Within a few weeks after your closing conference with the examiner and/or supervisor, you will receive a package with:

- A letter (known as a 30-day letter) notifying you of your right to appeal the proposed changes within 30 days,
- A copy of the examination report explaining the examiner's proposed changes,
- An agreement or waiver form, and
- A copy of Publication 5.

You generally have 30 days from the date of the 30-day letter to tell the IRS whether you will accept or appeal the proposed changes. The letter will explain what steps you should take, depending on which action you choose. Be sure to follow the instructions carefully. *Appeal Rights* are explained later.