UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. 05-cr-10175-WGY-1 |
| Plaintiff, ) | |
| ) | MOTION FOR JUDGMENT OF |
| v. ) | ACQUITTAL |
| ) | |
| NADINE J. GRIFFIN, ) | |
| Defendant. ) | |

Defendant Nadine Griffin, by and through her attorney of record, moves this honorable Court for a Judgment of Acquittal pursuant to FRCrP 29(c). FRCrP 29(a) provides, "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. FRCrP 29(c) provides that a defendant may renew his motion within 7 days after a guilty verdict. Because the government failed to prove various elements of the alleged crime and failed to prove other legal requirements, Ms. Griffin brings this motion and also renews her prior motion brought at the close of the government's case. Ms. Griffin reserves the right to amend this motion.

**I. The Government Failed To Prove The Element Of Willfulness As Set Forth By The Supreme Court.**

The government charged Nadine Griffin with two counts of filing false tax returns for 1998 and 1999, in violation of 26 U.S.C. § 7206(1). One of the elements is to prove that Ms.

Motion For Judgment of Acquittal         - 1 -         Alan S. Richey
Attorney at Law
P.O. Box 1505
Port Hadlock, Washington 98339
(360) 437-4005

PDF created with pdfFactory trial version www.pdffactory.com

Griffin willfully violated the law. As this court repeatedly stated during trial, Ms. Griffin was presumed innocent and the burden rested entirely on the government to prove she is guilty.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976); see also *Cool v. United States*, 409 U.S. 100, 104 (1972)("constitutionally rooted presumption of innocence"). The presumption serves as a reminder to the jury [and the court] that the United States has the burden of proving every element of the offense beyond a reasonable doubt. See *Delo v. Lashley*, 507 U.S. 272, 278 (1993).

The traditional rule provides that "ignorance of the law" is no defense to a criminal prosecution. *Cheek v. United States*, 498 U.S. 192, 199 (1991); see also *Bryan v. United States*, 524 U.S. 184, 195 (1998). "Ignorance of the law" as a rule was based on the notion that the law is definite and knowable; the common law presumed that every person knew the law. This common law rule has been applied by the Court in numerous cases construing criminal statutes. See, e.g., *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558 (1971); *Hamling v. United States*, 418 U.S. 87, 119-124 (1974); *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952). Thus, a specific intent crime "normally does not necessitate proof that the defendant was specifically aware of the law penalizing his conduct." *United States v. Scanio*, 900 F.2d 485, 489 (2d Cir. 1990); accord *United States v. Shirk*, 981 F.2d 1382, 1390 (3d Cir. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 873 (1994).  See *also U.S. v. Blair*, 54 F.3d 639 (10th Cir. 1995).

Congress enacted an exception to this "general rule" involving "Tax Crimes" and "Bank Secrecy" Crimes.  See *Cheek*, 498 U.S. at 199. This was because the "proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend

PDF created with pdfFactory trial version www.pdffactory.com

the extent of the duties and obligations imposed by the tax laws. Congress has accordingly softened the impact of the common law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses." Id. at 200.

Because only willful conduct is criminal under section 7206 and because willfulness requires a voluntary intentional violation of a known duty, "the duty involved must be knowable." *U.S. v. Pirro*, 212 F.3d 86, 90 (2d Cir. 2000). "In criminal cases, actual knowledge of illegality is required for a willful violation of a criminal statute." *Reynolds v. Hartford*, 435 F.3d 1081, 1098 (9th Cir.2006). The Seventh Circuit has held that an indictment must be dismissed where a defendant is provided "no fair warning that her conduct was criminal," and because "new points of tax law may not be the basis of criminal convictions." *United States v. Harris*, 942 F.2d 1125, 1131 (7th Cir.1991). The court referred to a civil case discussing the distinction between income and gifts, and stated, "[C]riminal prosecutions are a different story. These must rest on a violation of a clear rule of law. . . . If 'defendants in a tax case could not have ascertained the legal standards applicable to their conduct, criminal proceedings may not be used to define and punish an alleged failure to conform to those standards.'" *Id., citing United States v. Mallas*, 762 F.2d 361, 361 (4th Cir. 1985).

