UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) Criminal No. 05-CR-10175-WGY-1 |
| | ) |
| v. | ) |
| | ) |
| **NADINE J. GRIFFIN,** | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL**

The United States of America, by and through undersigned counsel, hereby submits its Response to Defendant's Motion for Judgment of Acquittal and respectfully requests that defendant's motion be denied.

**I.   Federal Rule of Criminal Procedure 29 & Sufficiency of the Evidence**

Under Rule 29(a) of the Federal Rules of Criminal Procedure, the court "must enter a judgment of acquittal of any offense for which evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  In considering a motion for judgment of acquittal under Rule 29(a), the court must look at the evidence in the light most favorable to the government.  United States v. Sampson, 335 F. Supp.2d 166, 201-202 (D. Mass. 2004); United States v. Pappathanasi, 383 F. Supp.2d 289, 290 (D. Mass. 2005). "The court must decide if the evidence is sufficient to permit a rational jury to find each essential fact to have been proven

beyond a reasonable doubt."  Id.

## II.  Factual Background

At trial, the evidence showed that in or around 1996, defendant began working as a salesperson for Global Prosperity ("Global"), an organization modeled after a multi-level marketing company that used a network of salespersons to sell audio cassette tapes and tickets to "offshore" seminars.  The evidence also showed that by 1998 and 1999, defendant was one of Global's top salespersons.

The evidence showed that defendant, like other Global salespersons, sold three products and retained 80% to 90% of the sales price.  The three products included: (1) a 12-tape audio cassette series entitled Gateway to Financial Freedom (hereinafter "Global I") priced at $1,250; (2) tickets to a three-day offshore seminar called Global II retail priced at $6,250 per ticket; and (3) tickets to a five-day offshore seminar called Global III retail priced at $18,750 per ticket.  The seminars were held in such exotic places as Aruba, Bermuda, the Bahamas, and Cancun, Mexico.  Typically, seminars were held at least two to three times a year, and attendees at the seminars ranged from 500 to 1500 people per seminar.  Global salespersons, like the defendant, also received incentives called "revenue reimbursements" if they recruited more people to attend the offshore seminars.

During the years 1998 and 1999, defendant Griffin was extremely successful at selling the tapes and tickets, as well as recruiting individuals to attend the seminars. At trial, the evidence showed that defendant received more than $800,000 in gross receipts as a salesperson over the two years, but that none of the money was reported on either income tax return for 1998 or 1999.

Although defendant did not report her sales activity for Global on the 1998 and 1999 tax returns, she did report on those tax returns the gross receipts she earned as a salesperson for two other multi-level marketing businesses, ProStep and Melaleuca, which totaled less than $40,000 each year. In fact, prior to joining Global, from 1993 through 1997, defendant never reported on her income tax returns more than $50,000 in sales from ProStep and Melaleuca.

The evidence at trial showed that defendant deposited her Global sales receipts into two bank accounts at Danvers Savings Bank using two different nominee business names: (1) Capital Finance Strategies, and (2) Angelica Holdings. When opening both bank accounts, defendant provided no social security number or taxpayer identification number (also known as a "TIN"). Instead, defendant provided the bank with a fraudulent Form W-8 (Certificate of Foreign Status) claiming that the bank accounts were owned by a foreign entity or nonresident alien and not

subject to U.S. tax withholdings. This was done with the intent to conceal from the government her connection to the bank accounts. Further, both bank accounts were non-interest bearing, which meant the money deposited into the bank accounts did not earn interest and which did not require the bank to report any interest to the IRS.

The Capital Finance Strategies ("CFS") account was opened on October 21, 1997. Defendant maintained sole signature authority over this bank account. The Angelica Holdings ("AH") account was opened on June 18, 1998. Defendant and her father, James Griffin, shared signature authority over this bank account, but there was no evidence that Mr. Griffin deposited any money into either account. On both signature cards, defendant claimed she was the "managing director" of the account.

