UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 05-cr-10175-WGY-1 |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| NADINE J. GRIFFIN, | ) | |
| Defendant. | ) | |

COMES NOW the Defendant Nadine Griffin, by and through her attorney of record, and files this sentencing memorandum recommending the following:

Tax loss -- more that $30,000 but less that $80,000; base offense level a **13**

Acceptance of responsibility; downward **2**

Offense level **11**, **Zone C**, **Category I**, 8-14 months

Further downward departure for Family Ties and Responsibility

Defense recommendation: **0-6 months incarceration, 3 years probation, no restitution or fines imposed.**

In support of the above recommendation by the Defense, and in objection to the presentence report prepared by probation in this case, Defendant submits the following:

As the probation officer admits, he relied on and prepared the presentence report (PSR) based on hearsay statements of opposing counsel rather than the testimony and evidence admitted at trial. PSR ¶ 9. Probation admits, the "statement of the offense was submitted by [the] Assistant United States Attorney," and it was merely "edited by the Probation Office." PSR ¶ 9. Therefore, Defendant objects to the use of all hearsay

Defendant's Sentencing Memorandum    - 1 –

statements. Because the probation officer failed to distinguish what information was obtained from various sources, Defendant objects to the PSR in its entirety because the entire PSR is tainted by the hearsay statements of the Assistant United States Attorney and because probation failed to do an independent investigation to determine the true facts.

Further, there is clear bias against Defendant in the PSR. Probation took the government's allegations as fact without doing any independent investigation as to what evidence was entered at trial. This bias will be more fully demonstrated throughout this document by pointing to the details of the inaccuracies. This bias is clear inasmuch as probation cites the government's interpretation or position as "facts," whereas when citing to the Defendant's statements, probation uses words like Defendant "reports," "notes," "states," "advises," etc. PSR ¶ 56-59. Thus, there is an attitude of doubt or skepticism with Defendant's statements, whereas there is an attitude of matter-of-fact with statements from the government. Probation has therefore demonstrated a clear bias against Defendant.

10. The charge was willfully making and subscribing a false return, not "willfully filing a false return" as alleged. PSR ¶ 10.

11. Probation wrongly claims "the government presented evidence that showed Ms. Griffin knowingly filed two false tax returns." PSR ¶ 11. This is incorrect, because the jury only found that Ms. Griffin willfully made and subscribed one false tax return—1999. If the government had shown both years, the jury would have convicted on Count

Defendant's Sentencing Memorandum    - 2 –

One, which it did not. Thus, the government did not show "Griffin knowingly filed [a] false tax return" for the year 1998.

Probation erroneously claims the government showed that Ms. Griffin "failed to report more than $900,000.00 in gross receipts." PSR ¶ 11. Rather, the government only showed what was in the bank accounts of two trusts—CFS and Angelica Holdings. Claiming bank account deposits and gross receipts are the same is not factually or legally true.

Probation errs by claiming, "the amount of unpaid taxes … totaled $285,090.15." PSR ¶ 11. It is obvious that neither the government nor probation want to accept the jury's finding of what the tax loss was. On the verdict form, the jury found the total tax loss, not just the tax loss for 1999. The verdict form specifically says, "Amount of tax loss" and has the box checked for $30,000 or more but less than $80,000. Any other amount than what the jury found cannot be substantiated. Also, the IRS even failed to perform an assessment.

13. Probation erroneously claims, "The products sold by Global and its salespersons promoted and encouraged individuals to stop paying income taxes." PSR ¶ 13. The witnesses who testified at trial stated that the Global materials and seminars taught how to legally avoid taxes, and no one thought it was illegal. Further, the emphasis was not taxes but investments, wellness, etc.

