# United States Court of Appeals
## For the First Circuit

Nos. 07-1475, 07-1477

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

NADINE J. GRIFFIN,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,

and Besosa, District Judge.

Robert E. Barnes, with whom The Bernhoft Law Firm, S.C. was on brief, for appellant/cross-appellee.
Elissa Hart-Mahan, Attorney, Tax Division, Department of Justice, with whom Richard T. Morrison, Acting Assistant Attorney General, Alan Hechtkopf and Karen M. Quesnel, Attorneys, Tax Division, Department of Justice, were on brief for appellee/cross-appellant.

April 18, 2008

Of the District of Puerto Rico, sitting by designation.

**HOWARD**, **Circuit Judge**.  A jury convicted Nadine Griffin
of filing a false income tax return for 1999 in violation of 26
U.S.C. § 7206(1).  The district court initially sentenced Griffin
to 27 months imprisonment and a year of supervised release.  Over
a month later, the court resentenced Griffin, reducing her term of
incarceration to 21 months.

Before us are an appeal and a cross-appeal.  In the
appeal, Griffin challenges her conviction.  She argues that the
court erred in instructing the jury on the elements of 26 U.S.C. §
7206(1) and in admitting certain evidence.  In the cross-appeal,
the government contends that the district court did not have the
authority to resentence Griffin because, under the terms of Federal
Rule of Criminal Procedure 35(a), the court either lacked
jurisdiction or the initial sentence was not "clear error."  We
affirm the conviction, vacate the sentence, and remand for the
imposition of the initial sentence.

## I. Facts

We rehearse the background facts here, reserving the
discussion of other facts for our later examination of the
appellate claims.  We view these facts in the light most favorable
to the jury's verdict.  United States v. Turner, 501 F.3d 59, 63
(1st Cir. 2007).

In each of Griffin's 1998 and 1999 tax returns she
reported an annual income that did not exceed $20,000.  Neither of

-2-

these returns reflected income Griffin earned working as an upper-level salesperson for a company called Global Prosperity Inc. (Global). In that capacity, Griffin made sales of over $700,000 and netted a profit of about $600,000 in 1998. She made sales of nearly $200,000 and netted a profit of about $137,000 in 1999.

Global was a multi-level marketing company that sold a series of audio-cassette tapes as well as tickets to offshore seminars where lectures were given and additional products sold. The Global products and lectures promoted various investment and tax avoidance strategies. As a salesperson for Global, Griffin sold these materials to customers. She eventually became one of Global's most successful salespeople and belonged to its top sales group.

Griffin set up bank accounts in order to store her Global proceeds and to manage her business with Global and Global customers. In addition to an offshore account, Griffin opened two domestic accounts. These accounts were opened in the names of Capital Finance Strategies (CFS) and Angelica Holdings (AH). Griffin, however, controlled the accounts and often drew money from them to finance personal expenditures. Griffin filed W-8 forms with the IRS when opening these accounts, indicating that both CFS and AH were foreign entities.

At some point, Griffin told another salesperson at Global that she did not plan to pay taxes on her income from Global.

-3-

Consistent with this statement, Griffin did not report her Global income when meeting with the individuals who prepared her 1998 and 1999 tax returns. She did, however, report income she received for her work as a salesperson for two other marketing companies. These companies, unlike Global, had sent Form 1099's to both the IRS and Griffin that reflected Griffin's gross sales.[1]

Despite filing returns in 1998 and 1999 that reflected a relatively modest income, when Griffin applied for a mortgage and car loan she reported a significantly higher income. Her mortgage application reflected an annual income of $540,000 and her car loan application an annual income of $100,000.

Ultimately, Griffin's financial situation drew the government's attention. In July 2005, she was indicted and charged with two counts of filing a false tax return in violation of 26 U.S.C. § 7206(1). The jury convicted her of one count, but did not reach a unanimous verdict on the other. The court initially sentenced Griffin to 27 months' imprisonment and a year of supervised release. Over a month later, however, it resentenced Griffin to 21 months' imprisonment with the same period of supervised release.

---

[1]   Global, besides not sending Form 1099's to the IRS or its salespeople, advised its salespeople to take steps that would frustrate government detection of their income. Global encouraged employees to use offshore bank accounts and to use Form W-8's when opening bank accounts.