The Supreme Court has repeatedly discussed what willfulness requires in the criminal context;

> The word "willfully" is sometimes said to be "a word of many meanings" whose construction is often dependent on the context in which it appears. See, e.g., *Spies v. United States*, 317 U.S. 492, 497 (1943). Most obviously it differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind. As explained in *United States v. Murdock*, 290 U.S. 389 (1933), a variety of phrases have been used to describe that concept. As a general matter, when used in the criminal context, a "willful" act is one undertaken with a "bad purpose." In other words, in order to establish a "willful"

Motion For Judgment of Acquittal    - 3 -                                 Alan S. Richey
                                                                          Attorney at Law
                                                                          P.O. Box 1505
                                                                          Port Hadlock, Washington 98339
                                                                          (360) 437-4005

PDF created with pdfFactory trial version www.pdffactory.com

violation of a statute, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994).
*Bryan*, 524 U.S. at 191-192.

In *Cheek*, the Court defined willfulness—"Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek*, 498 U.S. at 201. The Court explained this rule more fully, "in certain cases involving **willful violations of the tax laws**, we have concluded that the jury must find that the **defendant was aware of the specific provision of the tax code** that [s]he was charged with violating." *Bryan*, 524 U.S. at 194, *citing Cheek*, 498 U.S. at 201, (emphasis added). The Court continued, "Both the tax cases and [banking cases] involved highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct. As a result, we **held** that these statutes 'carve out an exception to the traditional rule' that ignorance of the law is no excuse and require that the **defendant have knowledge of the law**." *Id.* at 194-195 (emphasis added). Thus, the rule of law as set forth by the Supreme Court is that in tax cases, the government must prove that "THE DEFENDANT WAS AWARE OF THE SPECIFIC PROVISION OF THE TAX CODE THAT SHE WAS CHARGED WITH VIOLATING." *Id.* The Ninth Circuit, in citing *Bryan* at 194-195, acknowledged "the cases to which *Bryan* refers are cases in which the Supreme Court read the **element** of 'actual knowledge of the law' into complex statutes that punished 'willful' failures to perform statutory duties." *United States v. Hancock*, 231 F.3d 557, 562 (9th Cir.2000)(emphasis added), *citing Ratzlaf*, 510 U.S. at 149, and *Cheek*, 498 U.S. at 201.

In this case, the government not only refused to meet its burden of proof that Ms. Griffin

| Motion For Judgment of Acquittal | - 4 - | Alan S. Richey<br>Attorney at Law<br>P.O. Box 1505<br>Port Hadlock, Washington 98339<br>(360) 437-4005 |
|---|---|---|

PDF created with pdfFactory trial version www.pdffactory.com

had actual knowledge of 26 U.S.C. § 7206(1) at the time she signed the 1998 and 1999 returns, but the government in closing arguments told the jury that they did not have to find that Ms. Griffin was aware of the specific provision she was charged with violating.[1] Further, the witnesses, especially Joseph Cintron, who made the 1998 return, William Kittredge, who made the 1999 return, Roger Macarelle, the banker who knew and handled the property transaction with Ms. Griffin, and Ralph Ardiff, the attorney for the bank on the property transaction, all stated that Ms. Griffin was not sophisticated. Mr. Cintron and Mr. Kittredge testified that she was not sophisticated regarding tax laws and tax matters. All of the witnesses involved in Global testified that they were instructed in ways to **legally** avoid or reduce taxes. Thus, there was no evidence whatsoever that Ms. Griffin was aware that she was violating a law by having all Global sale proceeds go to the trusts of CFS and Angelica Holdings.

      Likewise, the government failed to present any evidence that Ms. Griffin was aware of the law governing a "schedule C" or how that schedule was to operate in the complex taxing scheme advanced by Congress. Furthermore, the government never entered any evidence of the State Law which would have made Ms. Griffin aware of how the income activity of CFS and Angelica Holdings was to be treated with regard to Ms. Griffin's schedule C prepared for her by Cintron and Kittredge. It follows that without such evidence, the jury could never have found Ms. Griffin was aware of the specific laws which the government's theory contends she must have known about. In fact, no government witness, including their expert Mike Pleshaw, was aware of those specific laws, as not a single law was identified.