As noted earlier, defendant's 1998 and 1999 tax returns only reported the sales from ProStep and Melaleuca, and defendant hired tax return preparers to prepare the returns. Mr. Joseph Cintron prepared defendant's 1998 tax return, and prior to preparing that tax return, he had prepared defendant's 1994, 1995, 1996, and 1997 income tax returns. In preparing the 1998 tax return, defendant provided Mr. Cintron with financial information relating to her work as a salesperson for ProStep and Melaleuca, including Forms 1099 (Miscellaneous Income) from ProStep and Melaleuca. Defendant's 1998 tax return and related

schedules reported total gross receipts of $31,348.01, business expenses of $15,177.86, and total income of $13,302.78. However, defendant failed to disclose or provide to Mr. Cintron any sales information relating to her sale of Global products. In fact, defendant did not even tell Mr. Cintron that she was working as a salesperson for Global. As a result, the failure of defendant to provide this information resulted in a false tax return, and defendant knew the return was false.

In April 2000, defendant hired Mr. William Kittredge to prepare her 1999 tax return. At that time, Mr. Kittredge and defendant had known each other for at least five years. They met in the early to mid-1990s when both were salespersons for Melaleuca. They met again in or around 1997 when both worked as salespersons for Global Prosperity. In preparing the 1999 tax return, defendant provided Mr. Kittredge with financial information relating to work as a salesperson for ProStep and Melaleuca. As with Mr. Cintron, defendant never provided Mr. Kittredge with any financial information relating to her Global sales that she made in 1999. As a result, Mr. Kittredge prepared the 1999 tax return using only the financial information from ProStep and Melaleuca.

Defendant used the proceeds from her sales of Global products to purchase various personal items. For instance, in June 1998, defendant purchased a Lincoln Town Car. On the

5

purchase application form defendant claimed that she made approximately $100,000 in gross income a year.  Defendant also made a down payment of $4,500 with a check from the CFS bank account.  The title of the vehicle was in defendant's name.

In August 1998, using the proceeds from her sale of Global products, defendant purchased a single family home located at 142 Locust Street in Danvers, Massachusetts.  Defendant had been renting the home since early 1997 and paying approximately $2,000 in rent per month.  In June 1998, just before the purchase of the house, defendant transferred $240,000 from her CFS account to the Angelica Holdings account.  In August 1998, defendant purchased the home for approximately $325,000 with a down payment of approximately $189,103.65 which came from the Angelica Holdings bank account.  Defendant attempted to title the home in the name of Angelica Holdings and submitted an alleged trust document to the bank, in an attempt to obscure and conceal her connection to the property.  However, the bank's closing attorney refused to use the purported trust document and instead had the home titled in the name of "Angelica Holdings Realty Trust," in which defendant was named the trustee over the property.  During the years 1998 and 1999, defendant lived in the house, paid the monthly mortgage payments, utilities, and was obligated to repay the loan.

**III. Discussion**

To establish a violation of 26 U.S.C. § 7206(1), the government was required to prove that (1) defendant made, subscribed, or caused to be filed, a federal income tax return for the year in question which defendant verified to be true; (2) that the return in question contained a written declaration that it was made under the penalty of perjury; (3) that the tax return was false as to a material matter; and (4) that defendant signed the return willfully and knowing it was false with the intent of violating her duty under the tax laws and not as a result of accident, negligence or inadvertence. 26 U.S.C. § 7206(1); see also United States v. Boulerice, 325 F.3d 75, 79-80 (1st Cir. 2003); United States v. Badwan, 624 F.2d 1228, 1232 (4th Cir. 1980).

In this case, reviewing the evidence in the light most favorable to the government a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Boulerice, 325 F.3d at 79 (citation omitted).

    a.   Made or Caused to be Made -Element # 1

In regard to the count of conviction (Count II), the evidence showed that defendant "made or caused to be made" a false 1999 individual income tax return. The evidence showed that defendant hired William Kittredge, a tax return preparer, to prepare her 1999 return, and that Mr. Kittredge prepared that

return based solely on the information provided to him by defendant Griffin. See Badwan, 624 F.2d at 1232 (rejecting argument that defendant had to "make" the return to fall within the ambit of § 7206(1), and that defendant could be prosecuted under statute since their returns were prepared by an accountant, who prepared the returns based solely on information provided by defendant).  Accordingly, the jury could have found that defendant made or caused to be made the false 1999 income tax return.