14. The testimony was that taxes were only a small part of the tapes, and that particular series of tapes was the first series, and it was replaced after a few months. The

Defendant's Sentencing Memorandum    - 3 –

other series of tapes had different emphasis in its seminars. The emphasis was not "anti-tax", rather it was tax avoidance. Some witnesses even testified that they still had investments, so it was not "fraudulent investment schemes." PSR ¶ 14. Although Ms. Griffin did attend the seminars, she did so only through the first half of 1999. Further, she was never "a speaker at the seminars." PSR ¶ 14. The evidence showed that she merely introduced speakers.

17. Some witnesses testified, and there was evidence admitted, showing that individuals also sent personal checks which were accepted without problems or incident. Thus, the purpose was not to prevent the government from tracking the payments (as some even included the payments on their tax returns), but to protect from bounced checks and because that is what Global taught.

20. The purpose was not greed. PSR ¶ 20. Witnesses testified they wanted to associate with Ms. Griffin because she was successful and helped others become successful, instructing and working with them to achieve and succeed. Ms. Griffin is not a financial advisor. Ms. Melson had to make a decision which she made along with her family, and she testified that Ms. Griffin never encouraged her to get any loan. The bankers gave her the loan and credit cards charge high interest rates, but the government is not going after them alleging "greed." Ms. Melson wanted to be like Ms. Griffin. Ms. Melson, like Ms. Griffin, only had a high school education. Ms. Griffin was not successful prior to Global as her tax returns for prior years show, so others, including Ms. Melson, could also become successful.

Defendant's Sentencing Memorandum    - 4 –

21. Ms. Griffin never solicited anyone to invest, and there was no evidence of such. Speakers and presenters at the seminars were who solicited investments. Global told individuals they needed to check out the investments before getting involved. Ms. Griffin also invested and lost money. Others invested and made money. It was a risk, like any investment.

22. Money is not "hidden" if it is in a bank account in the Commonwealth of Massachusetts. Further, for any transaction over $10,000, the bank would have sent a currency transaction report to the IRS, so the IRS knew of all the funds in the accounts. Probation used the term "nominees," but this is a legal term which requires specific proof, something the government refused to do at trial. The bank never required her Social Security Number or anything else to open the accounts. The bank has never alleged it was defrauded by Ms. Griffin in setting up the accounts.

23. The government never proved the W-8 was a fraud. The W-8 is a form created either by the IRS or the Department of Treasury with the instructions already on it. Ms. Griffin did not create or make the form. The Bank accepted and relied upon the W-8 and was obviously familiar with the form and had procedures on what it required. The W-8 was for the trusts, not for Ms. Griffin .personally. She had been instructed to keep the trust and her personal matters separate, just as a corporation is kept separate from its officers.

Defendant's Sentencing Memorandum    - 5 –

24. Probation alleges, "all of the checks written out of the bank account [of CFS] contain Griffin's signature." PSR ¶ 24. This is unsubstantiated, as the government never produced "all of the checks" for CFS. "Managing director" was not a term or "claim" Ms. Griffin just made up, rather it was a legal term in the trust documents and something she was instructed on. Checks for cash were also for contractors working on the trust house, as the contractors gave discounts if paid in cash.

27. Probation raises the facts that Ms. Griffin filed and paid her taxes late at times. PSR ¶ 27. This is not evidence of wrongdoing and should be struck from the PSR, as it has no relevance. Further, she even had to pay interest and penalties, which she did pay. These prior acts cannot be proof of her knowledge of the law—an attempt by the government to shift the burden of proof without proving a necessary element (knowledge of the law). The duty arises from a particular statute, which the government refused to prove. Further, Global required all to have a trust or they would not get paid, especially the revenue reimbursement checks. Further, Global instructed not to report the trust funds as personal income.

28. Ms. Griffin received 1099s from the companies, which is how she knew what should be reported. If Global had sent Ms. Griffin a 1099, she would have provided it to her CPAs, as it would have had her social security number on it. Ms. Griffin did disclose to Mr. Cintron that she worked in Global, as Mr. Cintron admitted he had the tape series (G-I) and that his wife was likely involved in Global as well, thus he said he likely knew.

The government failed to prove to the jury that the 1998 form was false. Ms.