-4-

## II.  Discussion

### A.  Appeal

Griffin presents two arguments on appeal.  Her first, and

primary argument, is that the court erroneously instructed the jury

regarding the elements of 26 U.S.C. § 7206 (1).  Her second is that

the court erred in admitting certain evidence.  We consider both

arguments in turn.[2]

### 1.  Jury Instructions

26 U.S.C. § 7206 (1) provides, in part, that any person

who

> [w]illfully makes and subscribes any return,
> statement or other document, which contains or
> is verified by a written declaration that it
> is made under the penalties of perjury, and
> which he does not believe to be true and
> correct as to every material matter . . .
> shall be guilty of a felony.

We have established that this offense has four elements:

> (1) that the defendant made or caused to be
> made, a federal income tax return for the year
> in question which he verified to be true; (2)
> that the tax return was false as to a material
> matter; (3) that the defendant signed the
> return willfully and knowing it was false; and
> (4) that the return contained a written
> declaration that it was made under the penalty
> of perjury.

United States v. Boulerice, 325 F.3d 75, 79-80 (1st Cir. 2003).

---

[2] Griffin also claims ineffective assistance of counsel.  Because
the record is not sufficiently developed, we will not entertain
this claim on direct appeal.  See United States v. Vega Molina, 407
F.3d 511, 530 (1st Cir. 2005).

At the close of the defendant's case, the district court instructed the jury on these four elements. Of relevance are the court's instructions regarding the second and third elements, materiality and willfulness. The court instructed:

> Material means that it makes a difference. It makes a difference as to the actual tax liability, the amount owed . . . Willful means an intentional violation of a known duty . . . [T]he language I want you to use here is, willful means an intentional violation of a known duty. No one can be convicted of filing a false tax return because they made a mistake or because they were careless or because they had a genuine, but mistaken, belief in the requirements of the tax code.

At the government's request, the court supplemented its instruction on the willfulness element with a "willful blindness" instruction. This instruction stated:

> She cannot, however, be what we call willfully blind to the duty to know. What do we mean by that? We mean she cannot willfully, that is intentionally, blind herself to what a reasonable person would understand was the very strong probability that taxes were owed on the proceeds.

Griffin argues that the court's instructions were erroneous for three reasons: the court failed to instruct the jury accurately on both (1) "materiality" and (2) "willfulness"; and (3) the court's instruction did not specify that the government had to prove Griffin made false statements with the "intent of inducing reliance."

Because Griffin failed to object to the court's jury instructions at trial, our standard of review is plain error. Accordingly, Griffin must show an error that was plain, (i.e., obvious and clear under current law), prejudicial (i.e., affected the outcome of the district court proceedings), and that seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. Colon-Millin v. Sears Roebuck de P.R., Inc., 455 F.3d 30, 41 (1st Cir. 2006). This standard is "exceedingly difficult to satisfy in jury instruction cases." United States v. Gonzalez-Velez, 466 F.3d 27, 35 (1st Cir. 2006). We review jury instructions as a whole determining if they "adequately explained the law or whether they tended to confuse or mislead the jury on controlling issues." Id.

## a. Materiality

Griffin argues that the district court should have instructed the jury that a statement is material if it could have influenced the IRS, not as it did, that "[m]aterial means that it makes a difference . . . to the actual tax liability, the amount owed."

The court's instruction on materiality was not plainly erroneous. We have said that a "material" matter is one that affects or influences the IRS in carrying out the functions committed to it by law or "one that is likely to affect the calculation of tax due and payable." Boulerice, 325 F.3d at 82 n.3

-7-

(citing <u>United States</u> v. <u>DiRico</u>, 78 F.3d 732, 735-36 (1st Cir. 1996)). If anything, the court's instruction that a false statement is material if it "makes a difference . . . as to the amount owed" was more narrow than necessary and increased the government's burden of proof. A false statement may be material even if it was only <u>likely to influence the calculation</u> of tax due and payable. <u>Id.</u>[3]

## b. Willfulness

Griffin lodges four complaints against the district court's instruction on this element. First, she contends that the trial court made various statements throughout the trial that tainted the instruction on willfulness. She cites two statements in particular. One was the court's statement that,

> What the government must prove here is that .
> . . the things she did either knowing that
> they violated, actually knowing in her own
> mind, or willfully, which means with reckless
> disregard, willful blindness, uncaring whether
> she was following the law or not.