      Since willfulness requires the government to allege and prove the Defendant was aware

---

[1] It may be considered contempt of court to specifically go against a rule of law set forth by the Supreme Court.

| Motion For Judgment of Acquittal | - 5 - | Alan S. Richey<br>Attorney at Law<br>P.O. Box 1505<br>Port Hadlock, Washington 98339<br>(360) 437-4005 |
|---|---|---|

PDF created with pdfFactory trial version www.pdffactory.com

of section 7206(1) *and some other specific statute that imposed the statutory duty to file a return*, and because the government neither alleged nor entered any evidence in support of this element, that Ms. Griffin was aware of the law imposing the duty, this Court should grant Ms. Griffin's motion for judgment of acquittal and dismiss the indictment with prejudice.

**II.  The Government Failed To Prove The Element Charged In The Indictment That Ms. Griffin "Made" The 1998 And 1999 Tax Returns.**

The government charged in the indictment that Nadine Griffin "made" the 1998 and 1999 tax returns. Ms. Griffin was charged with two counts of violating 26 U.S.C. § 7206(1). That provision specifically provides, "Any person who—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1). Thus, "make" is a separate statutory element which the government must prove.

At trial, the government failed to prove that Ms. Griffin made the 1998 and 1999 forms 1040. In fact, Joseph Cintron specifically testified that he made the 1998 form 1040 and schedule C. William Kittridge specifically testified that he made the 1999 form 1040 and schedule C. Thus, there was no evidence whatsoever that Ms. Griffin made the returns as alleged in the indictment. Because "make" is a statutory element, because the government failed to produce any evidence that Ms. Griffin made the returns, and because the court refused to give any instruction to the jury that they must find that Ms. Griffin made the returns in order to find her guilty, the court should grant Ms. Griffin judgment of acquittal and dismiss the indictment with prejudice.

To further frustrate Ms. Griffin's ability to offer her complete defense, this Court

Motion For Judgment of Acquittal      - 6 -

PDF created with pdfFactory trial version www.pdffactory.com

instructed the Jury that they had to find Ms. Griffin "filed or caused to be filed" the returns at issue. Nowhere under section 7206(1) does the term "filed or caused to be filed" appear in the statutory language. "Made and subscribed" is the language in the statute and the indictment. It is clear that one cannot file what is not yet made. The government may have proven Ms. Griffin filed or caused to be filed the 1040 forms but that does not prove she made them. Likewise, there is no evidence presented to the Jury that Ms. Griffin made the schedule C which is the specific place the government's case-in-chief relies. There was no evidence entered that Ms. Griffin even knew what a schedule C was or what its purpose was to accomplish in the complex tax scheme advanced by Congress and the Department of Justice.

### III. The PRA Bars Criminal Prosecution In This Case.

Notwithstanding the fatal errors that no evidence established that Nadine Griffin had knowledge of section 7206(1) or that she made the returns, the evidence presented at trial regarding the 1040 Forms and Schedules C for 1998 and 1999, and other years, established that the forms at issue were bootleg and violated 44 U.S.C. §§ 3507(g), 3507(h)(3), and 3512. The government is barred from bringing the charges against Ms. Griffin inasmuch as the Forms 1040 and Schedule C fail to comply with the requirements of the Paperwork Reduction Act.

The Paperwork Reduction Act ("PRA") is to assist in the government's collection of information. One of the specific purposes of the PRA is to "ensure that the creation, collection, maintenance, use, dissemination, and disposition of information by and for the Federal Government is consistent with applicable laws." 44 U.S.C. § 3501(8). In order to assure compliance with the PRA, a federal agency has various responsibilities, including, "The head of each agency shall be responsible for--(A) carrying out the agency's information resources

Motion For Judgment of Acquittal          - 7 -          Alan S. Richey
                                                         Attorney at Law
                                                         P.O. Box 1505
                                                         Port Hadlock, Washington 98339
                                                         (360) 437-4005

PDF created with pdfFactory trial version www.pdffactory.com

management activities to improve agency productivity, efficiency, and effectiveness; and (B) complying with the requirements of this subchapter and related policies established by the Director." 44 U.S.C. § 3506(a)(1).

When a government agency collects any information from the public on any form, it must "display a valid control number assigned by the Director." 44 U.S.C. § 3512(a)(1). 44 U.S.C. § 3507(g) limits the issuance of a valid control number for a term not to exceed 3 years. The form is also required to contain a provision on the form which "inform[s] the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a)(2). After the form is approved, 44 U.S.C. § 3507(h)(3) mandates that any changes made on the form must be submitted for new approval.