Defense counsel argues that the government failed to prove that defendant "made" the return and that the Court's instructions regarding this element of the crime were improper. Defendant's argument lacks merit.

Defendant Griffin propounds a similar argument that was made in Badwan, 624 F.2d at 1232.  That is, in Badwan, the defendants argued that they did not "make" the return, as required by § 7206(1), because their tax returns were prepared by an accountant.  On appeal, the Fourth Circuit rejected the argument that the defendants had to actually prepare the return:

> The evidence did clearly show, however, that the accountant who prepared the returns did so solely on the basis of information provided to him by the Badwans, and that the Badwans then signed and filed the returns.  This satisfies the statute.

Badwan, 624 F.2d at 1232.

8

In this case, defendant hired Mr. Kittredge to prepare her return, and she alone provided him the information to prepare that return. Defendant signed the 1999 tax return, and the evidence at trial showed that the 1999 tax return was filed with the IRS. Accordingly, the evidence showed that defendant "made" the return.

    b.   <u>1999 Tax Return was Materially False -Element # 2</u>

The evidence also showed that defendant's 1999 tax return was materially false in that the return omitted more than $176,000 of Global sales that defendant made in 1999. The jury could have reasonably inferred that the failure to include more than $176,000 on her return was material and could influence the IRS's determination of whether the tax return was accurate. <u>Siravo v. United States</u>, 377 F.2d 469, 472 (1st Cir. 1967); <u>United States v. Boulerice</u>, 325 F.3d 75, 82 n.3 (1st Cir. 2003).

    c.   <u>1999 Tax Return Signed Under Penalties of Perjury - Element # 3</u>

The 1999 tax return contained the standard perjury jurat: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." Defendant's signature appears on the 1999 tax return. 26 U.S.C. § 6064 (named signed to return is a prima facie evidence the individual named actually signed the return); 28 U.S.C. § 1731 (identified handwriting admissible to prove

genuineness of questioned handwriting); Fed. R. Evid. 901(2) & (3). Thus, the evidence shows that the government proved this element beyond a reasonable doubt.

  d. <u>Willfulness -Element # 4</u>

  Finally, the evidence showed that defendant acted willfully, in that she voluntarily and intentionally violated a known legal duty. <u>Cheek v. United States</u>, 498 U.S. 192 (1991); <u>Boulerice</u>, 325 F.3d at 80 (citation omitted). "The government need not present direct evidence of willfulness; rather, circumstantial evidence of willfulness can be sufficient to sustain a conviction." <u>Boulerice</u>, 325 F.3d at 80 (citation omitted); <u>see also</u> <u>United States v. Olbres</u>, 61 F.3d 967, 971 (1st Cir. 1995) ("[I]n proving tax evasion, 'the government does not need to show direct evidence of tax motivation' so long as the jury has a sufficient circumstantial basis for inferring willfulness.") (citation omitted).

  In this case, the evidence at trial showed that defendant knew she had a duty to report all of her gross sales from Global products because defendant had reported on her 1999 income tax return the gross sales she made as a salesperson from two other companies, Melaleuca and ProStep. Thus, the jury could reasonably infer that defendant knew she had a duty to report her Global sales since she had reported her gross sales from two other multi-level marketing companies.

Further, since 1993 defendant had filed individual income tax returns (Forms 1040 and accompanying Schedule C) and reported on these returns and each Schedule C the gross sales she made as a salesperson for various multi-level marketing companies. Accordingly, a jury could infer that defendant knew of her duty under the law to report her Global sales.

Also, defendant's signature appears on each tax return filed from 1993 and up to 1999, the count of conviction, which the jury could infer that she read and understood the contents of the return. Boulerice, 325 F.3d at 80 ("[a] jury may permissibly infer that a taxpayer read his return and knew its contents from the bare fact that he signed it."); see also United States v. Drape, 668 F.2d 22, 26 (1st Cir. 1982) (holding that defendant's signature on tax return sufficed to establish knowledge of incorrect contents); United States v. Romanow, 509 F.2d 26, 27 (1st Cir. 1975) (holding that "jury could conclude from nothing more than the presence of [defendant's] uncontested signature" that violation was willful).