Defendant's Sentencing Memorandum      - 6 –

Griffin did not "know" it was false, as she was instructed at Global that it was not her income.

29.  Understandably, probation (and the government) leaves out the facts that Mr. Kittredge knew how Global operated, that he knew of the CFS and Angelica Holdings trusts, he worked for the IRS specializing in "underreporting", and he had at least one bank document showing the trust owned the house. Therefore, he could have reported such as income in the 1999 return, but he chose not to because it was not in Ms. Griffin's name and so advised her.

30.  The Lincoln Town Car was a used vehicle and was older than the car Ms. Griffin traded in (which was a 1996). The home was in foreclosure by the bank who wanted to sell it quickly, and it was not purchased by Ms. Griffin but by Angelica Holding trust, with documents prepared and approved by attorneys.

31.  Ms. Griffin did not hide anything. The down payment on the car was a loan from CFS. The approximation of income half way through the year cannot be reflective of what was earned the prior year.

32.  Ms. Griffin did not purchase the home, but Angelica Holding Trust did. The check for the down payment came from Angelica Trust. Title was also in the name of the trust. The government and probation want to ignore all the legal documents. It is obvious that the figure of $45,000 per month was error and that $4,500 is likely what was meant.

Defendant's Sentencing Memorandum   - 7 –

The bank did not think it was deceived and certainly did not think the figure of $45,000 per month was correct and relied on it.

33. There is no evidence that title was put in the name of Angelica Holdings Trust "for the sole purpose of making it more difficult for the government to learn who owned the property" as alleged by probation. In fact, all legal documents show who owned the property, so the government should have had no difficulty reading the documents and even seeing who signed them. Further, the court even instructed that it is legal and appropriate to hold title in a trust.

It is only alleged that IFC "promoted tax evasion schemes," that they used "fraudulent trusts" as well as "nominee bank accounts." The money was not hidden from the government if it was held in bank accounts by banks that report monetary transactions to the government. These are legal conclusions which probation (and the government) alleges as facts that were not proven. There was no evidence presented that "Griffin personally knew the leaders" as alleged; Jeff Lewis, trustee, claimed he never met or spoke with Griffin, and no one else from IFC nor Ms. Griffin testified. Probation should disclose the source of its clearly erroneous alleged facts.

34. There was no determination by the bank or the court that the trust document or the trust itself was "fraudulent." The trust documents prove and Jeff Lewis admitted that he was in fact the trustee of Angelica Trust, so that is not an allegation. Interestingly, throughout the entire PSR, probation (and the government) use the word "allege" for actual facts while they make claims of facts and legal conclusions which are only

Defendant's Sentencing Memorandum    - 8 –

allegations.

Lewis did not know about the purchase of the house because he willfully closed his eyes and chose not to read or review the documents he signed. Further, he testified there was no way that Ms. Griffin could know that he did not read or review the documents he signed.

35. Ms. Griffin did not try to hide anything; she did what her attorney and the bank's attorney asked her to do. The property was held by the trust, and as the court instructed, he (the judge) is a trustee but that does not make the assets his.

38. Acceptance of Responsibility. In determining acceptance of responsibility, a sentencing court cannot consider against a defendant any constitutionally protected conduct whether it occurs before or after entry of a verdict. *United States v. Watt*, 910 F.2d 587 (9th Cir.1990). A defendant may be entitled to a reduction of sentence for acceptance of responsibility even when a defendant goes to trial and puts the government to its burden. *United States v. Johnson*, 956 F.2d 894 (9th Cir.1992).

In this case, probation does not allow for a reduction pursuant to USSG § 3E1.1 because it claims, "The defendant went to trial in this instance, [and] did not admit guilt." (PSR ¶38). Because a defendant has a constitutionally protected right to go to trial, it is unconstitutional and contrary to the law to not allow a reduction based on making the government prove its case at trial. Ms. Griffin had a good argument to make at trial, as evidenced by a hung jury on Count One. A defendant need only accept responsibility for the offense convicted of. *U.S. v. Perez-Franco*, 873 F.2d 455, 458-63 (1st Cir.1989).