The other was the court's statement that, "The government does not have to prove that a person knew they were violating a specific

---

[3] Griffin vaguely suggests that the government had to prove that she knew the false statements were "material." To the extent this argument is not waived, <u>see</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990), it is legally incorrect. The government does not have to prove that the defendant <u>knew</u> the statements were material. <u>Boulerice</u>, 325 F.3d at 82 ("[W]hether [defendant] actually knew of the false statements' materiality to the government does not enter the calculus of proof.") (citations omitted).

-8-

law." Second, Griffin argues that the court failed to inform the jury that, in order to convict her, the jury must conclude that she knew the statements on her tax returns were false when she filed them. Third, she asserts that the court should not have delivered the supplementary willful blindness instruction.[4] Specifically, she argues that the government did not present evidence meriting such an instruction. Fourth, she argues that, even if the willful blindness instruction was merited, the instruction itself was erroneous.

In analyzing Griffin's claim that the court's statements during trial corrupted the willfulness instruction, we start with the definition of "willfully." "Willfully," for purposes of this statute, means "a voluntary, intentional violation of a known legal duty." Boulerice, 325 F.3d at 80 (quoting United States v. Monteiro, 871 F.2d 204, 209 (1st Cir. 1989) (quoting United States v. Pomponio, 429 U.S. 10, 12 (1976))). The court instructed the jury that, "[w]illful means an intentional violation of a known duty." The court's instruction repeated the accepted definition of

---

[4] A willful blindness instruction informs jurors that they may "impose criminal liability on people who, recognizing the likelihood of wrongdoing, nonetheless consciously refuse to take basic investigatory steps." United States v. St. Michael's Credit Union, 880 F.2d 579, 585 (1st Cir. 1989) (quoting United States v. Rothrock, 806 F.2d 318, 323 (1st Cir. 1986)). Some cases refer to the willful blindness instruction as the "conscious avoidance" or, colloquially, as the "ostrich" instruction. See United States v. Nobles, 69 F.3d 172, 184 (7th Cir. 1995).

willfulness virtually verbatim.[5]   It is true, as Griffin points out, that at points during the trial the jury heard from the court that the government could prove that Griffin acted willfully by showing she acted recklessly. The judge, however, took affirmative steps to correct this misstatement of the law during its jury instructions.   The court instructed the jury to "[d]isregard my [earlier] references to reckless disregard. You can see the judge actually at work here."    In addition,  in  instructing  on willfulness, the court informed the jury that, "No one can be convicted of filing a false tax return because they made a mistake or because they were careless or because they had a genuine, but mistaken, belief in the requirements of the tax code."   These statements sufficed to correct any misimpression the jury may have had, and we presume that juries follow instructions. See United States v. González-Vázquez, 219 F.3d 37, 48 (1st Cir. 2000).

The  appellant's  second  attack  on  the  willfulness instruction is that the court failed to explicitly instruct the jury that Griffin had to know that her statements were false in order to be convicted.   This claim fails, because the court's instruction did adequately advise the jury.    The court's instruction informed the jury that in order to find Griffin guilty it had to conclude (1) that Griffin knew that she had a legal duty

---

[5] Although the judge initially said, "known duty," rather than "known legal duty," he later clarified noting "I should have added a word.  The intentional violation of a known legal duty."

to report her income truthfully, and (2) that she intentionally
chose not to do so.  Thus, the court instructed the jury that the
government had to prove that Griffin knew that her statements were
not truthful or, stated differently, that Griffin knew that her
statements were false.  The court was not bound to use the
willfulness formulation Griffin insists upon in order to instruct
the jury accurately.  See United States v. McFarlane, 491 F.3d 53,
59 (1st Cir. 2007) ("Within wide margins, the district court
maintains discretion in the precise manner that it explains legal
concepts to the jury.") (citation omitted).