The Form 1040 has had OMB # 1545-0074 upon its face since 1981. This means that the number has appeared for 25 years, and thus 22 years longer than allowed by section 3507(g); it has appeared for more than three years. This makes the 1040 Form not "in accordance" with the PRA of 1995.

Furthermore, the 1040 Form has received changes to the standard deduction each year on the reverse page (page 2); these changes were never noticed for approval to the Office of Management and Budget upon the application form 83-I. This alone violates section 3507(h)(3). This makes the 1040 Form not "in accordance" with the PRA of 1995.

The Form 1040 is required to "display a notice that a person is not required to respond to the collection of information unless it displays a control number which is valid." 44 U.S.C. § 3512(a)(2). The Form 1040 fails to comply with this mandate. In fact, the 1998 form 1040

| Motion For Judgment of Acquittal | - 8 - | Alan S. Richey<br>Attorney at Law<br>P.O. Box 1505<br>Port Hadlock, Washington 98339<br>(360) 437-4005 |
|---|---|---|

PDF created with pdfFactory trial version www.pdffactory.com

merely states on the bottom of its front page, "For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 51." The 1999 Form 1040 refers to page 54. Schedule C of form 1040 for 1998 and 1999 states at the bottom of the page, "For Paperwork Reduction Act Notice, see Form 1040 instructions." This can only mean page 51 and 54 of the Instruction Booklet, a document the government refused to produce, offer, or admit into evidence in this case. Therefore, Forms 1040 and Schedule C are in violation of 44 U.S.C. § 3512(a)(2).

44 U.S.C. § 3512, as amended in 1995, provides:

> (a) Notwithstanding any other provision of law, **no person shall be subject to any penalty** for failing **to comply with a collection** of information that is subject to this subchapter if -
>
>> (1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or
>> (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
>
> (b) The protection provided by this section may be raised in the form of a **complete defense, bar**, or otherwise at any time during the agency administrative process or **judicial action applicable** thereto.

There can be no argument that the forms at issue complied with the PRA of 1995, as they simply DID NOT comply. As the Supreme Court has stated, when an agency uses these "outlaw forms," an individual may "refus[e] to answer these information collection requests." *Dole v. Steelworkers*, 494 U.S. 26, 40 fn6 (1990). Most importantly, by the IRS' use of the bootleg forms 1040 and schedule C, 44 U.S.C. § 3512 acts as a "complete defense" or a "bar" from "any penalty" for failing to provide information to the IRS. Thus, the government should be barred from bringing this action, and the indictment should be dismissed with prejudice.

Motion For Judgment of Acquittal        - 9 -                    Alan S. Richey
                                                                 Attorney at Law
                                                                 P.O. Box 1505
                                                                 Port Hadlock, Washington 98339
                                                                 (360) 437-4005

PDF created with pdfFactory trial version www.pdffactory.com

The government may try to argue that the PRA is not applicable in this case. The circuit courts were, prior to the amendment of the PRA in 1995, divided over whether the PRA was applicable in tax cases.

The Legislative History of the 1995 PRA clarified that the 1980 PRA was originally enacted to, among other things, "eliminate exemptions" for the "Internal Revenue Service". *House Report, 104-13, [page 8] at 171 (1995)*. This Report also directed that the difference between the language of the old section 3512 and the new section 3512 was to maintain the same purpose. The only reason it was modified to add certain terms was to maintain consistency and clarity and to "unequivocally cover all collections of information" *House R. [page 54] at 217*.

In the House Conference Report involving the 1995 PRA, No. 104-99 [page 36] at 248, the House and Senate agreed that, "the Senate bill contains a provision which changes the Act's current "public protection" provision by requiring a collection of information subject to the Act display a notice that a person is not required to respond to the collection of information unless it displays a control number which is valid."

In conclusion, the House and Senate reported that, "The conference agreement further provides for an additional modification....Agencies are now required to inform recipients of a collection of information that section 3512 requires an agency to inform a person who is to respond to a collection of information they are not required to do so unless it displays a valid control number." P.L. 104-13 [page 37] at 249.