Moreover, several witnesses testified that defendant was personally and directly involved in the sale of the tapes and tickets, and that defendant instructed her customers to write checks to her using the name CFS or Angelica Holdings. The testimony from customer witnesses showed that defendant knew the checks, money orders, and cashier checks that she received for

11

the sale of the tapes and tickets belonged to her. In fact, defendant treated the money as her own. For instance, defendant used a portion her Global sales as a down payment on the purchase of a home, specifically $189,103.65.

Further, defendant's withholding of financial information, such as bank statements and checks from CFS and Angelica Holdings, from her tax return preparers, which would have pointed to the existence and extent of the undeclared Global sales, is further evidence from which the jury could infer willfulness. Olbres, 61 F.3d at 973 ("withheld materials from the accountant (and, later, from the IRS auditor) that would have pointed to the existence and extent of the undeclared income . . . enabled a rational jury to conclude, beyond a reasonable doubt, that the defendants were guilty of income tax evasion for the year 1987.")

Other compelling proof that defendant must have been aware that the 1999 tax return was false is simple arithmetic. Id. at 971 ("The most compelling proof that the defendants knew that the figure reported on their 1987 return substantially understated their true income is the product of simple arithmetic."). In this case, defendant's 1999 return and accompanying Schedule C reported $30,127.00 in gross sales. However, the amount of money deposited into the two bank accounts that she controlled (CFS and Angelica Holdings) totaled more than $176,000, which significantly exceeded the gross sales she reported on her 1999

12

income tax return.

Other proof the jury could have used to infer that defendant knew she had to report her Global sales was the testimony of Margo Satory (Jordan). Ms. Satory (Jordan) testified that defendant told her that she (defendant) was reporting the money she made from ProStep so as not to raise red flags with the government, but that she (the defendant) was not reporting her Global sales. Further, Ms. Satory (Jordan), as well as Ms. Becky Coggins, explained that salespersons, like the defendant, were working for themselves. Accordingly, this was direct, as well as circumstantial, evidence that showed defendant knew she had to report her Global sales on her income tax returns.

In addition, counsel's vague assertion that defendant was not "sophisticated" belies the evidence produced at trial. The evidence showed defendant was a successful, business-savvy woman. Defendant marketed and sold audio cassettes and offshore seminar tickets to dozens, if not hundreds, of individuals. In fact, at least three witnesses testified that defendant was one of Global's top salespersons. Thus, the jury could infer that defendant was knowledgeable about finances and business-acumen. In fact, defendant's receipt of revenue reimbursements also shows that defendant understood that the more people she recruited into Global to attend the seminars, the more money she could earn.

The evidence presented at trial clearly established that defendant was well aware of her legal duties under the law. In fact, it bears repeating, that defendant filed her 1998 and 1999 income tax returns with the IRS and reported on these returns the money she made from her work at two other multi-level marketing companies. In short, there is an abundant amount of evidence from the trial record to conclude that defendant acted willfully, in that she voluntarily and intentionally violated a known legal duty.

Defendant also claims that she should escape criminal liability because her Global sale proceeds went to the purported "trusts" of CFS and Angelica Holdings. The government's evidence, and its theory at trial, was that CFS and Angelica Holdings were simply bank accounts that defendant exclusively used for her personal benefit. Defendant alone opened the accounts, and defendant alone controlled the money that went into and out of the bank accounts. In short, the jury could reasonably infer that defendant's use of these bank accounts (CFS and Angelica Holdings) was a way to hide and conceal her Global sales from the government, which was the government's theory at trial. Olbres, 61 F.3d at 972 ("option to choose between . . . inferences belong[s] to the jury, not the judge" (citing United States v. Guerrero-Guerrero, 776 F.2d 1071, 1075 (1st Cir. 1985)).