Also, Ms. Griffin has a constitutionally protected right to remain silent. She does not waive her right to remain silent and will only waive that right if and when she willingly, knowingly and voluntarily determines to do so. It is unconstitutional for the government, including probation, to refer to her remaining silent, and it cannot be used against her when she refuses to be a witness against herself and remains silent.

It should also be pointed out that from the time the IRS began investigating Ms. Griffin and Global, Ms. Griffin cooperated with the IRS and the U.S. attorneys. She was interviewed by them multiple times and gave them plenty of information which they likely used against the Global founders and even used in prosecuting Ms. Griffin. Ms. Griffin left Global in June 1999, long before the government began investigating Global. Ms. Griffin never promoted or sold tickets to the G4 and spoke out against it. She also resigned and notified the trustees.

Further, the primary factor in denying acceptance of responsibility under USSG § 3E1.1 is obstruction of justice, which is not alleged here.

41. This paragraph is irrelevant and should be struck from the PSR. Further, it is unclear what acts or omissions committed "defendant is accountable for" or were "caused by defendant." Probation needs to disclose what particular "acts and omissions" it is referring to. Because these are general, generic allegations, they must be struck. Further, if probation is referring to anything done by Mr. Cintron or Mr. Kittredge, Defendant objects inasmuch as they are both professionals and testified that they advised Ms. Griffin, that she was unsophisticated as to tax matters, and that they chose which tax forms they made based on their expertise. Both testified, especially Mr. Kittredge

regarding the 1999 return, that they did not know, even at the time of testifying at trial, of anything that was false on the tax forms and still believed them to be true.

42.  The jury specifically found the tax loss, not a partial tax loss. Even though the government and probation do not like what the jury found, the jury found that the tax loss was more that $30,000 but less that $80,000. This makes the base offense level a **13**, not a 16 as probation alleges.

43.  The court gave the jury a directed verdict when it told the jury that the use of trusts could be sophisticated means. Because a directed verdict was given as to that finding, it should not be considered and no enhancement should be given for sophisticated means.

48.  Acceptance of responsibility. Based on paragraph 38, a downward departure of **2** points should be allowed.

82. Probation alleges that "Pinnacle Quest International" is the successor company to Global. This is pure speculation based on hearsay, and there is no evidence whatsoever that Pinnacle Quest International is a "successor" to Global.

87. The financial documentation of Ms. Griffin makes clear that she does not currently have the ability to pay.

109. Factors that may warrant departure.

Family Ties and Responsibilities § 5H1.6 commentary (B) allows for a downward departure based on the Loss of Caretaking or Financial Support. *U.S. v. Roselli*, 366 F.3d 58, 70 (1st Cir.2004); *U.S. v. Johnson*, 964 F.2d 124, 129 (2d Cir.1992); *U.S. v. Alba*, 933 F.2d 1117, 122 (2d Cir.1991); *U.S. v. Leon*, 341 F.3d 928, 932 (9th Cir.2003); *U.S. v. Pena*, 930 F.2d 1486, 1494-95 (10th Cir.1991). Some cases have even supported a departure with no incarceration when a family role would have drastic financial and health ramifications. *U.S.v. Gaskill*, 991 F.2d 82, 85-86 (3d Cir.1993); *U.S. v. Galante*, 111 F.3d 1029 (2d Cir.1997).

In this case, Ms. Griffin's father was terminally ill and passed away November 30, 2006. She has taken care of her parents for the last few years, and has been living with them to more fully assist them since January 2006 when Mr. Griffin was diagnosed as terminally ill. She took care of him as he prepared to die, as she had to take him to his treatments and provide much more extensive support.

The evidence at trial also demonstrated that Ms. Griffin had financially supported her parents. Ms. Griffin is now taking care of her mother who is still coping with the death of her spouse.