        We now turn to the third and fourth claims relating to
willfulness.  These challenge the court's willful blindness
instruction.  Griffin argues that the government did not present
evidence supporting such an instruction.  "A willful blindness
instruction is appropriate if (1) a defendant claims a lack of
knowledge, (2) the facts suggest a conscious course of deliberate
ignorance, and (3) the instruction, taken as a whole, cannot be
misunderstood as mandating an inference of knowledge."  United
States v. Coviello, 225 F.3d 54, 70 (1st Cir. 2000) (citation and
internal quotation marks omitted); United States v. Singh, 222 F.3d
6, 11 (1st Cir. 2000).

        Griffin focuses on the requirement that the facts suggest
deliberate indifference.  She suggests that, as a general matter,
there cannot be evidence supporting both a conscious course of

-11-

deliberate ignorance and actual knowledge. She also argues that where the government alleges that a defendant has actual knowledge, the case here, it cannot request a willful blindness instruction.

The court did not commit error in issuing a willful blindness instruction. Evidence presented at trial may support either a finding of actual knowledge or a finding of willful blindness. See United States v. Cassiere, 4 F.3d 1006, 1024 (1st Cir. 1993); see also United States v. Gabriele, 63 F.3d 61, 67 n.8 (1st Cir. 1995). Such evidence was presented in this case. When filing her 1998 and 1999 tax returns, Griffin reported sales income she received from two marketing companies. Despite Griffin's apparent awareness of a duty to report sales income, the government introduced evidence that she neither discussed sales income she received from Global with her various tax preparers nor inquired as to whether she had a legal duty to report this income.

On the one hand, this evidence supports the theory that Griffin deliberately avoided discussing her income from Global in order to avoid actual knowledge of her legal obligation to report. See United States v. Picciandra, 788 F.2d 39, 46 (1st Cir. 1987) (noting court may instruct jury on willful blindness where "the evidence suggest[s] that the defendant consciously chose not to ask about what he had 'reason to believe' he would discover") (citation omitted). On the other hand, this evidence is also consistent with the theory that Griffin knew of her legal obligation to report this

-12-

income but simply chose not to report it. These theories can coexist. See United States v. Carrillo, 435 F.3d 767, 784 (7th Cir. 2006) ("[I]t does not follow that evidence must be placed in either an actual knowledge category or a deliberate ignorance category. It is permissible for the government to present evidence supporting both theories and some of the government's evidence might be relevant to both actual knowledge and deliberate ignorance.") (internal citation omitted).

Moreover, the government did not forfeit its right to request a willful blindness instruction where the evidence supported such an instruction simply because it contended at trial that Griffin had actual knowledge. See Cassiere, 4 F.3d at 1024 ("Although the government's main contention at trial was that all three defendants were knowing participants in the scheme, the government presented evidence from which the jury could have concluded that if they did not know what was going on, it was only because they chose to turn a blind eye.").

The final willfulness issue, whether the willful blindness instruction itself was erroneous, however, presents a closer question. Griffin argues that the instruction was erroneous for three reasons.[6] First, the instruction failed to inform the

---

[6] Griffin does present a fourth reason that merits little discussion. She argues that willful blindness instructions are per se unconstitutional in cases involving a specific intent crime. The circuits are uniform in approving willful blindness instructions for specific intent criminal offenses. See United

jury that Griffin's willful blindness had to be motivated by a desire to preempt prosecution. Second, the instruction failed to include an "actual belief caveat."[7] The actual belief caveat informs the jury that a showing of mistake, negligence, carelessness, or recklessness could not support a finding of willfulness and that, although knowledge may be inferred from willful blindness to the existence of a fact, the jury "must find the defendant had actual knowledge." Third, the instruction inappropriately made reference to a "reasonable person." In referring to reasonableness, Griffin stresses, the court articulated an objective standard rather than the required subjective one, and therefore allowed the jury to convict on a finding of recklessness.

The first two contentions are hopeless. Although we have said that a willful blindness instruction is "proper" when the government presents evidence that a defendant's willful blindness was motivated by a desire to preempt prosecution, we have never required that courts instruct juries that the defendant's willful blindness must have been motivated by such a desire. Griffin cites

_____

States v. Alston-Graves, 435 F.3d 331, 338 n.2 (D.C. Cir. 2006) (collecting cases). This approval includes cases involving 26 U.S.C. § 7206(1). See e.g., United States v. Marston, 2008 U.S. App. Lexis 5065, at *15 (8th Cir. Mar. 10, 2008).