The 10th Circuit described the 1980 "public protection provision" as:

Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and

Motion For Judgment of Acquittal       - 10 -                    Alan S. Richey
                                                                 Attorney at Law
                                                                 P.O. Box 1505
                                                                 Port Hadlock, Washington 98339
                                                                 (360) 437-4005

PDF created with pdfFactory trial version www.pdffactory.com

>does not display a current control number assigned by the Director [of OMB], or
>fails to state that such request is not subject to this chapter.

*U.S. v. Dawes*, 951 F.2d 1189 (10th Cir. 1991)

It is clear the changes between the 1980 Act and the 1995 Act was to remove any theory by which any Federal Agency could claim their request to the public was not subject to the Paperwork Reduction Act. (See removal of "or fails to state such request is not subject to this chapter," and replaced with "fails to inform the person who is to respond to the collection of information that such person is not required to  respond to the collection of information unless it displays a valid control number.") Further, the Forms 1040 and Schedule C specifically refer to the Paperwork Reduction Act, thereby acknowledging that the PRA applies to those forms. It is hard to imagine more evidence the Court would need to utterly repudiate the "statutory origin theory" that divided the Circuits between 1989 and 1992 regarding their position on the PRA.

At no time did the government enter evidence that the IRS gave Nadine Griffin such notice in compliance with the PRA of 1995. Nowhere on the Forms 1040 at issue in this case does the IRS give notice to Ms. Griffin of the duty Congress imposed upon the IRS to inform Ms. Griffin that she was not required to provide the information requested upon Form 1040 unless it displayed a valid OMB control number.

There can be no argument the government was not required to comply. See PRA Notice by IRS at www.IRS.gov. The Legislative History further clarified that the IRS must comply.

26 U.S.C. § 7206(1) provides a penalty applicable to "any person who" is found to have made a false and fraudulent statement to a material matter with the IRS. Arguably, this includes the 1040 request form. 44 U.S.C. § 3512 directs no person shall be subject to penalty (under section 7206) unless the 1040 request form displays a valid OMB control number and contains a

Motion For Judgment of Acquittal        - 11 -                                  Alan S. Richey
                                                                                Attorney at Law
                                                                                P.O. Box 1505
                                                                                Port Hadlock, Washington 98339
                                                                                (360) 437-4005

PDF created with pdfFactory trial version www.pdffactory.com

warning that Ms. Griffin was not required to comply with the 1040 request form unless it displays a valid OMB control number. It is clear that the government's case hinges upon the statements contained on the 1040 Forms and Schedule C for 1998 and 1999.

Because the 1040 request form for 1998 and 1999 contains changes from previous forms that were not presented to OMB for approval, in violation of 44 U.S.C. § 3507(g), because the number on 1040 request form 1545-0074 has appeared for years 1995, 1996, 1997, 1998 and 1999 (after passage of the 1995 PRA), in violation of 44 U.S.C. § 3507(h)(3), and because of the undisputed fact that the 1040 request form for years 1995 through present fails to contain the warning statement that the Defendant was not required to comply with the 1040 request form unless it displays a valid OMB control number, all in violation of 44 U.S.C. § 3512(a)(2), the Defendant raises the affirmative defense that she cannot be subject to any penalty for failure to comply with the 1040 request form for years 1998 and 1999.

Nadine Griffin is therefore entitled to the protection provided under 44 U.S.C. § 3512, meaning she is entitled to a complete defense or a bar from prosecution. This court should therefore grant judgment of acquittal and dismiss the indictment with prejudice.

**IV. The Government Failed To Prove Under State Law That The Funds Held In The Accounts Of CFS And Angelica Holdings Were Income To Ms. Griffin.**

The government alleged that the monies held in the trust bank accounts of CFS and Angelica Holdings were income to Nadine Griffin and the sole basis upon which they claimed she had substantial income that was not reported on Schedules C and Forms 1040. The government disregarded the trust entities, which it can only do upon proving alter ego or nominee.

PDF created with pdfFactory trial version www.pdffactory.com

As the court instructed the jury, state law governs an individual's interest in property. *Drye v. U.S.*, 528 U.S. 49, 58 (1999); *United States v. National Bank of Commerce*, 472 U.S. 713, 722-23 (1985)("[T]he federal statute 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'"), *citing United States v. Bess*, 357 U.S. 51, 55 (1958); *United States v. Murray*, 217 F.3d 59, 63 (1st Cir.2000).