## IV. Willfulness and Knowledge of Specific Section of United States Code

Throughout her motion, defendant asserts that she did not act willfully because she was unaware of the specific provision of the tax code, that is 26 U.S.C. § 7206(1), which makes it a crime to file a false return, or other document. Defendant cites Bryan v. United States, in which the Supreme Court stated, in dicta, that a "jury must find the defendant was aware of the specific provision of the tax code that he was charged with violating." 524 U.S. 184, 194 (1998). Based on this one statement in Bryan, the defendant claims that the government was required to prove that "defendant was aware of the specific provision of the tax code that she was charged with violating." Def. Mot. at 4. Defendant's interpretation of the definition of willfulness is misleading and an inaccurate statement of the law.

The controlling case law discussing the definition of willfulness in a criminal tax prosecution is Cheek v. United States, 498 U.S. 192 (1991). In Cheek, the Court explained that the "statutory willfulness requirement is the voluntary, intentional violation of a known legal duty." Cheek at 201; United States v. Boulerice, 325 F.3d 75, 80 (1st Cir. 2003). The Court also explained in the Cheek opinion that "[w]illfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he

voluntarily and intentionally violated that duty." Id. Accordingly, defendant's assertion that willfulness requires the government prove that defendant knew of the specific statute she is charged with violating is inaccurate.[1]

## V.     Paperwork Reduction Act

Defendant also argues that IRS Form 1040 violates 44 U.S.C. § 3507 and § 3512, sections of the Paperwork Reduction Act ("PRA"), and thereby make it inappropriate to charge defendant with filing false income tax returns. Defendant, however, provides no case law to support her claim, and, moreover, other courts that have addressed this issue have held repeatedly that this legislation ("PRA") does not invalidate the statutory requirement to file tax returns and pay the taxes due. See U.S. v. Ouwenga, 173 Fed. Appx. 411 (6th Cir. 2006); United States v. Wunder, 919 F.2d 34, 38 (6th Cir. 1990); see also United States v. Ryan, 969 F.2d 238, 240 (7th Cir. 1992); United States v. Hicks, 947 F.2d 1356, 1359 (9th Cir. 1991); United States v. Kerwin, 945 F.2d 92, 92 (5th Cir. 1991). Defendant offers no reasoned explanation for finding otherwise. Further, if Congress wanted to eliminate Title 26, and taxpayers' duty to file and

---

[1] Defense counsel also alleges that the government was required to prove that defendant had knowledge under state law the "funds in the name of CFS and Angelica Holdings" were income to her. Def. Mot. at 15. As previously noted, the government's burden was to show that defendant "voluntarily and intentionally violated a known legal duty," that is, her legal duty to report and file accurate federal income tax returns. Cheek v. United States, 498 U.S. 192 (1991).

report income, then it could enact legislation to that effect. However, Congress has never taken such action. Defendant simply ignores reality and is "whistling past the graveyard."

## VI. Co-Conspirator Statements

Defendant's allegation that the government wrongfully introduced co-conspirator statements at trial and failed to prove a conspiracy is wrong and misstates the trial record. First, although there was a colloquy between the Court and government regarding the use and admissibility of co-conspirator statements, the government **never** proffered to the Court that it was intending to introduce evidence of a conspiracy. Regardless, although the government did not proffer to the Court that it intended to prove a conspiracy, there was sufficient evidence in the record for the Court to have found by a preponderance of the evidence that defendant was part of a conspiracy. Further, the government offered the tapes as either non-hearsay or as an adoptive admission under Fed. R. Evid. 801(d)(2)(B). Accordingly, the admission of the tapes was proper.

**VII. Conclusion**

Based on the foregoing, the government respectfully requests that the Court deny defendant's motion for judgment of acquittal.

                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                  United States Attorney

By:
                                  /s/ *Christopher J. Maietta*
                                  CHRISTOPHER J. MAIETTA
                                  Trial Attorney
                                  U.S. Department of Justice


                                  /s/ *John N. Kane*
                                  JOHN N. KANE
                                  Trial Attorney
                                  U.S. Department of Justice


Dated: August 16, 2006

CERTIFICATE OF SERVICE

    This is to certify that I have this day, August _____, 2006, served upon the person listed below a copy of the foregoing document by mail:

        Alan S. Richey, Esq.
        P.O. Box 1505
        Port Hadlock, Washington 98339
        (360) 437-4005


                                  _____
                                  Christopher J. Maietta