**Defense Sentencing Recommendation.**

Based on the tax loss and downward departure for acceptance or responsibility, the offense level is 11 placing it in Zone C. Since it is a category I, the sentence could be 8-14 months, and defense requests the minimum. However, the Court should consider the recent death of Ms. Griffin's father and the needs now of Ms. Griffin's mother with Ms.

Griffin looking after her, thereby granting a further departure down to Zone A, allowing for no incarceration. The Court should then grant probation for no more than 3 years. The Court may order restitution as part of probation, but only after the exact amount of tax loss is determined, as the Court may only order payment of that which is legally and lawfully due.

    Defense reserves the right to amend its objections and raise any new issues at any time up through sentencing.

Respectfully submitted this 12th day of January, 2007.

                                /s/ Alan S. Richey
                              Alan Stuart Richey
                              Counsel for Nadine J. Griffin, defendant
                              P.O. Box 1505, Port Hadlock, Washington 98339
                              Phone: (360) 437-4005
                              Email: asratty@gmail.com

Certificate of Service

    I HEREBY CERTIFY THAT the foregoing was filed with this Court's CM/ECF system, which will serve via email the counsel for the government through the Court's CM/ECF system.

                              /s/ Alan Richey
                              Alan Richey

January 9, 2007

To Whom It May Concern:

Re: Character Reference- Nadine Griffin

The purpose of this correspondence is to provide a character reference for Ms. Nadine Griffin whom I have known as a personal friend and confidant for over a period of eight years.

. We have shared many great times together with family and friends. I have grown to admire Nadine as an intelligent, caring, generous and very understanding individual. She has always been involved in many community and charitable organizations that we shared together. She has helped those in need and been there for others when needed.

She is a positive and comforting individual that always sees the best in people. She is well liked by her friends in both business and social ventures. She has worked very hard throughout her life and always willing to help others. She is a loyal, honest, considerate and supportive individual who has the ability to see and understand things from another's perspective. I found her to be very sensitive to family and friends. She has an endless reserve of energy and an impeccable appearance.

All in all, I would have to say that Nadine Griffin is a fine, well-balanced personal friend with an abundance of positive qualities. I've always been proud to have known her as a close acquaintance.
                    Sincerely

                    Edward M. Cardillo
                    Teacher of   MCAS Mathematics
                    Northeast Regional Vocational Tech. H.S.
                    Wakefield,Ma.

Dear Sir,

This letter is in regards to a very dear life long friend of mine, Nadine Griffin.

Nadine and I have been friends for over 27 years. We have brought up our children together and have had many memorable happy family times. She is a person of real family values and outstanding character. She epitomizes the phase "A FRIEND IN NEED IS A FRIEND IN DEED". In my opinion I find her to be a person I would also recommend for any business or personal dealings I have had in the past and future.

We have worked together since 1980 in several companies. Jafra Cosmetics, Melaleuca, and in advertising and she has always been there for me and anyone that needed her help. She is a loving caring, honest, sensitive person who would never do anything illegal or knowingly break any laws.

I consider her my sister because she is closer to me than my own biological sisters.

I attended the trial and I will be there for the sentencing. I only hope you will be considerate of Nadines good character and her stability in life.

Sincerely,

Annmarie Digiovanni

January 9, 2007

To whom it may concern,

Nadine Joy Griffin

I have known Nadine for over 10 years as a dear friend. I can state with all honesty that she is a woman of immense compassion, integrity and loyalty. She is dedicated to her family, her friends and to living a spiritually true life.

I met Nadine a month after my fiancée passed away. Her honesty and sense of humor was refreshing to me and made it easy for me to trust her with some of my deepest thoughts and questions of life. Nadine called me almost daily, never letting on how busy she was and in doing so, drew me out of my cocoon.

Over the years I have witnessed her deal with many obstacles and issues. Through them all, she has kept her personal integrity intact and has never settled for anything less from those around her. I know we will remain friends for years to come.

I attended the trial as often as my schedule would allow and I will be attending the sentencing.

Yours faithfully,

Felicia D Zangi