[7] Griffin cites United States v. MacKenzie, 777 F.2d 811, 818 n.2 (2d Cir. 1985) as an example of an instruction which includes an acceptable actual belief caveat.

-14-

no case remotely suggesting that the rule is otherwise.  Thus, there cannot be plain error.

As for the second contention, the court did not commit plain error in failing to include the specific actual belief caveat that Griffin insists upon.  The court did not commit an error, let alone a plain one, by not instructing the jury that the jury "must find the defendant had actual knowledge" in order to convict under a willful blindness theory.  We have never required that willful blindness instructions contain such a statement.  See Coviello, 225 F.3d at 70-71) (approving instruction which informed jury they may "infer that a defendant had knowledge" but did not contain mandate that jury "must find the defendant had actual knowledge"); United States v. Brandon, 17 F.3d 409, 451-53 (1st Cir. 1994) (same); see also United States v. Lizardo, 445 F.3d 77, 85-86 (1st Cir. 2006) (same).

Additionally, it is unlikely the court committed error simply by failing to include within the willful blindness instruction itself an instruction that a showing of mistake, negligence, carelessness, or recklessness could not support a finding of willfulness.  The court had already communicated the point.  Earlier it instructed the jury that, "No one can be convicted of filing a false tax return because they made a mistake or because they were careless or because they had a genuine, but mistaken, belief in the requirements of the tax code."  See United

-15-

States v. Bailey, 405 F.3d 102, 110 (1st Cir. 2005) ("[Jury]
instructions must be evaluated not in isolation but in the context
of the entire charge.") (quoting Jones, 527 U.S. at 391). In any
event, if there was error it was not prejudicial, in light of the
court's instruction on mistake, carelessness and genuine belief.
See United States v. Cunan, 152 F.3d 29, 39-40 (1st Cir. 1998)
(rejecting defendant's argument that court's willful blindness
instruction was plainly erroneous because it failed to include a
statement that mere recklessness or negligence is not enough to
support a finding of willful blindness where instruction as a whole
adequately conveyed proper standard).

Griffin's third complaint about the willful blindness
instruction, in which she criticizes the instruction's use of the
phrase "reasonable person," is more substantial. As a general
matter, the use of such language could cause a jury to conclude
erroneously that it need only find negligence in order to convict
under a willful blindness theory. See Cassiere, 4 F.3d at 1023
("Caution is necessary in giving a willful blindness instruction
'because of the possibility that the jury will be led to employ a
negligence standard and convict a defendant on the impermissible
ground that he should have known [an illegal act] was taking
place.'") (citations omitted). As the Seventh Circuit noted in
Carrillo, the use of reasonable person language invites a jury to
conclude that, because a reasonable person in the defendant's shoes

would have had to deliberately blind himself to avoid knowledge, the particular defendant must have deliberately blinded himself to avoid knowledge. 435 F.3d at 782. The focus of the willful blindness instruction must be on the particular defendant and not on the hypothetical reasonable person.[8] Id.

Ultimately, however, the use of the phrase "reasonable person," did not amount to plain error because it did not prejudice Griffin. As noted above, the court instructed the jury that it could not convict Griffin if she was mistaken, careless, or genuinely believed she was not required to pay taxes on her Global income. This earlier instruction likely negated any damage the "reasonable person" phrase may have caused. See United States v. Moran, 393 F.3d 1, 32 (1st Cir. 2004) (noting that under plain error review defendant must show improper instruction affected the outcome of the trial). Moreover, had the court omitted any reference to the reasonable person, we are confident the jury would still have convicted Griffin. The government presented a significant amount of evidence indicating that Griffin either knew of a legal duty to report her Global income that she intentionally violated or that she willfully blinded herself to facts strongly

---

[8] The federal pattern jury instruction illustrates the appropriate focus. It provides in part: "The government may prove that the defendant acted 'knowingly' by proving, beyond a reasonable doubt, that this defendant deliberately closed her eyes to what would otherwise have been obvious to her." See 1A KEVIN F. O'MALLEY ET AL., FEDERAL JURY PRACTICE AND JURY INSTRUCTIONS, CRIMINAL § 17.09, at 653 (5th ed. 2000) (emphasis added).