Courts are to follow "the rule that the federal district courts are bound to abstain from deciding an issue regarding an unsettled question of state law [ ], until the state courts are given an opportunity to decide the question." Purse Seine Vessel v. Moos, 88 Wn.2d 799, 806-807, 567 P.2d 205 (1997). The Washington Supreme Court then cited the United States Supreme Court,

> Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. . . . That is especially desirable where the questions of state law are enmeshed with federal questions.

Id. citing Reetz v. Bozanich, 397 U.S. 82 (1970), wherein the Supreme Court reaffirmed this statement from its opinion in Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 640 (1959). In those circumstances, the district court is to certify the question to the State Supreme Court. Id.

The United States Supreme Court has ruled that "the only court that can interpret [a state] statute with finality [is that State's Supreme Court]." Purse Seine, 88 Wn.2d at 806, citing Leiter Minerals, Inc. v. United States, 352 U.S. 220, 229 (1957). The court found,

> Thus, the United States Supreme Court has approved the determination of questions concerning the meaning of state statutes by state courts, even where they may be at issue in a case in which the federal court has properly assumed jurisdiction. It is evident that, under this holding, the Federal District Court should have sought an answer to the questions involving the interpretation of this state's statutes from the courts of this state, before proceeding to issue orders which involved the department's statutory authority. The certification procedure provided in RCW 2.60 affords a simple and practical way of obtaining such

Motion For Judgment of Acquittal           - 13 -                    Alan S. Richey
                                                                    Attorney at Law
                                                                    P.O. Box 1505
                                                           Port Hadlock, Washington 98339
                                                                    (360) 437-4005

answers. See In Re Elliott, 74 Wn.2d 600, 446 P.2d 347 (1968). Had this procedure been followed, much litigation and the attendant conflict between the federal and state courts upon these questions would have been avoided. Id.

The government bore the burden of proving under state law that the property of the trusts, ie., the monies in the bank accounts of CFS and Angelica Holdings, were in fact the income of Ms. Griffin. The trusts were separate legal entities recognized by bankers and attorneys (Roger Macarelle and Ralph Ardiff). They could not be simply disregarded as the IRS attempted to do without showing such under the legal requirements. Mike Pleshaw figured the alleged tax loss based solely on the deposits made to the checking accounts of CFS and Angelica Holdings. He further alleged that those funds were the income of Nadine Griffin based on the relationship and control she had over the accounts. However, no one with the government or the IRS ever showed that under state law, the trusts could be disregarded and all the funds attributed to Ms. Griffin. The government did little more than allege that it was her income, with no proof of any determination under state law.

The government's witnesses testified at trial that Line 1 of Schedule C did not contain any false statement. In fact, the amount reported on the returns made for Ms. Griffin were actually correct. The question was whether the money tendered to CFS or Angelica Holdings was income that should have appeared on Line 1 of Schedule C. Since the government did not establish under State Law that State Law treated the income of CFS and Angelica Holdings as income to Ms. Griffin, the United States was forbidden from making any claim said money was due to be reported on Line 1 of schedule C to the form 1040 made and prepared for her by Joseph Cintron for the 1998 form 1040 and schedule C, as well as William Kittridge for the 1999

PDF created with pdfFactory trial version www.pdffactory.com

form 1040 and schedule C.

The government therefore failed to meet its burden of proof to show under state law that Ms. Griffin had an interest in the monies in the bank accounts of CFS and Angelica Holdings, property of those trusts. Therefore, this court should grant Ms. Griffins' motion for judgment of acquittal and dismiss the indictment with prejudice.

### V. The government failed to prove that Ms. Griffin had knowledge of a legal duty under state law to treat as income to her funds in the names of CFS and Angelica Holdings.

As more fully set out above in Section "I", the Government was required to prove beyond a reasonable doubt the Defendant was "aware of the specific provision of the tax code she is accused of violating."  Since how the accounting for CFS and Angelica Holding is treated is the question and that this question is answered under State Law, the Government did not enter any evidence of what State Law treated the earnings of CFS and Angelica Holdings as income to Ms. Griffin that was required to be reported upon Line 1 of schedule C to the Form 1040 for 1998 and 1999.  Without showing what State Law the Defendant should have been aware of in this regard, there is absolutely no way the jury could have considered whether the Defendant was aware of this State Law supporting the Government's hypothetical theory of accounting.