-17-

suggesting she had such a duty. The government produced evidence that Griffin reported sales income she received from other marketing companies she worked for, that she told a fellow salesperson that she did not intend to pay income taxes on her Global proceeds, and that she did not discuss her Global income with her tax preparers. See United States v. Sotomayor-Vazquez, 249 F.3d 1, 19 (1st Cir. 2001) ("Even if the court's [instruction] was incorrect, sufficient evidence was introduced to convict [the defendants] without any reliance on the [potentially incorrect] segment of the jury instruction."). As there was no prejudice, Griffin is unable to satisfy the plain error standard.

### c.  Intent to induce reliance

Griffin's final claim of instructional error, closely related to her materiality argument, is that the court should have instructed the jury that, in order to prove a violation of § 7206(1), the government must demonstrate that the defendant intended to induce government reliance on the false statements. On the contrary, the intent to induce government reliance on a false statement or to deceive the government is not an element of 26 U.S.C. § 7206(1). See Boulerice, 325 F.3d at 79-80.[9]

---

[9] Griffin argues that our opinion in Gentsil v. United States, 326 F.2d 243 (1st Cir. 1964), supports her position. In that case, a jury convicted the defendant of violating 26 U.S.C. § 7206(1). Id. at 244. The defendant claimed that the verdict was not based on sufficient evidence. Id. In rejecting the defendant's claim, we noted, "It was not necessary for the government to have actually relied on the false statements; it is sufficient that they were

## 2. 403 ruling

Griffin argues that the court should have excluded certain evidence under Federal Rule of Evidence 403 because its probative value was substantially outweighed by its unfairly prejudicial impact.[10]  Because she did not object on Rule 403 grounds at trial, our review is for plain error.[11]  United States v. Wallace, 461 F.3d 15, 28 (1st Cir. 2006).

The evidence Griffin claims was improperly admitted falls into two categories. The first involves items that Griffin sold as a Global salesperson. The court admitted into evidence Global audio-cassette tapes and allowed witnesses to testify both about the subject-matter of these tapes and about other products sold at Global seminars. The tapes instructed listeners how to "[pull

---

made with the intention of inducing such reliance." Id. (citation omitted). Gentsil provides no support for Griffin's position. Nowhere did we suggest that it was necessary for the government to prove that the statements were made with the intention of inducing reliance in order to establish a violation of § 7206(1). Nor did we indicate that § 7206(1) includes as an element the intent to induce government reliance on a false statement. In any event, our more recent precedent in Boulerice accurately sets forth § 7206(1)'s elements.

[10] This Rule states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

[11] Griffin did object to the admission of the Global audio-cassette tapes and the tapes' companion workbook but on relevancy and foundation grounds. She does not pursue these objections on appeal.

themselves] out of the system," so they could stop paying taxes and that silver coin is the only real currency. The tapes also described the social security number as the mark of the devil and referenced the Bible as authority for a number of their positions. The second category of evidence includes testimony about Griffin's standard of living. Witnesses testified that Griffin paid for her boyfriend to accompany her on trips to and from Bermuda and that she had a penchant for gambling, jewelry, and fine foods.

In admitting the Global tapes, the court informed the jury that Griffin was not charged with "saying something or counseling something that's unlawful" and that:

> whatever you think of what people were saying
> [on the tapes], you don't hold it against Ms.
> Griffin for the saying of it. The reason you
> have it in evidence, is to consider whether
> [defendant] was part of this Global Prosperity
> operation and obtained from it income.

When allowing testimony about Griffin's interest in gambling, the court informed the jury that, "[T]here's no suggestion here about any impropriety in gambling. You're just entitled to know the full picture . . . . And there's no suggestion that any gambling casinos were illegal . . . where these things took place."

The district court did not commit error, let alone plain error, in admitting this evidence. First, the tapes, besides connecting Griffin to a source of income she did not report, were

probative of Griffin's state of mind when reporting her income. Griffin was a salesperson for a company that instructed people how to avoid paying taxes. This evidence certainly made it more likely than not that Griffin acted willfully in declining to report her Global income. See United States v. Turano, 802 F.2d 10, 12 (1st Cir. 1986) (noting that what defendant did to encourage people not to file tax returns was probative of defendant's own state of mind in not filing tax return). Second, the testimony regarding Griffin's spending habits was highly probative as to whether Griffin's tax returns, which reported annual incomes of less than $20,000, were false. See United States v. Zanghi, 189 F.3d 71, 82 (1st Cir. 1999); see also United States v. Simonelli, 237 F.3d 19, 21 (1st Cir. 2001). Finally, when admitting the evidence which held the greatest potential to prejudice Griffin unfairly or to confuse the jury, the Global tapes and the testimony about Griffin's interest in gambling, the court issued cautionary instructions.