If, in the alternative, it was not state law but federal law that determined that funds held by the trusts in the trusts bank accounts were actually income to Ms. Griffin, the government failed to prove what specific tax statute governed that determination and that Ms. Griffin was aware of that specific statute. Either way, the government failed to establish any law, state or federal, that Ms. Griffin was aware of and that could be the legal standard for determining that property of separate persons (trusts) was income to Ms. Griffin.

Motion For Judgment of Acquittal       - 15 -                          Alan S. Richey
                                                                       Attorney at Law
                                                                       P.O. Box 1505
                                                                       Port Hadlock, Washington 98339
                                                                       (360) 437-4005

PDF created with pdfFactory trial version www.pdffactory.com

### VI. The Government Wrongfully Introduced Co-Conspirator Statements And Then Failed To Prove A Conspiracy, Thus Prejudicing The Jury.

During the trial, the government sought to introduce tapes made by Keith Anderson and marketed by Global. These tapes allegedly contained statements regarding the illegality or unconstitutionality of the income tax, getting out of the system by not using your social security number, not having a driver's license, etc. The court cautioned the government that under ER 8019d)(2)(E), if they say it is a conspiracy, the court must treat it as such. The court also stated that under the test set forth in *United States v. Petrozziello*, 548 F.2d 20 (1st Cir.1977), if the evidence does not show that Ms. Griffin was a co-conspirator, the evidence must be stricken and a mistrial granted because the jury heard the evidence. The court further informed them that pursuant to *United States v. Ciampaglia*, 628 F.2d 632 (1st Cir.), *cert. denied*, 449 U.S. 956 (1980), the court must make that determination at the close of the government's case and at the close of all the evidence.

> To prove the elements of the crime of conspiracy, the government must show the existence of a conspiracy, the defendant's knowledge of the conspiracy and the defendant's voluntary participation in the conspiracy. More specifically, to establish that a defendant belonged to and participated in a conspiracy, the government must prove two kinds of intent: "intent to agree and intent to commit the substantive offense."

*United States v. Perkins*, 926 F.2d 1271, 1282 (1st Cir.1991), *citing United States v. Gomez Pabon*, 911 F.2d 847, 852 (1st Cir.1990).

After these cautions, the government not only offered over objection the tapes but also other statements regarding people at Global and statements of Margo Cetori, alleging that Ms. Griffin may have been a co-conspirator not only of Keith Anderson, but possibly a co-conspirator of Global, of William Kittredge (as he was granted immunity for his testimony), of Margo Cetori (who plead guilty to tax evasion), and of Becky Coggins (who plead guilty to a tax related crime). All of these individuals were associated with Global. These statements were

Motion For Judgment of Acquittal          - 16 -                    Alan S. Richey
                                                                    Attorney at Law
                                                                    P.O. Box 1505
                                                                    Port Hadlock, Washington 98339
                                                                    (360) 437-4005

PDF created with pdfFactory trial version www.pdffactory.com

not only unfairly prejudicial, but the government then failed to prove any conspiracy. Therefore, a mistrial should be granted on the second count for which the jury found Ms. Griffin guilty.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this Court acquit Nadine Griffin because the government failed to sufficiently charge and failed to prove the necessary elements for the case to even go to the jury. The evidence presented by the government was insufficient to sustain a conviction under 26 U.S.C. § 7206. Further, the government is barred from bringing the charges based on their intentional violation of 44 U.S.C. § 3512. Therefore, an acquittal and dismissal of the indictment with prejudice is appropriate.

Dated this 2nd day of August, 2006.

    /s/ Alan S. Richey
Alan Stuart Richey, WSBA # 30578
Counsel for Nadine J. Griffin, defendant
P.O. Box 1505, Port Hadlock, Washington 98339
Phone: (360) 437-4005
Email: asratty@gmail.com

Certificate of Service

I HEREBY CERTIFY THAT the foregoing was served on counsel for the government through the Court's ECF system.

    /s/ Alan Richey
Alan Richey

PDF created with pdfFactory trial version www.pdffactory.com