## B. Cross-Appeal

On January 16, 2007, the district court sentenced Griffin to 27 months' imprisonment. After this initial sentencing, the Supreme Court decided Cunningham v. California, 127 S. Ct. 856 (2007). Believing the case placed limits on its ability to find facts that could increase a defendant's sentence, the court, acting sua sponte and five days after the initial sentencing, vacated the

-21-

sentence and scheduled a resentencing hearing.  On February 22, more than a month after issuing the first sentence, the court resentenced Griffin to 21 months' imprisonment.

The government argues that the court erroneously vacated its original sentence for two reasons.  First, it contends that the district court did not have jurisdiction when it acted.  The government says that, under Federal Rule of Criminal Procedure 35(a), the district court has a strict seven-day window in which it can resentence a defendant.[12]  The district court's resentencing of Griffin more than a month after the initial sentencing, it continues, fell outside that window.  The government argues in the alternative that even if Rule 35(a) did not prevent the court from revisiting the initial sentence, a court can only resentence a defendant under the rule if the initial sentence was "clear error." The government argues that the court's initial sentence was not erroneous, much less clearly erroneous, and that the district court misunderstood the Supreme Court's decision in Cunningham in concluding otherwise.

Griffin says that the court properly imposed her second sentence.  She cites Eberhart v. United States, 546 U.S. 12 (2005), as casting doubt on whether Rule 35 is a jurisdictional rule.

---

[12] Prior to the 2002 amendment to Rule 35, the provision now located in subsection (a) was located in subsection (c).  The movement and slight rephrasing of the provision was a stylistic change that did not have any substantive effect.  Fed. R. Crim. P. 35 Advisory Committee's Notes (2002 amendment).

Moreover, she argues that the court correctly interpreted Cunningham and thus did not commit clear error under Rule 35.

Once a district court imposes a term of imprisonment, it may modify that term only to the extent authorized by 18 U.S.C. § 3582(c).[13] This statute permits a court to modify a sentence under Rule 35. Rule 35 provides that: "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).

We have previously interpreted Rule 35 as imposing a jurisdictional limit on the district court's ability to correct a sentence. See United States v. Fahm, 13 F.3d 447, 453 (1st Cir. 1994) (holding that "the district court lacked jurisdiction to correct its original sentence beyond the limitation period prescribed in [Rule 35(a)]"). This interpretation is unremarkable.[14] We have not, however, decided whether a district

---

[13] 18 U.S.C. § 3582 reads in part: "Modification of an imposed term of imprisonment - The court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Id. at (c)(1)(B).

[14] The courts of appeals have uniformly held that Rule 35(a)'s seven-day time limit is jurisdictional. United States v. Higgs, 504 F.3d 456, 463 (3d Cir. 2007); United States v. Vicol, 460 F.3d 693, 695-96 (6th Cir. 2006); United States v. Smith, 438 F.3d 796, 799 (7th Cir. 2006); United States v. Green, 405 F.3d 1180, 1184-88 (10th Cir. 2005); United States v. Shank, 395 F.3d 466, 468 (4th Cir. 2005); United States v. Penna, 319 F.3d 509, 511-12 (9th Cir. 2003); United States v. Austin, 217 F.3d 595, 597 (8th Cir. 2000); United States v. Morrison, 204 F.3d 1091, 1092-93 (11th Cir. 2000); United States v. Abreu-Cabrera, 64 F.3d 67, 74 (2d Cir. 1995);

-23-

court may "correct" a sentence by suspending or vacating the sentence within the seven-day window and subsequently resentencing outside of that window. That is the case presented here -- the district court vacated its original sentence five days after Griffin was initially sentenced.

The circuits that have squarely addressed this or similar scenarios have concluded that if a district court resentences a defendant, it must do so within the seven-day period following the initial sentencing. Penna, 319 F.3d at 512 (holding district court lacked jurisdiction to resentence defendant outside seven-day period even where court vacated initial sentence within that period); Morrison, 460 F.3d at 1094 (same); see also Vicol, 460 F.3d at 696 ("Rule 35 requires a district court to actually resentence a defendant within the seven-day period therein described."). This reading of Rule 35 is consistent with the statute's plain language. Vicol, 460 F.3d at 695 ("[T]he plain language of the rule . . . makes clear that the district court must correct the sentence within the time limitation imposed, and not simply take some other undefined action toward that end, such as scheduling a hearing . . . .").

The rationale for the strict seven-day time limit is articulated in the advisory committee notes. Fed.R.Crim.P. 35 Advisory Committee's Notes (1991 amendment). "The Committee

United States v. Lopez, 26 F.3d 512, 518-20 (5th Cir. 1994).

believed that the time for correcting such errors should be narrowed within the time for appealing the sentence [to avoid jurisdictional confusion] and to provide the parties with an opportunity to address the [district] court's correction of the sentence, or lack thereof, in any appeal of the sentence." Id.

Griffin, nevertheless, argues that the Supreme Court's ruling in Eberhart suggests that Rule 35(a) is not jurisdictional. In Eberhart, the Supreme Court analyzed Federal Rule of Criminal Procedure 33. 546 U.S. at 15-16. This rule allows a defendant to file a motion for a new trial "within 7 days after the verdict of finding of guilty." Fed.R.Crim.P. 33(b)(2). The Court characterized Rule 33 as a "claim-processing rule" that is not jurisdictional and can be forfeited. Eberhart, 546 U.S. at 19. In distinguishing between claim-processing rules and jurisdictional rules, the Court noted that the latter rules "[delineate] the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." Id. at 16 (citation and internal quotation omitted).

Following its decision in Eberhart, the Court, in Bowles v. Russell, 127 S. Ct. 2360, 2365 (2007), further clarified the difference between claim-processing rules and jurisdictional rules. The Court held that if a time limitation is set forth in a statute, it is jurisdictional -- the rationale being that Congress has the

-25-

power to determine a lower federal court's subject matter
jurisdiction. Id.

    Our conclusion that Rule 35(a) is jurisdictional is
consistent with both Eberhart and Bowles. Under Eberhart the
district court no longer had subject-matter jurisdiction when it
acted and therefore lacked the "adjudicatory authority" needed to
resentence Griffin. Section 3582 allows a court to alter an
imposed sentence in a limited class of cases including to the
extent permitted under Rule 35. 18 U.S.C. § 3582(c); Smith, 438
F.3d at 799 ("[Section] 3582(c) limits the substantive authority of
the district court . . . [and] is a real 'jurisdictional' rule
rather than a case-processing requirement."). In this case, the
district court modified Griffin's sentence under Rule 35. In doing
so, it failed to adhere to Rule 35's strictures and, accordingly,
lacked jurisdiction when resentencing Griffin. Moreover, the
conclusion that Rule 35(a) is jurisdictional comports with Bowles,
because the rule's seven-day time limit derives from a statute --
§ 3582(c). Although § 3582 does not expressly reference the rule's
seven-day limit, the entire rule is incorporated into the statute.
18 U.S.C. § 3582(c)(1)(B) ("The court may modify an imposed term of
imprisonment to the extent . . . permitted . . . by Rule 35 of the
Federal Rules of Criminal Procedure."). We thus join the Third
Circuit in holding that Rule 35 is jurisdictional, in light of both
Eberhart and Bowles. See United States v. Higgs, 504 F.3d 456, 464

(3d Cir. 2007) (holding that Rule 35's seven-day time limit is jurisdictional under Bowles and rejecting defendant's argument that Eberhart suggests otherwise).

Because Rule 35 is jurisdictional, it follows that a district court choosing to resentence under that Rule must do so within seven days of the initial sentence. Accordingly, Griffin's original sentence must be reinstated.[15]

## III. Conclusion

For the reasons stated above the conviction is affirmed, the sentence is vacated, and the case remanded for reimposition of the original sentence.

---

[15] Because the court lacked authority under Rule 35(a) to resentence Griffin outside the seven-day period, we need not reach the government's alternative argument.

-27-